## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION
## www.flsb.uscourts.gov

In re:

**W.B. CARE CENTER, LLC d/b/a**
**WEST BROWARD CARE CENTER and**
**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON P.A.**
Debtor,

CASE NO.: 09-26196-BKO-JKO

Chapter 7

_____/

**TIMOTHY PATRICK REARDON**
Plaintiff,

Adv. Pro. No.: 12-02072-JKO

vs.

**KENNETH A. WELT,** in his capacity as
the Chapter 7 Trustee for the estate of
**W.B. CARE CENTER, LLC, d/b/a**
**West Broward Care Center,**
Defendant,

_____/

### PLAINTIFF'S MOTION FOR PERMISSION UNDER THE "BARTON DOCTRINE" TO ADD AS A DEFENDANT,
### MARCUMRACHLIN, A DIVISION OF MARCUM, LLP; a/k/a "THE UNICORN TRUSTEE;" IN REARDON vs. W.B. CARE CENTER, LLC, ET. AL, CASE # 12 – 20829-CIV-O'SULLIVAN FOR RACKETEERING UNDER 18 U.S.C.§ 1961(1)(D) - FRAUD IN A TITLE 11

Kenneth A. Welt, filed "Chapter 7 Trustee's Ex Parte Application for Employment of

Accountants Nunc Pro Tunc to September 16, 2010."

"The Debtor filed a voluntary petition for bankruptcy relief under Chapter 11
of Title 11 of the United States Bankruptcy Code on August 5, 2009.

The Debtor operated under the direction of a "Unicorn Trustee" until on or
around May 10, 2010, when an Order was entered approving the sale of
substantially all of the Debtor's assets [DE #463]."

February 10, 2010 Transcript, In re: W.B. Care Center, LLC, Case No. 09-26196-JKO

MR HELLER:        Good morning, your Honor.

John Heller, I am the accountant for the debtor, and as Ms. Redmond
puts it, the "unicorn" in this case.

## INTRODUCTION

Timothy Patrick Reardon, (REARDON) former Debtor in Possession of W.B. Care Center, LLC d/b/a West Broward Care Center, requests permission to add as Defendants: MarcumRachlin, a Division of Marcum, LLP a/k/a the "Unicorn Trustee in Timothy Patrick Reardon vs. W.B. Care Center LLC et. al., Case No: 12-20829-CIV-Lenard/O'Sullivan.

As this Court is aware, based on the recent attempt by Defendants Stearns Weaver and Ehrenstein to move Reardon's RICO case to this Court. Reardon is planning on filing a Second Amended Complaint (attached) and in an abundance of caution is asking for an Order Granting Permission to add the Unicorn Trustee.

Plaintiff's Amended Complaint is described by Stearns Weaver as:

> In the second case, which is still pending, the bankruptcy court has ousted Reardon from control of W.B. Care Center, converted the case to one under Chapter 7, and appointed a trustee." (emphasis added).

The basis of Reardon's RICO case is Racketeering Under 18 U.S.C. § 1961(1)(D) – Fraud in a Case under Title 11.  Plaintiff believes:

(1)     MarcumRachlin, a Division of Marcum LLP does not qualify for the protection of that Barton Doctrine, because they were not really a Trustee

(2)     Assuming arguendo, that Marcum LLP does qualify for the protection of the Barton Doctrine, their actions qualify for Racketeering (Fraud in a Case under Title 11) because they were working for a Creditor, Institutional Leasing 1, LLC and did not represent the Estate of W.B. Care Center LLC.

### The "Barton Doctrine"

In Lawrence v. Goldberg, 573 F.3d 1265 (11th Cir. 2009), 11th Circuit explained the purpose behind requesting permission of the Federal Bankruptcy Judge permission to sue

2

a trustee or examiner under The Supreme Court ruling in Barton v. Barbour, 104 U.S. 126

(1881), also known as the "Barton Doctrine:"

> "If (the trustee) is burdened with having to defend against suits
> by litigants disappointed by his actions on the courts behalf, his
> work for the court will be impeded...
>
> Without the requirement (of leave), trusteeship will become a
> more irksome duty, and so it will be harder for courts to find
> competent people to appoint as trustees.
>
> Trustees will have to pay higher malpractice premiums, and this
> will make the administration of the bankruptcy laws more
> expensive...
>
> Furthermore, requiring that leave to sue be sought enables
> bankruptcy judges to monitor the work of the trustees more
> effectively.

## (1) MarcumRachlin, a Division of Marcum LLP does not qualify for the protection of that Barton Doctrine, because they were a "Unicorn Trustee"

**Although Plaintiff hired MarcumRachlin as DIP accountants for his business, W.B. Care Center LLC, Judge Olson changed their title eighteen (18) times to "trustee"**

| Exhibit # | Description of MarcumRachlin, a Division of MarcumLLP in Court documents |
|---|---|
| # 1 | Accountant |
| # 2 | Accountants and Financial Advisors |
| # 3 | Debtor's Accountant |
| # 4 | Debtor's Financial Advisor |
| # 5 | Sole Signatory Authority on the Bank Account |
| # 6 | Sole Representative of the Debtor for purposes of day-to-day operation |
| # 7 | Unicorn Trustee |
| # 8 | Unicorn |
| # 9 | Ability to make decisions on behalf of W.B., the Debtor |
| # 10 | Sole Decision Maker |
| # 11 | Authority to execute documents |
| # 12 | Authority to bind Debtor |
| # 13 | Authority to prosecute any actions under 11 U.S.C. § 549 |
| # 14 | CRO (Chief Restructuring Officer) |
| # 15 | Accountant for Trustee |
| # 16 | Interim Operator for the Facility (West Broward Care Center) |
| # 17 | Court Appointed Corporate Representative |
| # 18 | Trustee |

3

## Marcum LLP was given control of "day to day operations" of Plaintiff's business thru Racketeering

### RACKETEERING COUNT - I

| | |
|---|---|
| When: | October 27, 2009 |
| Where: | Fort Lauderdale Federal Bankruptcy Courthouse |
| From: | MarcumRachlin, a Division of Marcum LLP |
| To: | The Honorable Judge Olson |

Fraud: W.B. Care Center, LLC had hired the accounting firm of MarcumRachlin, a Division of Marcum LLP to do the Monthly Debtor in Possession (DIP) Reports and the month of August had been filed with the court on October 15, 2009 and, in fact, Patricia Redmond was holding it in her hand.

Patricia Redmond of Stearns Weaver stated that W.B. Care Center started Chapter 11 on August 5, 2009 with $600,000 in the bank and by the end of October they would be at $75,000.

## MarcumRachlin, under oath, does not tell Judge Olson that Stearns Weaver lied

Although Judge Olson had ruled in favor of W.B. Care Center, LLC, [1]Stearns

Weaver refused to allow W.B. Care to use cash collateral and then lied about W.B. Care's

financial status: **(Exhibit # 33)**

Stearns Weaver: Now, Your Honor, my second point and concern about cash collateral is that when the debtor started this case by virtue of its scheduled, it had $600,000 in cash available.

At the end of August, the debtor had $375,000 in cash, without paying rent.

At the end of September, they had $325,000 without paying rent.

And pursuant to their budget for October, at the end of October, they'll have $75,000 cash.

We're not sure, based on the lack of reporting, where this money is going, and whether it's being used appropriately to rehabilitate this debtor.

---

[1] In fact, the law firm retained by Debtor, Ehrenstein Charbonneau Caldrin actually wrote a paper for the American Bar Association describing the ruling by Judge Olson.

4

JUDGE OLSON:    Right, and those, as you related them to me, were that the debtor had $600,000 of cash on the petition date, $375,000 at the end of August, $325,000 at the end of September, and projected was budgeted to be down to $75,000 at the end of October, which is three days from now.

I mean, if you go from a petition date in July of $600,000, and you're projecting that you're going to be at $75,000 in four days, that's three months, and your burn rate is at a pace that's going to leave you with a big hole in the ground.

#### Transcript of October 27, 2009 W.B. Care Center LLC   Page 7

Charbonneau:    We have not given them that document for October, and I think, Judge, because Mr. Heller is having difficulty accessing all the information he needs to access from the debtor's on-line banking system.

So Judge –

Judge Olson:    Why is that?

Charbonneau:    I don't know, Judge.

That's why Mr. Heller is here.

#### Page 11

Redmond:    Your Honor, if you like, I could put Mr. Heller on the stand and have him testify with respect to his efforts to get information and what's been – the impediments that he's faced.

#### Page 13

## JOHN HELLER

## DIRECT EXAMINATION

BY MS. REDMOND:

REDMOND    Could you please state your name for the Court?
HELLER    Sure. John Heller. I'm a CPA with MarcumRachlin.

REDMOND    And have you been retained in this case by the debtor-in-possession?
HELLER    I have

REDMOND    And what is the capacity in which you've been retained?

5

HELLER        As a financial advisor or accountant to the debtor.

Page 14

REDMOND       And have you done that with respect to the debtor-in-possession
              reports?

HELLER        The debtor-in-possession reports for August and September have
              been filed.

              The September was filed timely, the August was filed a bit late.

REDMOND       Why have you been unable to do any cash reconciliation to
              understand the debtor's cash position?

HELLER A.     Essentially, the bank that they're with is Regions Bank.

              And Regions Bank has four of the debtor's accounts.

              It also happens to have a number of Mr. Reardon's accounts.

              And for whatever reason, the bank – its access to its on-line banking,
              it combined those accounts.

              So the log-in and the password, you see all the accounts together.

              So, you know, initially Mr. Reardon had given me access but then he
              felt uncomfortable with that.

              So he had been working on trying to get it segregated, but to date, it's
              not happened.

              So I just can't say what's going on with the cash.

JUDGE OLSON:  And Mr. Reardon terminated your ability to go in there?

HELLER:       Yeah.

              It was his log-in and password that he had initially given me,
              and then he changed it.

JUDGE OLSON:  I see

Page 19

CHARBONNEAU:  Mr. Heller, did Mr. Reardon provide you with hard copies of the
              banking records?

6

HELLER            For September

CHARBONNEAU:   Not October?
HELLER            Not October

CHARBONNEAU:   Okay [2]

On November 9, 2009, John Heller admits W.B. Care was not losing $150,000 per

month.

November 9, 2009 Transcript of In re: W.B. Care Center LLC

JUDGE OLSON:     From your review of the financial information, are there any
                 irregularities of which I should be made aware or which I would find
                 interesting?

HELLER:          The only – the only thing that I would tell you that's interesting is this
                 debtor – and I will correct something that the debtor principal has been
                 upset about.

                 The debtor started out with about $94,000 on petition, not – I think – I
                 think it was represented that they had 650, they didn't, they had 94. [3]

The First Debtor in Possession Report for the period of August 5, 2009 to August

31, 2009 that was filed on October 9, 2009, two weeks before the hearing. The beginning

balance is $93,921.67, not $600,000.00.

The "schedules" Stearns Weaver mentions were filed on September 11, 2009, more

than one month after the Petition Date of August 5, 2009. They were filed by the law firm

of Ehrenstein Charbonneau and Calderin and it asks for monies in the checking account

"on the present day." Patricia Redmond had this report six weeks before the October 27,

2009 hearing.

---

[2] Plaintiff is not a CPA like Mr. Heller at MarcumRachlin, but since the date of the hearing was October 27, Plaintiff has
not found any bank that sends out a statement for the month before the actual end of the month.
[3] So W.B. Care started Chapter 11 with $94,000 in cash on August 5 and had $75,000 on October 27, a loss of $20,000.
W.B. would have had $50,000.00 more if they hadn't wasted it on Ehrenstein's Motion to Reject Settlement

7

MarcumRachlin, a Division of Marcum LLP, was hired by W.B. Care Center on

September 25, 2009. Marcum filed an Affidavit for Alan R. Barbee, CPA and John L.

Heller, CPA, on October 2, 2009.

## Legal Fees of Ehrenstein Charbonneau Calderin as Counsel for W.B. Care Center

RPC = Robert P. Charbonneau

| | | |
|---|---|---|
| 9/25/2009 | Call with Heller (MarcumRachlin) and Reardon on getting started | $400.00 |
| 9/29/2009 | Court and then meeting with Reardon at Heller's office | $920.00 |
| 10/1/2009 | Correspondence with NS and PH regarding Heller retention | $127.50 |
| 10/2/2009 | Correspondence with Heller and Reardon on August DIP | $425.00 |
| 10/08/2009 | Correspondence with Reardon re: signature for August DIP | $297.50 |
| 10/20/2009 | Correspondence with Pearson and Redmond re: DIP reports | $170.00 |

## Summary of Interim Fee Application of MarcumRachlin, a Division of Marcum LLP Accountant for Chapter 11 Debtor – For Period of 9/24/09 to 11/30/2009

"Applicant spent 114.1 hours for fees of $20,497.50 in preparation of August, September and October Debtor-in-Possession reports."

JHL = John Heller, CPA

| | | | |
|---|---|---|---|
| JHL | 9/28/09 | Review partial August DIP drafted by Estell | $137.50 |
| JHL | 9/28/09 | Set up August DIP Report | $247.50 |
| JHL | 9/29/09 | Continue to follow-up, obtain and review for Aug DIP | $330.00 |
| JHL | 9/30/09 | Prepare August DIP report, Correspond w/Debtor Counsel | $1,320.00 |
| JHL | 10/1/09 | Continue preparation of August DIP Report with L | $1,045.00 |

## RACKETEERING COUNT - II

| | |
|---|---|
| When: | November 12, 2009 |
| Where: | Fort Lauderdale Federal Bankruptcy Courthouse |
| From: | MarcumRachlin, a Division of Marcum LLP |
| To: | The Honorable Judge Olson |

Omission:   Without Plaintiff's knowledge, Stearns Weaver had included a clause in the Settlement agreement that Institutional Leasing 1, LLC would now be paying the law firm of Ehrenstein Charbonneau Caldrin and the accounting firm of MarcumRachlin.

Transcript of November 12, 2009 hearing  W.B. Care Center LLC   **(Exhibit # 50).**

Charbonneau:   "And, you know, the D.I.P. is earmarked to pay certain obligations, Judge.

I don't need to go through those.

8

They are self explanatory in the paragraph. **(Exhibit # 51).**

Actually, the settlement agreement states:

> "shall be used to fund (i) professional fees of Debtor
> reasonably incurred to date, and incurred prospectively in
> effectuating a Bankruptcy Code § 363 and approved by the
> Bankruptcy Court **(Exhibit # 52).**

DIP Capital LLC is owned by AYS Holdings, LLC. This is the same owner of

Institutional Leasing 1, LLC. DIP Capital, AYS Holdings, LLC and Institutional Leasing 1,

LLC are all owned by Abraham Shaulson. Abraham Shaulson is the client that Judge

Olson lied to protect his past representation, with Patricia Redmond and Stearns Weaver.

## RACKETEERING COUNT - III

When:       December 14, 2009
Where:      Fort Lauderdale Federal Bankruptcy Courthouse
From:       MarcumRachlin, a Division of Marcum LLP
Fraud:      Marcum does not dispute claim that Reardon "attempted" to steal $50,000

Transcript of December 14, 2009, W.B. Care Center LLC

Redmond:       Your Honor, I think I can.

> It has come to my attention that late last week Mr. Reardon had
> attempted to wire $50,000 out of the debtor-in-possession account to
> his own personal account.
>
> Your Honor will recall there was a lot of back and forth about the I
> linkage between the two accounts, and –

Judge Olson:       Indeed **(Exhibit # 64)**

Patricia Redmond is describing the October 27, 2009 hearing. This is when Judge

Olson ordered an examiner because W.B. Care was losing $150,000 per month, based on

Stearns Weaver's account. There are a few other things that Judge Olson might recall:

### Plaintiff is then forced by Judge Olson to give up his banking Pin #

Page 20

Charbonneau:       Your Honor, can I have five minutes with Mr. Reardon

9

Judge Olson:     You may.

                 There's a wood shed out front somewhere

## Page 22     (Exhibit # 71).

Charbonneau:     I think Mr. Reardon was a little concerned, given the experience we
                 had with BBS, [4] giving Mr. Heller access, again, to the accounts,
                 because that would mean that he would have, not only visual access,
                 but access to move monies around, not only of the debtor, but of Mr.
                 Reardon individually.

                 So that's why I think Mr. Reardon was attempting to give hard copies
                 of the records to Mr. Heller, at least through September.

                 But, rest assured, Judge, Mr. Heller has access to those bank
                 accounts now – as of right now.

        Not only did Plaintiff give Mr. Heller, and eventually Examiner Soneet Kabila, his

banking passwords on October 27, 2009, he also resigned as the nursing home

administrator and left the building completely on November 12, 2009.

### Order Appointing Examiner Pursuant to 11 U.S.C. § 1104(c) [DE 143]

        Apparently, Judge Olson also forgot what he wrote in his Order appointing an

Examiner:

                 "Mr. Heller testified that the purported justification for Mr.
                 Reardon restricting Mr. Heller's access to Debtor's bank
                 account information was that Debtor's bank account information
                 and Mr. Reardon's personal bank account information were
                 linked under the same login and password."


### MarcumRachlin doesn't mention that Abraham Shaulson has had control of W.B. Care Center's banking account since Plaintiff resigned November 12, 2009

---

[4] Former court appointed book keeping firm that ECC though was unqualified

A review of the accounting fees paid by W.B. Care Center from the date Plaintiff

resigned, November 12, 2009 until the date he was accused of "attempting to transfer" of

December 14, 2009 demonstrate:

### Chapter 11 Examiner Soneet Kapila:

| November 12, 2009 | "Attend meeting at W.B. Care Center and assist with transition of operations and accounting to Millennium Management |
| --- | --- |
| November 13, 2009 | Telephone call with Abraham [5] for update |
| November 30, 2009 | Participate in t/c with Z. Shemesh, Annie Maresca, Harry Fruhman, and J. Heller regarding transition of bank accounts, document requests, process for A/R and A/P, and New Roles for Examiner and J. Heller. [6] |
| December 10, 2009 | Address various banking matters and coordinate recording of transactions including Medicare deposit, payroll wire and various deposits into account. |
| December 11, 2009 | Coordinate transfer of funds from WB Care account to JP Morgan account with H. Fruhman and payment of payables per Maria Mata. [7] |

### John Heller of MarcumRachlin – The "Unicorn Trustee

Through the bills of MarcumRachlin list references to the "turnover" of West

Broward Care Center to Millennium Management. **(Exhibit # 74).**

#### Specifically: (Exhibit #75)

| JHL | 11/12/09 | At premises, meet with secured creditor [8], examiner |
| --- | --- | --- |
| JHL | 12/07/09 | Review cash collateral budget drafted by Millennium |
| JHL | 12/08/09 | Continue to review cash collateral budget drafted by Millennium |

Center – Case No. 09-26196

---

[5] Abraham Shaulson (Plaintiff still does not know about Judge Olson and Patricia Redmond's past representation.
[6] Maresca is Senior Accountant for Millennium and Fruhman is the Chief Financial Officer for Millennium. See "Millennium Organizational Chart" **(Exhibit # ).**
[7] Maria Mata is the Director of Accounts Payables for Millennium Management
[8] Institutional Leasing 1, LLC, which has the same owner as DIP Capital LLC, who is now paying MarcumRachlin

MS REDMOND: Having said that, the logical conclusion will be,

"Well, do we appoint a <u>trustee</u>?"

....but what we really need to do <u>is to deal with some other decision</u> <u>maker and some vehicle to do that</u> that won't offend Mr. Rodriguez,[9] so I've been kind of scratching my head, as has Mr. Gold and Mr. Charbonneau, [10] to try to find the appropriate way.

We believe that if your Honor expanded powers for Mr. Kapila and for Mr. Heller <u>to allow Mr. Heller sole signatory authority on the bank</u> <u>account and the ability to make decisions on behalf of W.B.,</u> <u>the debtor, that in that case, it may solve the problem.</u>

MS REDMOND: And, your Honor, I guess that segues perfectly into a status on the settlement, because the settlement was something that Mr. Tabas and I were trying to put finishing touches on, a revised settlement agreement, and we are not there, and I'm not sure, given the present circumstances, that we can get there.

What Institutional [11] would intend to do is to work with the trustee –

The trustee, oops, sorry.

Mr. Rodriguez [12] would have a heart attack,

the unicorn –

<u>work with the</u> unicorn this week and see if we can reach an alternative settlement of the litigation issues in the case <u>that leaves</u> <u>out Mr. Reardon</u>, both in respect of his affirmative relief and his relief that <u>he was getting as a party to the settlement.</u>

JUDGE OLSON: Very interesting. [13]

**<u>(2)    Assuming arguendo, that Marcum LLP does qualify for the protection of the</u>** **<u>Barton Doctrine, their actions qualify for Racketeering (Fraud in a Case under Title</u>** **<u>11) because they were working for a Creditor, Institutional Leasing 1, LLC and did</u>** **<u>not represent the Estate of W.B. Care Center LLC.</u>**

---

[9] United States Trustee Ariel Rodriguez, Esq.

[10] Dan Gold Esq. and Robert Charbonneau Esq. of Ehrenstein originally hired by Plaintiff's nursing home, W.B. Care Center, LLC. By the time of this hearing, they were being paid by Defendant Institutional Leasing 1, LLC.

[11] Institutional Leasing 1, LLC, owned by Abraham Shaulson, Judge Olson's former client with Stearns Weaver.

[12] Ariel Rodriguez, Esq., of The United States Trustee's Office

[13] The Settlement Agreement was paying monies from Abraham Shaulson to Reardon, nothing was going to the Estate. So Patricia Redmond and Judge Olson just saved their former client $500,000.00, in addition to the $2,500,000.00 loan

## Duties of a Trustee

11 U.S.C. § 704(a)(1) The Trustee has a duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of parties in interest."

11 U.S.C. § 704(a)(5) If a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

## 18 U.S.C. § 152(4) – FALSE CLAIMS

"[A person who] knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity, or as or through an agent, proxy, or attorney…[shall be fined not more than [$250,000], or imprisoned not more than five years, or both.]"

A claim is a legal document submitted to the court by a creditor of the entity that has filed bankruptcy.

It is immaterial whether the claim is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal equitable, secured, or unsecured. U.S. v. Connery, 867 F.2d 929, 934 (6th Cir. 1989).

### Elements of the Offense

1.  Bankruptcy proceedings have commenced under title 11.
2.  The defendant presents or causes to be presented a proof of claim in the bankruptcy.
3.  The proof of claim is false as to a material matter.
    The defendant knew the proof of claim was false.

## RACKETEERING - 18 U.S.C. §§ Section 1961(1)(D)

The United States Trustee Manual – Bankruptcy Fraud & Abuse Enforcement

Program includes a section on Racketeer Influenced and Corrupt Organizations (RICO).

18 U.S.C. §§ Section 1961(1)(D) defines racketeering activity as:

"Any offense involving fraud connected with a case under title 11 (except a case under section 157).

13

A "pattern of racketeering activity" means two acts of racketeering activity committed within ten years of each other.

### Section 5-9.7 United States Trustee Manual – Bankruptcy Fraud & Abuse

Enforcement Program – "False Statements and Schemes, 18 U.S.C. § 1001:

This section prohibits anyone within the jurisdiction of any department or agency of the United States from knowingly and willfully falsifying, concealing, or covering up, by any means, a material fact, or making a false statement or using any false document knowing that it contains false or fraudulent information.

### Section 5-9.7.1 Differences from 18 U.S.C. § 152:

There is no requirement that the statement or document be under oath. (emphasis added). Thus, unsworn statements, either oral or written, may be prosecuted under this section. Operating reports and other statements of a debtor in possession would be covered.

## COUNT IV
## Fraud in a Title 11
## RICO Section 1961(1)(D) – Racketeering

### W.B. Care Center LLC perfects a $2,500,000.00 unfunded note

On December 23, 2009, John Heller, Court Authorized Representative of W.B. Care

Center, LLC, signed an "Amended Settlement Agreement" between Debtor and Debtor-in-

Possession, W.B. Care Center, LLC ("Debtor" or "Debtor in Possession") and Institutional

Leasing, 1, LLC, Millennium Management, LLC, Abraham Shaulson, West Broward Group,

LLC and Eli Strohli (collectively "Institutional Parties").

Institutional shall be permitted, but not required to, credit bid under Bankruptcy Code § 363 (k) the amount of the DIP facility provided for herein and the $2.5 MM secured claim, which the Parties stipulate is not subject to dispute as to amount, extent, validity or priority.

Debtor agrees and acknowledges that the $2,500,000 Note, executed and delivered by Debtor having an effective date of June 30, 2008 was supported by adequate and reasonably

equivalent value and expressly waives any defenses or claims
alleging lack of adequate consideration.

## COUNT V
### Fraud in a Title 11
### RICO Section 1961(1)(D) – Racketeering

**W.B. Care Center LLC waives Plaintiff's right to sue for the loss of his business,
Q.I.S. Management LLC's balance of it's five year contract with W.B. Care Center**

On December 23, 2009, John Heller, Court Authorized Representative of W.B. Care

Center, LLC, signed an "Amended Settlement Agreement" between Debtor and Debtor-in-

Possession, W.B. Care Center, LLC ("Debtor" or "Debtor in Possession") and Institutional

Leasing, 1, LLC, Millennium Management, LLC, Abraham Shaulson, West Broward Group,

LLC and Eli Strohli (collectively "Institutional Parties").

> Loss of five year contract between Plaintiff's business, Q.I.S.
> Management, LLC and W.B. Care Center, LLC., valued at
> $2,079,000.00.

## COUNT VII
### Fraud in a Title 11
### RICO Section 1961(1)(D) – Racketeering

**W.B. Care Center LLC "carves out" Plaintiff's release from $2,500,000.00 lawsuit**

On December 23, 2009, John Heller, Court Authorized Representative of W.B. Care

Center, LLC, signed an "Amended Settlement Agreement" between Debtor and Debtor-in-

Possession, W.B. Care Center, LLC ("Debtor" or "Debtor in Possession") and Institutional

Leasing, 1, LLC, Millennium Management, LLC, Abraham Shaulson, West Broward Group,

LLC and Eli Strohli (collectively "Institutional Parties").

Dismissal of Subject Actions. The Parties shall effectuate dismissals with prejudice
of the claims against each other in the following actions:

      a.    Fraud Adversary
      b.    Preference Adversary; and
      c.    Institutional State Court Litigation solely against
           the Debtor

However, the Parties are not required to dismiss any claims brought against the Reardon Parties or that can be brought against the Reardon Parties, including those specifically pending in the Institutional State Court Action.

## COUNT VII
## Fraud in a Title 11
## RICO Section 1961(1)(D) - Racketeering

### W.B. Care Center LLC sues Plaintiff for management fees

On December 23, 2009, John Heller, Court Authorized Representative of W.B. Care

Center, LLC, signed an "Amended Settlement Agreement" between Debtor and Debtor-in-

Possession, W.B. Care Center, LLC ("Debtor" or "Debtor in Possession") and Institutional

Leasing, 1, LLC, Millennium Management, LLC, Abraham Shaulson, West Broward Group,

LLC and Eli Strohli (collectively "Institutional Parties").

> $62,586.43 judgment in W.B. Care Center LLC v. Timothy Patrick Reardon, Q.I.S. Management, LLC, and T.R. LLC in Adversary Procedure 10-2590-JKO.

## COUNT VIII
## Fraud in a Title 11
## RICO Section 1961(1)(D) - Racketeering

### W.B. Care Center says that Reardon is guilty as Misfeasance and Malfeasance

On December 23, 2009, John Heller, Court Authorized Representative of W.B. Care

Center, LLC, signed an "Amended Settlement Agreement" between Debtor and Debtor-in-

Possession, W.B. Care Center, LLC ("Debtor" or "Debtor in Possession") and Institutional

Leasing, 1, LLC, Millennium Management, LLC, Abraham Shaulson, West Broward Group,

LLC and Eli Strohli (collectively "Institutional Parties").

December 23, 2009
The Amended Settlement Agreement signed by W.B. Care Center, LLC also states:

WHEREAS, because of Reardon's misfeasance and malfeasance in his capacity as nursing home administrator by, inter alia, failing to produce books and records and adequately account for the financial condition of the Debtor,

16

"....because he is guilty of misfeasance and malfeasance"

"continued malfeasance in his capacity as nursing home administrator."

## COUNT IX
## Fraud in a Title 11
## RICO Section 1961(1)(D) - Racketeering

### W.B. Care Center says that Reardon is unfit to be a Nursing Home Administrator

February 16, 2010
Debtor-in-Possession's Response in Opposition to Appellant Timothy Reardon's Request to Expedite Appeal

"He is *unfit to run the Facility*"

## COUNT X
## Fraud in a Title 11
## RICO Section 1961(1)(D) - Racketeering

### W.B. Care Center says Reardon lied to the Agency for Health Care Administration when Plaintiff said that Millennium Management was paid to submit W.B. Care Center's Change of Ownership (C.H.O.W.) licensure application

On December 23, 2009, John Heller, Court Authorized Representative of W.B. Care

Center, LLC, signed an "Amended Settlement Agreement" between Debtor and Debtor-in-

Possession, W.B. Care Center, LLC ("Debtor" or "Debtor in Possession") and Institutional

Leasing, 1, LLC, Millennium Management, LLC, Abraham Shaulson, West Broward Group,

LLC and Eli Strohli (collectively "Institutional Parties").

December 23, 2009
Amended Settlement Agreement signed by W.B. Care Center, LLC states:

Heller Acknowledgment Regarding Reardon Allegations:

17

*Based* upon Heller's attendance at the settlement conference that resulted in the First Settlement Agreement, Heller obtained certain knowledge concerning Debtor's submissions to AHCA in connection with the change of ownership ("CHOW") application of W.B. Care Center, LLC.

Based upon that knowledge, Heller agrees and acknowledges that, based upon his knowledge, all written submission(s) by Debtor and/or Reardon to AHCA during or in connection with the CHOW application of W.B. Care Center, LLC, were sent by Debtor or its agents and were not the responsibility of Institutional, Millennium or Shaulson.

## COUNT XII
## Fraud in a Title 11
## RICO Section 1961(1)(D) – Racketeering

**W.B. Care Center says Reardon lied to the Agency for Health Care Administration when Plaintiff said that Millennium Management LLC and Institutional Leasing 1 LLC never funded a $2,500,000.000 loan.**

On December 23, 2009, John Heller, Court Authorized Representative of W.B. Care

Center, LLC, signed an "Amended Settlement Agreement" between Debtor and Debtor-in-

Possession, W.B. Care Center, LLC ("Debtor" or "Debtor in Possession") and Institutional

Leasing, 1, LLC, Millennium Management, LLC, Abraham Shaulson, West Broward Group,

LLC and Eli Strohli (collectively "Institutional Parties").

Heller acknowledges and agrees that Reardon's statements submitted to AHCA by the letter dated November 9, 2009 as well as any other related submissions purporting to allege fraud, intentional wrongdoing or other acts or omissions on behalf of Institutional Leasing 1, LLC Millennium Management, LLC, their Members, Managers, employees, agents, accountants or attorneys in connection with the CHOW application of Debtor were to the best of his knowledge without basis in fact.

## COUNT XII
## Fraud in a Title 11
## RICO Section 1961(1)(D) - Racketeering

**W.B. Care Center Calls Reardon an Embezzler**

18

January 29, 2010
W.B. Care Center, LLC vs. Timothy Patrick Reardon, Q.I.S. Management and T.R. LLC
Adversary Complaint to Avoid Unauthorized Post petition Transfer and Injunctive Relief

> "Plaintiff, W.B. Care Center, LLC ("Debtor" or "Plaintiff") sues the Defendants TIMOTHY REARDON, Q.I.S. Management, LLC (Q.I.S."), and T.R. LLC ("TR") (collectively the "Defendants"), to avoid and recover embezzled funds of the estate"

In a footnote:

> "No finding of embezzlement under 18 U.S.C. § 153 has been made. It appears, however, that all requisite elements for such a finding are present."

### COUNT XIII
### Fraud in a Title 11
### RICO Section 1961(1)(D) - Racketeering

### W.B. Care Center Calls Reardon an Embezzler

February 17, 2010
Appellee's Statement of Issues on Appeal [DE 354] In Re W.B. Care Center

"Issues on Appeal are:

> ii.      Whether the Bankruptcy Court properly found that Reardon beached his implied covenant of good faith and fair dealing that is implicit in any settlement agreement in attempting to embezzle Fifty Thousand Dollars and 00/100 ($50,000.00) from the Debtor's Debtor in Possession account, and previously successfully embezzling Twenty-Three Thousand Dollars from the Debtor's Debtor in Possession account.

### COUNT XIV
### Fraud in a Title 11
### RICO Section 1961(1)(D) - Racketeering

### W.B. Care Center LLC calls Reardon a Thief

May 5, 2010
Debtor's Motion In Re: W.B. Care Center, LLC [DE 458]

> "Due to Timothy Reardon's ("Reardon") theft of estate funds in breach of the Settlement Agreement.

19

## COUNT XV
## Fraud in a Title 11
## RICO Section 1961(1)(D) - Racketeering

### W.B. Care Center Calls Reardon an Embezzler

February 16, 2009
Debtor-in-Possession's Response in Opposition to Appellant Timothy Reardon's Request
to Expedite Appeal

> "Reardon <u>decided to steal money</u> from the Debtor, and then
> <u>attempted to steal</u> even more money a second time."

Respectfully submitted this

Timothy Patrick Reardon
226 N.E. 1st Ave
Miami, FL 33132
305-302-0601

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _11/6_, 2012, I electronically filed the foregoing
document with the Clerk of Court using CM/ECF. I also certify that a true and correct copy
of the foregoing document is being served this day on all counsel of record or pro se
parties identified below, either via transmission of Notices of Electronic Filing generated by
CM/ECF and/or United States first class mail, via facsimile or in some other authorized
manner for those counsel or parties who are not authorized to receive electronically
Notices of Electronic Filing:

20

# Exhibits

| Exhibit # | Description of MarcumRachlin, a Division of MarcumLLP in Court documents |
|-----------|-------------------------------------------------------------------------|
| # 1 | Accountant |
| # 2 | Accountants and Financial Advisors |
| # 3 | Debtor's Accountant |
| # 4 | Debtor's Financial Advisor |
| # 5 | Sole Signatory Authority on the Bank Account |
| # 6 | Sole Representative of the Debtor for purposes of day-to-day operation |
| # 7 | Unicorn Trustee |
| # 8 | Unicorn |
| # 9 | Ability to make decisions on behalf of W.B., the Debtor |
| # 10 | Sole Decision Maker |
| # 11 | Authority to execute documents |
| # 12 | Authority to bind Debtor |
| # 13 | Authority to prosecute any actions under 11 U.S.C. § 549 |
| # 14 | CRO (Chief Restructuring Officer) |
| # 15 | Accountant for Trustee |
| # 16 | Interim Operator for the Facility (West Broward Care Center) |
| # 17 | Court Appointed Corporate Representative |
| # 18 | Court Authorized Representative |
| # 19 | Trustee |

## #19 – Trustee

August 23, 2010
JPMorgan Chase Bank Statement – Bankruptcy Management Services lists
John Heller, **Trustee**. **(Exhibit # )**

[THIS PORTION OF THE PAGE WAS INTENTIONALLY LEFT BLANK]

    29.    <u>Confidentiality</u>. The Parties agree to keep the terms of the Agreement confidential except as required to obtain Bankruptcy Court approval.

| W.B. CARE CENTER, LLC | INSTITUTIONAL LEASING 1, LLC |
|---|---|
| By: _John T Heller_ | By: _____ |
| Its: _Court Authorized Representative_ | Its: _____ |
| Date: _12/23/09_ | Date: _____ |
| MILLENNIUM MANAGEMENT, LLC | ABRAHAM SHAULSON |
| By: _____ | _____ |
| Its: _____ | Date: _____ |
| Date: _____ | |
| ELI STROHLI | WEST BROWARD GROUP, LLC |
| _____ | By: _____ |
| Date: _____ | Its: _____ |
| | Date: _____ |

**JPMorganChase** ⬤

JPMorgan Chase Bank, N.A.
Bankruptcy Management Services
4 New York Plaza
New York, NY 10004

May 29, 2010 through June 30, 2010
Account Number:         6366

## CUSTOMER SERVICE INFORMATION

| Service Center: | 1-800-634-5273 |
|---|---|



00001613   802 24 18210 · NNNNN  1 000000000  60 0000
09-26196-JKO WBCARE CENTER LLC D/B/A W
BR-DIP DEBTOR
290000 JOHN HELLER TRUSTEE
BRANCH 312  4 NYP  13TH FLOOR
NEW YORK NY 10004

## CHECKING SUMMARY    Bankruptcy Business Checking

|  | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $3,719.40 |
| Deposits and Additions | 1 | 21.37 |
| Electronic Withdrawals | 4 | - 3,740.77 |
| Ending Balance | 5 | $0.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | Orig CO Name:Ndc Sweep          Orig ID: 541194122 Desc Date:100528 CO Entry Descr:Fac 6585 Sec:PPD   Trace#:021000025075154 Eed:100601  Ind ID:          Ind Name:W B Care Center, Llc Sweep Fr 20000429232 Trn: 1525075154Tc | $21.37 |
| | **Total Deposits and Additions** | **$21.37** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | Transfer To Chk Xxxxxxxx8166 | $81.45 |
| 06/01 | Orig CO Name:Reverse Sweep          Orig ID:9541194122 Desc Date:100528 CO Entry Descr:Fac 6585 Sec:PPD   Trace#:021000025983642 Eed:100601   Ind ID: Ind Name:W B Care Center, Llc Sweep Fr 20000429232 Trn: 1525983642Tc | 70.70 |
| 06/11 | Miscellaneous Debit | 1,698.62 |
| 06/18 | Miscellaneous Debit | 1,890.00 |
| | **Total Electronic Withdrawals** | **$3,740.77** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 06/01 | $3,588.62 |
| 06/11 | 1,890.00 |
| 06/18 | 0.00 |

Page 1 of 1

# 1 - Accountant
# 2 - Accountants and Financial Advisors
# 3 - Debtor's Accountant
# 4 - Debtor's Financial Advisor
# 5 - Sole Signatory Authority on the Bank Account
# 6 - Sole Representative of the Debtor for purposes of day-to-day operation
# 7 - Unicorn Trustee
# 8 - Unicorn
# 9 - Ability to make decisions on behalf of W.B., the Debtor
# 10 - Sole Decision Maker
# 11 - Authority to execute documents and
# 12 - Authority to bind Debtor
# 13 - Authority to prosecute any actions under 11 U.S.C. § 549
# 14 - CRO (Chief Restructuring Officer)
# 15 - Accountant for Trustee
# 16 - Interim Operator for the Facility (West Broward Care Center)
# 17 - Court Appointed Corporate Representative
# 18 - Trustee

## # 1 – Accountant

August 5, 2009 until September 13, 2012

PACER list of John Heller and Alan Barbee as "Accountant"

Also lists Soneet Kapila as Examiner and Kenneth Welt as Trustee

**09-26196-JKO** W.B. Care Center, LLC and Stearns Weaver Miller Weissler Alhadeff & Sitterso
**Case type:** bk **Chapter:** 7 **Asset:** Yes **Vol:** v **Judge:** John K Olson
**Date filed:** 08/05/2009 **Date of last filing:** 09/13/2012

# Filers

| Name | Type | Added | Terminated |
|---|---|---|---|
| Laura Barahona | Creditor | 01/29/2010 | 01/29/2010 |
| Alan R Barbee | Accountant | 12/09/2009 | 11/16/2010 |
| Michael A Borkowski Jr | Accountant | 11/02/2010 | |
| Broward County Revenue Collector | Creditor | 09/01/2009 | |
| Cheney Brothers Inc | Creditor | 11/19/2010 | |
| Florida Agency For Health Care Administration | Creditor | 11/09/2009 | |
| Foster Medical Supply | Creditor | 12/03/2009 | |
| Lynn Granata | Creditor | 01/29/2010 | |
| John L. Heller | Accountant | 12/09/2009 | 11/16/2010 |
| Institutional Leasing 1, LLC | Creditor | 08/06/2009 | |
| Iron Mountain Information Management, Inc. | Creditor | 09/04/2009 | |
| Soneet R. Kapila | Examiner | 11/06/2009 | |
| Medicare | Attorney | 01/26/2010 | |
| Medicom, LLC | Creditor | 06/29/2012 | |
| Millennium Management, LLC | Creditor | 08/19/2009 | |
| Paula Mosley | Creditor | 01/29/2010 | |
| Office of the US Trustee | U.S. Trustee | 08/05/2009 | |
| Omnicare Pharmacy of Florida, LP | Creditor | 12/11/2009 | |
| Park Shore Drug, Inc. | Creditor | 11/18/2009 | |
| Martha Peeples | Creditor | 01/29/2010 | |
| Timothy P Reardon | Creditor | 12/07/2009 | |
| Patricia A. Redmond | Attorney | 04/13/2010 | |
| Jacqueline Romano | Creditor | 01/29/2010 | |
| Service Employees International Union, Local 1999 | Creditor | 08/21/2009 | |
| Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. | Defendant | 09/11/2012 | |
| Summit Consulting, Inc. | Creditor | 02/11/2011 | |
| William R Trueba Jr | Special Counsel | 10/21/2009 | |
| United States of America | Witness | 08/12/2010 | |
| Vista Healthplan, Inc. | Creditor | 09/17/2009 | |
| W.B. Care Center, LLC | Debtor | 08/05/2009 | |

| Kenneth A Welt | | Trustee | 09/16/2010 | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/17/2012 15:07:14 | | | |
| **PACER Login:** | us5935 | **Client Code:** | |
| **Description:** | Filer List | **Search Criteria:** | 09-26196-JKO |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

## # 1 – Accountant (Continued)

Order Granting Debtor's Motion Seeking Entry of an Order Discharging Alan R. Barbee, CPA, John Heller, CPA and MarcumRachlin, a Division of Marcum, LLP

"Alan R. Barbee, CPA, John Heller, CPA ("Heller"), and MarcumRachlin, a Division of Marcum, LLP (when referred to collectively, the "Accountants")"



**ORDERED in the Southern District of Florida on November 15, 2010.**

John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

*In Re:*                                    **Chapter 11**

**W.B. CARE CENTER LLC**                    **Case No. 09-26196-JKO**
**d/b/a WEST BROWARD CARE CENTER**

_____Debtor._____ /

### ORDER GRANTING DEBTOR'S MOTION SEEKING ENTRY OF AN
### ORDER DISCHARGING ALAN R. BARBEE, CPA, JOHN HELLER, CPA,
### AND MARCUMRACHLIN, A DIVISION OF MARCUM, LLP, OF ANY AND
### ALL REMAINING DUTIES TO THE DEBTOR AND ITS BANKRUPTCY ESTATE

**THIS MATTER** came before the Court on Tuesday, October 19, 2010 at 10:00 a.m.

(the "Hearing"), upon W.B. Care Center, LLC's (the "Debtor" or "WB") *Motion Seeking Entry*

*of an Order Discharging Alan R. Barbee, CPA, John Heller, CPA, and MarcumRachlin, a*
*Division of Marcum, LLP, of any and all Remaining Duties to the Debtor and its Bankruptcy*
*Estate* (ECF 570) (the "Motion"). Having reviewed the Motion and finding good cause for the
relief requested therein, the Court

**ORDERS** as follows:

1.      The Motion is **GRANTED**.

2.      Alan R. Barbee, CPA, John Heller, CPA ("Heller"), and MarcumRachlin, a
Division of Marcum, LLP (when referred to collectively, the "Accountants") are discharged of
any and all residual duties that they may owe to the Debtor or its current Chapter 11, or future
chapter 7, bankruptcy estates stemming from their engagement in this case as accountants.

3.      Further, Heller is discharged of any and all responsibilities, duties or fiduciary
obligations to the Debtor, or its current Chapter 11, or future Chapter 7, bankruptcy estates,
including, but not limited to, the Expanded Duties[1] arising from the Heller Order.

4.      Heller and Accountants are forever released from all liability, including, but not
limited to, all manner of actions, claims, causes of action, suits, obligations, liabilities, damages,
debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts,
controversies, agreements, promises, expenses, compensation, attorneys' fees, court costs and
other costs, judgments, executions, demands and every other claim of any kind, either at law or
in equity, either direct or indirect, secondary or primary, and all consequences thereof, regardless
of whether such claims are known or unknown, foreseen or unforeseen, in existence currently or
inchoate and not yet accrued, which any entity or individual ever had, now has, hereafter can,

---

[1] Capitalized terms not defined herein shall be defined as in the Motion.

2

shall or may have against Heller and Accountants for any action Heller undertook in his role as

the Debtor's sole representative.

# # #

Respectfully Submitted by:

Robert P. Charbonneau, Esquire
Florida Bar No.: 968234
rpc@ecclegal.com
Ehrenstein Charbonneau Calderin
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002  F. 305.722.2001

**Copy to Robert P. Charbonneau, Esquire, who is directed to serve a conformed copy of the Order upon all Parties entitled to service and file a Certificate of Service.**

3

## # 2 - Accountants and Financial Advisors

October 27, 2009

### JOHN HELLER

After having been first duly sworn, was examined and testified as follows:

### DIRECT EXAMINATION

BY MS. REDMOND:

Q. Could you please state your name for the Court
A. Sure. John Heller. I'm a CPA with MarcumRachlin.

Q. And have you been retained in this case by the debtor-in-possession?
A. I have.

Q. And what is the capacity in which you've been retained?
A. As a *financial advisor or accountant to the debtor.*

Page 13

1    THEREUPON:

2                          JOHN HELLER

3    after having been first duly sworn, was examined and

4    testified as follows:

5                       DIRECT EXAMINATION

6    BY MS. REDMOND:

7         Q.   Good afternoon, Mr. Heller.

8         A.   How are you today?

9         Q.   Fine, thank you, and you?

10        A.   Good.

11        Q.   Could you please state your name for the

12   Court?

13        A.   Sure.  John Heller.  I'm a CPA with Markum

14   Rachlin.

15        Q.   And have you been retained in this case by

16   the debtor-in-possession?

17        A.   I have.

18        Q.   And what is the capacity in which you've

19   been retained?

20        A.   As a financial advisor or accountant to the

21   debtor.

22        Q.   And what does -- what is your role?  What

23   kinds of reports, what kinds of functions have you

24   been asked to perform in that capacity?

25        A.   Essentially, at this point, the debtor was

# # 2- Accountants and Financial Advisors - Continued

December 21, 2009
Order [DE 235] Granting Interim Fee Application of MarcumRachlin, a Division of Marcum, LLP as *Accountants and Financial Advisors* of W.B. Care Center, LLC.

ORDERED in the Southern District of Florida on _Dec 21. 2009_



John K. Olson, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION
#### www.flsb.uscourts.gov

In Re:                                            **Chapter 11**

**W.B. CARE CENTER LLC**                    **Case No. 09-26196-RBR**
**d/b/a WEST BROWARD CARE CENTER**

_____Debtor._____/

## OMNIBUS ORDER GRANTING INTERIM FEE APPLICATIONS OF VARIOUS PROFESSIONALS OF THE ESTATE: EHRENSTEIN CHARBONNEAU CALDERIN AS COUNSEL FOR DEBTOR IN POSSESSION [D.E. #208]; MARCUMRACHLIN A DIVISION OF MARCUM, LLP AS ACCOUNTANTS AND FINANCIAL ADVISORS [D.E. #203]; AND SONEET KAPILA AS EXAMINER [D.E. #203]

THIS MATTER came before the Court on Monday, December 21, 2009 at 1:00 p.m.

(the "Hearing") upon the following matters:

A.    The *Second Interim Application for Compensation and Reimbursement of*
*Expenses by Ehrenstein Charbonneau Calderin as Counsel for Debtor-In-Possession, W.B. Care*
*Center, LLC, for Allowance of Compensation and Reimbursement of Expenses* [D.E. #208]

(the "ECC Application"), wherein Ehrenstein Charbonneau Calderin ("ECC") sought compensation of fees in the amount of $57,707.00[1], and reimbursement of costs in the amount of $1,943.09 for the period of October 6, 2009 through and including December 5, 2009;

B.    The *First Interim Application of MarcumRachlin, a Division of Marcum, LLC as Accountant and Financial Advisor for Debtor-In-Possession, W.B. Care Center, LLC, for Allowance of Compensation and Reimbursement of Expenses* [D.E. #203] (the "MarcumRachlin Application"), wherein MarcumRachlin, a Division of Marcum, LLC, ("MarcumRachlin") sought compensation in the amount of $40,895.00 and reimbursement of expenses in the amount of $0.00 for the period September 24, 2009 through and including November 30, 2009; and

C.    The *First Interim Application of Soneet Kapila as Examiner Allowance of Compensation and Reimbursement of Expenses* [D.E.# 204] (the "Kapila Application"), wherein Soneet Kapila, the Examiner ("Examiner") sought compensation in the amount of $30,070.00 and reimbursement of expenses in the amount of $44.55 for the period November 2, 2009 through and including November 30, 2009. When the foregoing are referred to collectively, they are the "Fee Applications," and the "Applicants," respectively.

D.    The Court, having considered the Fee Applications, as well as the representations at the Hearing, and the Court, having taken into consideration 11 U.S.C. §§ 328, 330 and 331 and each of the factors that govern reasonableness as set forth in the requirements of F.R.B.P. 2016, and in light of the principles stated in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Pennsylvania v. Delaware valley Citizens' Council for Clean Air*,

---

1 $3,931.00 in fees has been included, for the period of October 1, 2009 to October 5, 2009 as these amounts were

2

478 U.S. 546 (1986); and *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299

(11th Cir. 1988), having heard the argument of counsel, it is

    **ORDERED** as follows:

    1.    The Fee Applications are APPROVED in the amounts set forth below:

| Professional | Fees Sought | % Awarded | Fees Awarded | Expenses Sought | % Awarded | Expenses Awarded |
|---|---|---|---|---|---|---|
| ECC | $57,707.00 | 80 | $46,165.60 | $1,943.09 | 100% | $1,943.09 |
| MarcumRachlin | $40,895.00 | 80 | $32,716. | $0.00 | N/A | $0.00 |
| Examiner | $30,070.40 | 80 | $24,056.32 | $44.55 | 100% | $44.55 |

    2.    In making the foregoing awards, the Court has evaluated the factors set forth in

*Matter of First Colonial Corp.*, 544 F.2d 1291 (5th Cir. 1977); and *Johnson v. Georgia Highway*

*Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and finds that the amounts awarded herein represent

reasonable compensation for actual and necessary services rendered and expenses incurred by

retained professionals. The award of fees herein is without prejudice to the Applicants seeking an

award of fees sought but held back under this Order.

###

Respectfully submitted by:
Robert P. Charbonneau, Esquire
Florida Bar No.: 968234
rpc@ecclegal.com
Ehrenstein Charbonneau Calderin
Attorneys for the Trustee
501 Brickell Key Dr, Suite 300
Miami, Florida 33131
T. 305.722.2002    F. 305.722.2001

Copy to: Attorney Charbonneau, who is directed to serve a conforming copy upon all interested parties.

---

incurred but not sought in the First Interim Fee Application [D.E. 124].

## #3 - Debtor's Accountant

December 8, 2009
Order [DE 207] Approving Employment of **Debtor's Accountant** of Alan R. Barbee, CPA
and John L. Heller, CPA.



**ORDERED in the Southern District of Florida on December 08, 2009.**

John K. Olson, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re

W.B. CARE CENTER, LLC                    CASE NO.  09-26196-BKC-JKO
                                         CHAPTER  11

_____Debtor_____/

### ORDER APPROVING EMPLOYMENT OF DEBTOR'S ACCOUNTANT

THIS MATTER came before the Court on Tuesday, October 6, 2009 at 2:00 p.m.

(the "Hearing") upon the Debtor's *Application for Employment of ALAN R. BARBEE, CPA*

*and JOHN L. HELLER, CPA of the accounting firm of MARCUMRACHLIN, A DIVISION*

*OF MARCUM LLP* (the "Accountants") [D.E. #109] in this case.  Upon the representations that

**ALAN R. BARBEE and JOHN L. HELLER** are Certified Public Accountants qualified to

practice in the state of Florida, that the Accountants hold no interest adverse to the estate in the

matters upon which they are engaged, that the Accountants are disinterested persons as required

by 11 U.S.C § 327(a), and have disclosed any connections with parties set forth in Bankruptcy

Rule 2014, and that their employment is necessary and would be in the best interests of the estate, the Court **ORDERS** as follows:

1.     The Application is **GRANTED**.     The Debtor is authorized to employ **ALAN R. BARBEE and JOHN L. HELLER of MARCUMRACHLIN, A DIVISION OF MARCUM LLP** as accountants for the Debtor, *nunc pro tunc* to September 25, 2009, pursuant to 11 U.S.C. §§ 327 and 330.

2.     The Employment of Estella Gamez and Venture Business Services, is terminated in this case.

3.     Institutional Leasing 1, LLC ("Institutional") agrees to carve out from its cash collateral the sum of Seventeen Thousand Five Hundred Dollars and 00/100 ($17,500.00) to fund the fees and expenses of the Accountants for the period of September 25, 2009 through October 17, 2009. This use is without predjudice to the Debtor requesting further use of cash collateral to fund the efforts of the Accountants for subsequent periods(s) of time not covered by this Order.

### 

**Submitted by:**
**Robert P. Charbonneau, Esquire**
**Ehrenstein, Charbonneau, Calderin PL**
**800 Brickell Avenue, Suite 902**
**Miami, Florida 33131**
**(305) 722-2002 (305) 722-2001 Fax**
**rpc@ecclegal.com**

**Attorney Robert P. Charbonneau is directed to serve copies of this Order on all interested and file a Certificate of Service.**

2

## # 4 Debtor's Financial Advisor

February 15, 2010

Debtor-in-Possession's Response in Opposition to Appellant Timothy Reardon's Request to Expedite Appeal

....John Heller, the Debtor's **financial advisor**.

approval. Also, Debtor submitted to the Bankruptcy Court that it was going to provide notice to additional interested parties of the First 9019 Motion and provide any additional ancillary terms or documents as were necessary to consummate the First Settlement Agreement. Accordingly, the Bankruptcy Court continued the hearing on the First 9019 Motion to approve the First Settlement Agreement to December 14, 2009 (D.E. 187). The hearing on the First 9019 Motion and to approve the First Settlement Agreement was subsequently continued to December 17, 2009 [D.E. 190].

7.      On or around December 10, 2009, the Debtor and Examiner learned that Reardon had attempted to withdraw $50,000.00 (the "Attempted Transfer") from the Debtor's Debtor-In-Possession operating account at Regions Bank (the "Operating Account") without authorization from the Court, the Examiner, the Debtor's professionals, or Institutional. While in the act of attempting to steal funds from the Debtor, Reardon's canard was discovered by John Heller, the Debtor's financial advisor. Heller and the Examiner took the necessary steps to prevent the theft of the $50,000 of estate funds.

8.      Subsequent to December 10, 2009, and after having received the December bank statements for the   Debtor-In-Possession accounts, the Debtor learned that Reardon had successfully withdrawn $23,000.00 from the Debtor's payroll account at Regions Bank (the "Payroll Account") after the First Settlement Agreement, but before Heller   and the Examiner   discovered   the   unauthorized   attempt   to   withdraw   the   $50,000.00 (the "Unauthorized Transfer").

9.      Reardon's actions clearly breached the terms of the First Settlement Agreement, the Preliminary Approval Order, the Bankruptcy Code, and other federal and state civil and criminal laws.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

## #5 - Sole Signatory Authority on the Bank Account

December 14, 2009

MS REDMOND:     Having said that, the logical conclusion will be,

"Well, do we appoint a trustee?"

....but what we really need to do is to deal with some other decision maker and some vehicle to do that that won't offend Mr. Rodriguez, so I've been kind of scratching my head, as has Mr. Gold and Mr. Charbonneau, to try to find the appropriate way.

We believe that if your Honor expanded powers for Mr. Kapila and for Mr. Heller to allow Mr. Heller **sole signatory authority on the bank account** and the ability to make decisions on behalf of W.B., the debtor, that in that case, it may solve the problem.

Page 14

1    bears on the extent to which you expand powers in this
2    circumstance, because it's at least Institutional's
3    position today that Mr. Reardon ought be nowhere near
4    the bank account, nor within the prospect of making
5    decisions for this entity.

6         Having said that, the logical conclusion will
7    be, "Well, do we appoint a trustee?"  And we have a
8    facility here that's operating successfully right now
9    under Mr. Kapila's and Mr. Heller's supervision that
10   is fragile, because AHCA, when it gets nervous, then
11   bad things happen to a facility, and its comfortable
12   with the operation and the level of patient care, and
13   everyone has recognized that patient care is the most
14   important thing here, but what we really need to do is
15   to deal with some other decision maker and some
16   vehicle to do that that won't offend Mr. Rodriguez, so
17   I've been kind of scratching my head, as has Mr. Gold
18   and Mr. Charbonneau, to try to find the appropriate
19   way, and we believe that if your Honor expanded powers
20   for Mr. Kapila and for Mr. Heller to allow Mr. Heller
21   sole signatory authority on the bank account and the
22   ability to make decisions on behalf of W.B., the
23   debtor, that in that case it may solve the problem.

24        At least it gets Mr. Reardon out of any
25   capacity where he could do harm to this debtor or try

## #5- Sole Signatory Authority on the Bank Account - Continued

December 21, 2009
Agreed Order Granting Debtor's Application to Expand Scope of employment of MarcumRachlin, A Division of Marcum LLP:

> "Heller shall be added as the **sole signatory for the Debtor** regarding any and all of the Debtor's financial accounts."

(the "Application")[1]. [D.E. # 194]  The Court, having considered the Application, as well as the

agreement of the Parties, Institutional Leasing 1, LLC ("Institutional"), the Examiner, Soneet Kapila

(the "Examiner"), and the Office of the United States Trustee (the "UST"), and finding that the

expansion of the scope of employment of Alan R. Barbee, CPA ("Barbee") and John L. Heller, CPA,

("Heller") of MarcumRachlin, a division of Marcum LLP (the "Accountants") is necessary and is in

the best interests of the Estate, and for the reasons stated in the Application and on the record, it is–

   **ORDERED** as follows:

   1.      The Application is **GRANTED**.

   2.      The scope of the employment of the Accountants is expanded so that the Examiner

shall be removed as a signatory on the Debtor's financial accounts, and Heller shall be added as the

sole signatory for the Debtor regarding any and all of the Debtor's financial accounts. Heller,

however, shall be a co-signatory on the Debtor's accounts along with Mr. Zev Shemesh

(the "Administrator"). In addition, Heller shall be the sole representative of the Debtor for purposes

of the day-to-day operation of the Debtor's facility. In his capacity as sole representative, Heller

shall work with the Administrator and the Examiner in their respective capacities. For the

elimination of doubt, this Order does not affect the respective capacities of the Examiner or the

Administrator unless otherwise herein specified.

   3.      The Administer shall review all pending payables with Heller prior to their payment.

   4.      The Administrator, in consultation with Millennium Management, shall coordinate

with the Accountants in the preparation of each and every cash collateral budget, and each and every

of Debtor's monthly operating financial report as required while the Debtor remains a debtor-in-

possession under Chapter 11 of Title 11 of the United States Code.

---

1   The order granting the retention of the Accountants was subsequently entered by the Court on December 9, 2009,

2

## #6 - Sole Representative of the Debtor for purposes of day-to-day operation

December 21, 2009
Agreed Order Granting Debtor's Application to Expand Scope of employment of MarcumRachlin, A Division of Marcum LLP:

> "Heller shall be the **sole representative of the Debtor** for purposes of the day-to-day operation of the Debtor's facility."

(the "Application")[1]. [D.E. # 194]  The Court, having considered the Application, as well as the

agreement of the Parties, Institutional Leasing 1, LLC ("Institutional"), the Examiner, Soneet Kapila

(the "Examiner"), and the Office of the United States Trustee (the "UST"), and finding that the

expansion of the scope of employment of Alan R. Barbee, CPA ("Barbee") and John L. Heller, CPA,

("Heller") of MarcumRachlin, a division of Marcum LLP (the "Accountants")  is necessary and is in

the best interests of the Estate, and for the reasons stated in the Application and on the record, it is–

**ORDERED** as follows:

1.     The Application is **GRANTED**.

2.     The scope of the employment of the Accountants is expanded so that the Examiner

shall be removed as a signatory on the Debtor's financial accounts, and Heller shall be added as the

sole signatory for the Debtor regarding any and all of the Debtor's financial accounts. Heller,

however, shall be a co-signatory on the Debtor's accounts along with Mr. Zev Shemesh

(the "Administrator"). In addition, Heller shall be the sole representative of the Debtor for purposes

of the day-to-day operation of the Debtor's facility. In his capacity as sole representative, Heller

shall work with the Administrator and the Examiner in their respective capacities. For the

elimination of doubt, this Order does not affect the respective capacities of the Examiner or the

Administrator unless otherwise herein specified.

3.     The Administer shall review all pending payables with Heller prior to their payment.

4.     The Administrator, in consultation with Millennium Management, shall coordinate

with the Accountants in the preparation of each and every cash collateral budget, and each and every

of Debtor's monthly operating financial report as required while the Debtor remains a debtor-in-

possession under Chapter 11 of Title 11 of the United States Code.

---

1     The order granting the retention of the Accountants was subsequently entered by the Court on December 9, 2009,

2

## #7 - Unicorn Trustee

October 25, 2010
Kenneth A. Welt, as the Chapter 7 Trustee for the Estate, W.B. Care Center, LLC, filed "Chapter 7 Trustee's Ex Parte Application for Employment of Accountants Nunc Pro Tunc to September 16, 2010."

> The Debtor operated under the direction of a "**Unicorn Trustee**" until on or around May 10, 2010, when an Order was entered approving the sale of substantially all of the Debtor's assets [DE #463]."

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### (FORT LAUDERDALE DIVISION)
#### www.flsb.uscourts.gov

In re:                                    Case No. 09-26196-BKC-JKO

W.B. CARE CENTER LLC                   Chapter 7
d/b/a WEST BROWARD CARE CENTER,

    Debtor.
_____/

### CHAPTER 7 TRUSTEE'S *EX PARTE* APPLICATION FOR
### EMPLOYMENT OF ACCOUNTANTS *NUNC PRO TUNC* TO SEPTEMBER 16, 2010

    KENNETH A. WELT, as the Chapter 7 Trustee for the estate of In re W.B. Care Center

LLC d/b/a West Broward Care Center (the "Debtor"), pursuant to S.D. Bankr. Local Rules 2014-

1 and 9013-1(C)(3), 11 U.S.C. §§ 327 and 330, and Rule 2014 of the Federal Rules of

Bankruptcy Procedure, respectfully requests an Order of the Court authorizing the employment

of Michael A. Borkowski, CPA ("Accountant") and Ahearn Jasco + Company, P.A. (the "Firm")

*nunc pro tunc* to September 16, 2010, to represent the Chapter 7 Trustee in this case and states:

#### BACKGROUND

    1.    The Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 of

Title 11 of the United States Bankruptcy Code on August 5, 2009.

    2.    The Debtor operated under the direction of a "Unicorn Trustee" until on or around

May 10, 2010, when an Order was entered approving the sale of substantially all of the Debtor's

assets (DE #463).

    3.    On September 13, 2010 it was determined that the case would be best

administered under Chapter 7 of Title 11 of the United Stated States Bankruptcy Code, and an

Order was entered converting the case to a Chapter 7 proceeding (DE #565).

## #8 - Unicorn

<u>December 14, 2009</u>
MS REDMOND:        What Institutional  would intend to do is to work with the trustee –

The trustee, oops, sorry.

Mr. Rodriguez  would have a heart attack,

***the unicorn –***

work with the ***unicorn*** this week and see if we can reach an
alternative settlement of the litigation issues in the case that leaves
out Mr. Reardon, both in respect of his affirmative relief and his
relief that he was getting as a party to the settlement.

Case 12-02072-JKO Doc 6 Filed 11/06/12 Page 53 of 77

Case 1:12-cv-20829-JAL Document 107-2 Entered on FLSD Docket 10/11/2012 Page 42 of
174
Case 0:10-cv-60360-KMM Document 2-7 Entered on FLSD Docket 03/10/2010 Page 19 of 32

Page 19

1    in a nursing home.

2            MS. REDMOND: And, your Honor, I guess that

3    segues perfectly into a status on the settlement,

4    because the settlement was something that Mr. Tabas

5    and I were trying to put finishing touches on, a

6    revised settlement agreement, and we are not there,

7    and I'm not sure, given the present circumstances,

8    that we can get there.

9            What Institutional would intend to do is to

10   work with the trustee -- the trustee, oops, sorry.

11   Mr. Rodriguez would have a heart attack, the

12   unicorn -- work with the unicorn this week and see if

13   we can reach an alternate settlement of the litigation

14   issues in the case that leaves out Mr. Reardon, both

15   in respect of his affirmative relief and his relief

16   that he was getting as a party to the settlement.

17            THE COURT: Very interesting.

18            I assume that you've seen Mr. Shapiro's

19   pleading of this morning or yesterday?

20            MS. REDMOND: Your Honor, I --

21            MR. SHAPIRO: Friday, Judge.

22            THE COURT: Friday. Sorry, I didn't mean to

23   suggest you were filing things this morning.

24            It makes for very interesting reading.

25            MS. REDMOND: Yes, your Honor, and it may

## #8 – Unicorn - Continued

February 10, 2010
MR HELLER:        John Heller, I am the accountant for the debtor, and as Ms. Redmond
                  puts it, the "*unicorn*" in this case.  (emphasis added).  **(Exhibit # 6)**

Case 12-02072-JKO   Doc 6   Filed 11/06/12   Page 55 of 77

Case 1:12-cv-20829-JAL   Document 107-2   Entered on FLSD Docket 10/11/2012   Page 48 of
Case 09-26196-JKO   Doc 349   Filed 02/17/10   Page 3 of 44
174

Page 3

1                    THE COURT:  Let me take appearances for the

2     record in W.B. Care Center.

3                    MR. CHARBONNEAU:  Good morning, your Honor.

4     I'm Bob Charbonneau.  I'm with Ehrenstein Charbonneau &

5     Calderin.  We're counsel to the debtor.

6                    THE COURT:  Good morning, Mr. Charbonneau.

7                    Good morning, Ms. Redmond.

8                    MS. REDMOND:  Good morning, your Honor.

9     Patricia Redmond, Stearns Weaver, on behalf of

10    Institutional Leasing, LLC.

11                   MR. KAPILA:  Good morning, Judge.'

12    Soneet Kapila, I'm the examiner in this case.

13                   THE COURT:  Good morning, Mr. Kapila.

14                   MR. HELLER:  Good morning, your Honor.

15    John Heller, I am the accountant for the debtor, and as

16    Ms. Redmond puts it, the unicorn in this case.

17                   THE COURT:  Good morning to all of you.

18                   MR. RODRIGUEZ:  Good morning, your Honor,

19    Ariel Rodriguez on behalf of the United States Trustee.

20                   THE COURT:  Good morning, Mr. Rodriguez.

21                   MR. CHARBONNEAU:  Your Honor, sort of

22    previewing matters, and discussing open issues with

23    Ms. Redmond last night, we have a suggested order in which

24    we'd like to take the matters, which is not on the

25    calendar, if it pleases the Court.

## #9 – Ability to make decisions on behalf of W.B., the Debtor

December 14, 2009
MS REDMOND:      We believe that if your Honor expanded powers for Mr. Kapila and for
                 Mr. Heller to allow Mr. Heller sole signatory authority on the bank
                 account and *the ability to make decisions on behalf of W.B.*,
                 *the debtor*, that in that case, it may solve the problem.

1   bears on the extent to which you expand powers in this
2   circumstance, because it's at least Institutional's
3   position today that Mr. Reardon ought be nowhere near
4   the bank account, nor within the prospect of making
5   decisions for this entity.

6       Having said that, the logical conclusion will
7   be, "Well, do we appoint a trustee?"  And we have a
8   facility here that's operating successfully right now
9   under Mr. Kapila's and Mr. Heller's supervision that
10  is fragile, because AHCA, when it gets nervous, then
11  bad things happen to a facility, and its comfortable
12  with the operation and the level of patient care, and
13  everyone has recognized that patient care is the most
14  important thing here, but what we really need to do is
15  to deal with some other decision maker and some
16  vehicle to do that that won't offend Mr. Rodriguez, so
17  I've been kind of scratching my head, as has Mr. Gold
18  and Mr. Charbonneau, to try to find the appropriate
19  way, and we believe that if your Honor expanded powers
20  for Mr. Kapila and for Mr. Heller to allow Mr. Heller
21  sole signatory authority on the bank account and the
22  ability to make decisions on behalf of W.B., the
23  debtor, that in that case it may solve the problem.

24      At least it gets Mr. Reardon out of any
25  capacity where he could do harm to this debtor or try

## #10 - Sole Decision Maker

December 23, 2009
$250,000 DIP Revolving Credit Facility Proposal Letter

*"sole decision making authority."*

Debtor.

10. Except as providing in this Proposal Letter and the Final Order, Debtor shall pay and discharge all post-petition debts and obligations when due, and before subject to penalty or further charge, and otherwise satisfy before maturity or delinquency, all obligations, debts, and liabilities of whatever nature or amount, other than those which Debtor in good faith disputes and Lender consents to such dispute.

11. Timothy Reardon shall have no involvement with the Debtor or the Collateral and John Heller shall remain as CRO of the Debtor with sole decision making authority.

12. Debtors shall, in consultation with Lender, take all actions necessary to secure Lender's collateral the nursing home facility located at 7751 West Broward Boulevard, Plantation, Florida 33324; and

13. Without the prior consent of Lender, Debtor shall not seek, consent to, or permit to occur without Debtor's objection, any of the following:

   a. Any order which authorizes the assumption or rejection of any leases of Debtor without Lender's prior written consent;

   b. Any modification, stay, vacation or amendment to the Final Order to which Lender has not consented in writing;

   c. A priority claim or administrative expense or unsecured claim against Debtor (now existing or hereafter arising of any kind or nature whatsoever, including without limitation, any administrative expense of the kind specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 364(c) 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114) equal or superior to the priority claim of Lender in respect of the obligations hereunder, except with respect to the Carve-Out;

   d. Any lien on any Collateral having a priority equal or superior to the lien securing the obligations hereunder, other than with respect to the Carve-Out;

   e. Any order which authorizes the payment of any indebtedness incurred prior to the petition date without Lender's prior written consent;

   f. Any order seeking authority to take any action that is prohibited by the terms of this Proposal Letter or the Final

6

## #11– Authority to execute documents

December 23, 2009

Amended Settlement Agreement:

WHEREAS, on December _, 2009, the bankruptcy Court entered an Order granting the Heller Motion (D.E. _) ("Heller Order").

By virtue of the Heller Order, Heller is Debtor's sole representative, and **he posses the authority to execute documents** and bind Debtor, including without limitation this Agreement.

WHEREAS, on December __, 2009, the Bankruptcy Court entered an Order granting the Heller Motion (D.E. __) ("**Heller Order**"). By virtue of the Heller Order, Heller is Debtor's sole representative, and he possesses the authority to execute documents and bind Debtor, including without limitation this Agreement.

WHEREAS, the Institutional Parties and Debtor no longer wish to proceed with approval of the First Settlement Agreement because Reardon removed Debtor's funds without authorization and, thus, breached the First Settlement Agreement and because he is guilty of misfeasance and malfeasance.

WHEREAS, despite Reardon's breach of the First Settlement Agreement and continued malfeasance in his capacity as nursing home administrator, the Parties mutually desire to resolve the claims asserted or that could be asserted against each other in the Institutional State Court Action, the WB Case, the Preference Adversary, the Fraud Adversary and any other matters of dispute between the Parties ("**Subject Actions**").

NOW THEREFORE, in consideration of the foregoing and the mutual promises, undertakings and agreements contained herein, subject to Bankruptcy Court approval, the Parties agree as follows:

1.    Incorporation of Recitals. The foregoing recitals are true and correct and incorporated herein by reference.

2.    Denial of Liability. The Parties agree that this Agreement is a compromise and settlement of disputed claims, and none of the Parties admit, and each expressly denies, any liability on its part, except as may expressly be set forth herein.

3.    Settlement Payment. Institutional shall place $10,000 in escrow with the Examiner to be paid to Debtor as follows: (i) $5,000 upon an order of the bankruptcy court approving the Bankruptcy Code § 363 sale contemplated herein, which is not subject to appeal or rehearing ("**Final Order**") or, if timely appealed, is not subject to a stay pursuant to Fed. R. Bank. P. 8005, and (ii) $5,000 upon effectuation of the Nursing Home License transfer.

4.    DIP Facility. Institutional shall provide, or arrange for the provision of, a Debtor in Possession Financing Facility ("**DIP Facility**") in the maximum amount of $250,000 to insure post-petition obligations after November 12, 2009 are paid in a timely fashion. Institutional, or the Lender funding the DIP Facility, shall be provided with all of the traditional protections afforded to DIP Lenders. The DIP Facility shall be used to fund (i) professional fees of Debtor reasonably incurred to date, and incurred prospectively in effectuating a Bankruptcy Code § 363 sale, and approved by the Bankruptcy Court; (ii) United States Trustee Fees; and (iii) all timely filed, valid and allowable administrative expenses incurred by the Debtor from the Petition Date through and including the dismissal of the WB Case.

4 of 10

## #12 Authority to bind Debtor

December 23, 2009

Amended Settlement Agreement:

WHEREAS, on December _, 2009, the bankruptcy Court entered an Order granting the Heller Motion (D.E. _) ("Heller Order").

By virtue of the Heller Order, Heller is Debtor's sole representative, and **he posses the authority to** execute documents and **bind Debtor, including without limitation this Agreement.**

WHEREAS, on December __, 2009, the Bankruptcy Court entered an Order granting the Heller Motion (D.E. __) ("**Heller Order**"). By virtue of the Heller Order, Heller is Debtor's sole representative, and he possesses the authority to execute documents and bind Debtor, including without limitation this Agreement.

WHEREAS, the Institutional Parties and Debtor no longer wish to proceed with approval of the First Settlement Agreement because Reardon removed Debtor's funds without authorization and, thus, breached the First Settlement Agreement and because he is guilty of misfeasance and malfeasance.

WHEREAS, despite Reardon's breach of the First Settlement Agreement and continued malfeasance in his capacity as nursing home administrator, the Parties mutually desire to resolve the claims asserted or that could be asserted against each other in the Institutional State Court Action, the WB Case, the Preference Adversary, the Fraud Adversary and any other matters of dispute between the Parties ("**Subject Actions**").

NOW THEREFORE, in consideration of the foregoing and the mutual promises, undertakings and agreements contained herein, subject to Bankruptcy Court approval, the Parties agree as follows:

1.      Incorporation of Recitals. The foregoing recitals are true and correct and incorporated herein by reference.

2.      Denial of Liability. The Parties agree that this Agreement is a compromise and settlement of disputed claims, and none of the Parties admit, and each expressly denies, any liability on its part, except as may expressly be set forth herein.

3.      Settlement Payment. Institutional shall place $10,000 in escrow with the Examiner to be paid to Debtor as follows: (i) $5,000 upon an order of the bankruptcy court approving the Bankruptcy Code § 363 sale contemplated herein, which is not subject to appeal or rehearing ("**Final Order**") or, if timely appealed, is not subject to a stay pursuant to Fed. R. Bank. P. 8005, and (ii) $5,000 upon effectuation of the Nursing Home License transfer.

4.      DIP Facility. Institutional shall provide, or arrange for the provision of, a Debtor in Possession Financing Facility ("**DIP Facility**") in the maximum amount of $250,000 to insure post-petition obligations after November 12, 2009 are paid in a timely fashion. Institutional, or the Lender funding the DIP Facility, shall be provided with all of the traditional protections afforded to DIP Lenders. The DIP Facility shall be used to fund (i) professional fees of Debtor reasonably incurred to date, and incurred prospectively in effectuating a Bankruptcy Code § 363 sale, and approved by the Bankruptcy Court; (ii) United States Trustee Fees; and (iii) all timely filed, valid and allowable administrative expenses incurred by the Debtor from the Petition Date through and including the dismissal of the WB Case.

4 of 10

## **#13 - Authority to prosecute any actions under 11 U.S.C. § 549**

December 21, 2009
Agreed Order Granting Debtor's Application to Expand Scope of employment of MarcumRachlin, A Division of Marcum LLP:

> "Heller shall also have immediate authority **to prosecute any actions under 11 U.S.C. § 549"**

5.    Heller shall also have immediate authority to prosecute any actions under 11 U.S.C. § 549.

#####

**Respectfully submitted by**:

Robert P. Charbonneau, Esquire
**rpc@ecclegal.com**
**Counsel for Debtor In Possession**
**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive, Suite 300**
**Miami, Florida 33131**
**T 305.722.2002 - F. 305.722.2001**
www.ECClegal.com

**cc: Attorney Charbonneau, who is directed to serve the Order on all Parties-In-Interest**

---

and provides for *nunc pro tunc* relief to September 25, 2009[D.E. #207].

## #14 - CRO (Chief Restructuring Officer)

December 30, 2009
Transcript of December 30 Motion to Compromise Controversy with Institutional Leasing 1, LLC, filed by Debtor

Mr. Charbonneau: ....and what it basically provides for is that Mr. Heller, for lack of a better term, is effectively **the debtor's CRO** now, **although he's not called that in any pleading**

1          MR. CHARBONNEAU:   Judge, there was a very
2     extensive acknowledgement that was to be made
3     regarding certain allegations made by Mr. Rearden
4     against Institutional to AHCH and others.   The
5     provision's been modified significantly, and what it
6     basically provides for is that Mr. Heller, for lack
7     of a better term, is effectively the debtor's CRO
8     now, although he's not called that in any pleading,
9     will, based upon his attendance at the settlement
10    conference that resulted in the first settlement
11    agreement, and based on the knowledge that he
12    obtained at that conference, make certain
13    acknowledgements to AHCH concerning the change of
14    ownership application when the debtor purchased its
15    interest in the facility from Institutional --
16    rather, from WB, I think, Group, an entity owned by
17    Mr. Strohli, that based on the knowledge, Mr. Heller
18    agrees and acknowledges, and now I'm quoting from the
19    provision, Judge, "that based upon his knowledge all
20    written submissions by the debtor and/or Rearden to
21    AHCH during or in connection with the CHOW, or change
22    in ownership process, of W.B. Care Center, LLC were
23    sent by the debtor or its agents, and were not the
24    responsibility of Institutional, Millennium or
25    Shaulson, and that Mr. Heller acknowledges and

## #14 - CRO (Chief Restructuring Officer) - Continued

December 23, 2009
$250,000 DIP Revolving Credit Facility Proposal Letter

"*John Heller shall remain as CRO*"

Debtor.

10. Except as providing in this Proposal Letter and the Final Order, Debtor shall pay and discharge all post-petition debts and obligations when due, and before subject to penalty or further charge, and otherwise satisfy before maturity or delinquency, all obligations, debts, and liabilities of whatever nature or amount, other than those which Debtor in good faith disputes and Lender consents to such dispute.

11. Timothy Reardon shall have no involvement with the Debtor or the Collateral and John Heller shall remain as CRO of the Debtor with sole decision making authority.

12. Debtors shall, in consultation with Lender, take all actions necessary to secure Lender's collateral the nursing home facility located at 7751 West Broward Boulevard, Plantation, Florida 33324; and

13. Without the prior consent of Lender, Debtor shall not seek, consent to, or permit to occur without Debtor's objection, any of the following:

a. Any order which authorizes the assumption or rejection of any leases of Debtor without Lender's prior written consent;

b. Any modification, stay, vacation or amendment to the Final Order to which Lender has not consented in writing;

c. A priority claim or administrative expense or unsecured claim against Debtor (now existing or hereafter arising of any kind or nature whatsoever, including without limitation, any administrative expense of the kind specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 364(c) 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114) equal or superior to the priority claim of Lender in respect of the obligations hereunder, except with respect to the Carve-Out;

d. Any lien on any Collateral having a priority equal or superior to the lien securing the obligations hereunder, other than with respect to the Carve-Out;

e. Any order which authorizes the payment of any indebtedness incurred prior to the petition date without Lender's prior written consent;

f. Any order seeking authority to take any action that is prohibited by the terms of this Proposal Letter or the Final

6

## #15 - Accountant for Trustee

April 13, 2010
Summary of Third Interim Fee Application of MarcumRachlin, A Division of Marcum LLP
states that it is the "*Accountant for Trustee*"  (Exhibit # )

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

IN RE:

W.B. CARE CENTER, LLC

CASE NO. 09-26196-BKC-JKO
CHAPTER 11

Debtor(s)_____/

## SUMMARY OF THIRD INTERIM FEE APPLICATION OF MARCUMRACHLIN, A DIVISION OF MARCUM LLP ACCOUNTANT FOR CHAPTER 11 DEBTOR

| | | |
|---|---|---|
| 1. | Name of applicant: ............................................ MarcumRachlin, a division of Marcum LLP. | |
| 2. | Role of applicant: ................................................................................Accountant for Trustee | |
| 3. | Name of certifying professional: ........................................................................John L. Heller | |
| 4. | Date case filed: ................................................................................................ August 5, 2009 | |
| 5. | Date of application for employment:................................................................October 2, 2009 | |
| 6. | Date of order approving employment:........................................................ December 8, 2009 | |
| 7. | If debtor's counsel, date of Disclosure of Compensation form:.......................................N/A | |
| 8. | Date of this application: ............................................................................... April 12, 2010 | |
| 9. | Dates of services covered: ........................................................................1/29/10-4/12/10 | |
| 10. | If Chapter 7, amount Trustee has on hand....................................................................$0.00 | |

**Fees...**

| | | |
|---|---|---|
| 11. | Total fee requested for this period (from Exhibit 1): .............................................$37,319.50 | |
| 11a. | Courtesy Discount ....................................................................................................1,819.50 | |
| 12. | Balance remaining in fee retainer account, not yet awarded: .........................................$0.00 | |
| 13. | Fees paid or advanced for this period, by other sources:.................................................$0.00 | |
| **14.** | **Net amount of fee requested for this period: ....................................................$35,500.00** | |

**Expenses...**

| | | |
|---|---|---|
| 15. | Total expense reimbursement requested for this period:..............................................$10.40 | |
| 16. | Balance remaining in expense retainer account, not yet received: .................................$0.00 | |
| 17. | Expenses paid or advanced for this period, by other sources:.........................................$0.00 | |
| **18.** | **Net amount of expense reimbursements requested for this period: ......................$10.40** | |
| 19. | Gross award requested for this period (#11 + #15): ..............................................$37,510.40 | |
| **20.** | **Net award requested for this period (#14 + #18):...........................................$35,510.40** | |
| 21. | If Final Fee Application, amounts of net awards requested in interim applications but not previously awarded (total from History of Fees and Expenses, following pages): .........................................$0.00 | |
| **22.** | **Total fee and expense award requested (#20 + #21): ........................................... $35,510.40** | |

## #16 - Interim Operator for the Facility (West Broward Care Center)

June 2, 2010
Debtor's Emergency Motion to Approve Post-Closing Management Agreement

"The Facility cannot operate without a properly licensed operator, and administrative and economic considerations as well as plain common sense advise that *John Heller should be authorized to act as a interim operator for the Facility* until Royal Meridian is approved by AHCA."

"...to manage, under the supervision of John Heller, ("Heller") the facility of the Debtor (the "Facility")."

"...and John Heller is the Debtor's sole representative responsible for management and operation of the Facility."

"...Mr. Heller will be indemnified by Royal Meridian for all acts by Royal Meridian in his administration of the Facility."

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION
#### www.flsb.uscourts.gov

In Re:                                                    **Chapter 11**

**W.B. CARE CENTER LLC**                      **Case No. 09-26196-JKO**
**d/b/a WEST BROWARD CARE CENTER**

_____Debtor._____/

### DEBTOR'S EMERGENCY MOTION TO APPROVE POST-CLOSING MANAGEMENT AGREEMENT, *NUNC PRO TUNC* TO JUNE 1, 2010

*[Expedited Hearing Requested on Thursday, June 3, 2010 at 10:00 a.m.]*

> The Debtor seeks emergency authority to approve the Management Agreement attached as Exhibit "A" until AHCA approves the new operator, Royal Meridian Management Company, LLC, as a fully licensed manager of the Facility. Because the installation of a new operator will necessitate a short delay between the period when the Sale of the Facility to Institutional Leasing I, LLC closes and AHCA approves and licenses Royal Meridian, Institutional, Royal Meridian, and the Debtor agree that the Facility will be best managed by Royal Meridian, under the supervision of John Heller, according to the terms of the proposed Management Agreement. The Facility cannot operate without a properly licensed operator, and administrative and economic considerations as well as plain common sense advise that John Heller should be authorized to act as a interim operator for the Facility until Royal Meridian is approved by AHCA.

W.B. CARE CENTER, LLC d/b/a WEST BROWARD CARE CENTER, ("W.B." or the

"Debtor"), pursuant to 11 U.S.C. §§ 363 and 105, moves the Court (the "Motion") for an order

approving the Management Agreement attached hereto as **Exhibit "A"** to allow Royal Meridian

Management Company, LLC ("Royal Meridian"), to manage, under the supervision of John

Heller, ("Heller") the facility of the Debtor (the "Facility") which went into effect on

June 1, 2010 (the "Management Agreement"), subject to the approval of this Court. The Debtor

seeks to approve this Motion on a *nunc pro tunc* basis for the reasons set forth below and in

support thereof and states as follows:

## #17 - Court Appointed Corporate Representative

August 23, 2010
June 2010 Debtor in Possession Report (DIP) list John Heller, *Court Appointed Corporate Representative*. (Exhibit # )

# UNITED STATES BANKRUPTCY COURT
## Southern District of Florida
## Fort Lauderdale Division

IN RE:
**WB Care Center, LLC**
          DEBTOR

CASE NUMBER: **09-26196-BKC-JKO**
JUDGE: **Olson**
FEI NUMBER: XX-XXX7643
IN PROCEEDINGS UNDER CHAPTER 11

## DEBTOR'S PERIODIC FINANCIAL REPORT
## For The Period
## From: June 01, 2010   To: June 30, 2010

Comes now the above-named Debtor and files its Periodic Financial Reports in accordance
with the guidelines established by the United States Trustee and FRBP 2015.

John L. Heller                     7/22/10

**John L. Heller**                  **Date**
**Court Appointed Corporate Representative**
**MarcumRachlin a division of Marcum LLP**
**450 East Las Olas Boulevard, 9th Floor**
**Fort Lauderdale, FL 33312**
**(954) 525-1040**

Qui Tam Disclosure-Florida Office                          6012

# PROPOSED ORDER

**ORDERED in the Southern District of Florida on November _____, 2012**

_____
**John K. Olson, Judge**
**United States Bankruptcy Court**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION
## www.flsb.uscourts.gov

In re:

**W.B. CARE CENTER, LLC d/b/a**                         CASE NO.: 09-26196-BKO-JKO
**WEST BROWARD CARE CENTER and**
**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON P.A.**                          Chapter 7
    Debtor,
_____/

**TIMOTHY PATRICK REARDON**                            Adv. Pro. No.: 12-02072-JKO
    Plaintiff,

vs.
**KENNETH A. WELT,** in his capacity as
the Chapter 7 Trustee for the estate of
**W.B. CARE CENTER, LLC, d/b/a**
**West Broward Care Center**,
    Defendant,
_____/

### ORDER

THIS MATTER is before the Court on the Motion for Permission under the "Barton

Doctrine" to add as Defendant, MarcumRachlin, a Division of Marcum, LLP a/k/a the

"Unicorn Trustee," in Case # 12-20829-CIV-O'Sullivan, Timothy Patrick Reardon vs. W.B.

Care Center, LLC d/b/a West Broward Care Center, et al.

ORDERED AND ADJUDGED that the Motion is **GRANTED.**

22