## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

In Re:                                                    **Chapter 11**

**W.B. CARE CENTER LLC**                          **Case No. 09-26196-BKC-RBR**
**d/b/a WEST BROWARD CARE CENTER**

_____Debtor._____    /

### DEBTOR IN POSSESSION'S AMENDED APPLICATION TO EMPLOY
### WILLIAM R. TRUEBA, JR. AND ESPINOSA TRUEBA AND MARIO R. ARANGO OF
### THE LAW OFFICES OF DE VERONA, ARANGO & WEINSTEIN
### AS DEBTOR IN POSSESSION'S SPECIAL LITIGATION COUNSEL

### (Hearing Requested on October 27, 2009 at 2:30 p.m.)

**W.B. CARE CENTER LLC d/b/a WEST BROWARD CARE CENTER,** Debtor in

Possession ("Debtor" or "WB"), by and through undersigned counsel, respectfully moves this Court,

pursuant to Section 327(e) of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as

amended, the "Bankruptcy Code"), and Rule 2014, *Federal Rules of Bankruptcy Procedure*

("FRBP"), for the entry of an Order authorizing the Debtor to employ and retain

William R. Trueba, Jr., Esq. of the law firm of Espinosa Trueba ("ET") as well as Mario R. Arango,

Esq. of the Law Offices of De Verona, Arango & Weinstein ("De Varona") (when referred to

collectively the "Applicants") to represent the Debtor in this case as Special Litigation Counsel

(the "Application"), and states as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334.

Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.      This is a core proceeding as defined in 28 U.S.C. §§157(b)(2)(A).

3.      The statutory predicates in support of the relief requested herein are sections 327 of the Bankruptcy Code, Rules 2104(a), 2016, and 6003 of the Bankruptcy Rules and Local Rules 2014-1 and 2016-1.

## BACKGROUND

4.      On February 23, 2009, the Debtor initiated a voluntary petition under Chapter 11, Title 11, U.S.C. in a case styled *W.B. Care Center LLC d/b/a West Broward Care Center*, Case No.: 09-12957-BKC-JKO (the "First Bankruptcy Case").  Pursuant to the court's *Order Approving Settlement Agreement Between W.B. Care Center, LLC, Tim Reardon, Millennium Management, LLC, and Institutional Leasing 1, LLC, Denying as Moot Debtor's Emergency Motion for Turnover and Other Relief [D.E. #5] and Dismissal of this Chapter 11 Case Without Prejudice Subject to Negative Notice* [D.E. #19] (the "Dismissal Order"), the First Bankruptcy Case was dismissed, without prejudice.

5.      The Debtor commenced the instant case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 5, 2009 (the "Petition Date").

6.      The Debtor is managing its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No trustee, examiner, or statutory committee has been appointed in these cases.

## RELIEF REQUESTED

8.      Prepetition, Institutional Leasing 1, LLC ("Institutional" or "Landlord"), the Debtor's Landlord for its property located at 7751 West Broward Boulevard, Plantation, Florida 33324, demanded that the Debtor assume liability for all corrective action necessary to bring the nursing home facility into compliance with life safety laws and regulations propogated by the Agency for Health Care Administration ("AHCA").  This is because, on June 19, 2009, Abraham Shaulson,

through his management company, Millennium Management, LLC ("Millennium"), and an affiliate of Institutional, sent the Debtor a demand letter, requiring the Debtor to pay for all costs associated with the corrective measures related to the HVAC system.  Indeed, the letter demanded that the Debtor immediately pay Millennium's contractor a Two Hundred Seventy-Seven Thousand Dollars and 00/100 ($277,000.00) deposit so that the contractor could begin the corrective work. Millennium further demanded that the Debtor comply with all terms and conditions of the contract which meant that the Debtor would have to pay close to One Million Dollars and 00/100 ($1,000,000.00) by year's end to correct the problems.

9.      Post-petition the Debtor initiated litigation under Adversary Proceeding No.: 09-01865-BKC-RBR-A styled *W.B. Care Center, LLC v. Abraham Shaulson, Eli Strohli, Institutional Leasing 1, LLC, Millennium Management, LLC and West Broward Group, LLC.*  In connection with that litigation, the Debtor moved in the main case to retain ET as special counsel.  That matter was heard on September 17, 2009, and in response to the Debtor's first application [D.E. #8] to retain ET, Institutional filed a limited objection [D.E. #80] (the "Limited Objection"). Within the Limited Objection, Institutional objected to the Debtor suing Institutional with its own cash collateral.

10.     The expenses related to the corrective measures relating to the HVAC system remain an outstanding financial burden for the Debtor.  However, upon further review of various underlying documents related to the transfer and sale of the facility to the Debtor, the Debtor now believes that those outstanding financial burdens may be satisfied by the prior owner of the nursing home, West Broward Group, LLC ("WBG"), and its managing member Eli Strohli ("Strohli"), because of representations and warranties made by WBG regarding the nursing home and the agreement governing the transfer of ownership.  Moreover, in bringing such an action against WBG and Strohli

3

the Debtor will not be preceding against either Institutional or Millennium in respect of Institutional's Limited Objection that its cash collateral not be used for that purpose.

11.    The claims against WBG and Strohli may be summarized as follows: when it was the prior owner of the nursing home WBG was aware of the HVAC remediation.  Indeed, WBG's managing member, Eli Strohli, personally participated in the inspection of the nursing home facility conducted by the City of Plantation on or about April 25, 2008 during which the HVAC problem was identified.

12.    The Debtor's legal remedies against WBG and Eli Strohli include seeking indemnification for the estate for all the expenses related to the HVAC corrective measures.  The Debtor entered into an operations transfer agreement on June 30, 2009 (the "Agreement"), with WBG.  A true and correct copy of that Agreement is attached hereto as **Composite Ex. "A."**  In the Agreement, WBG stated

> "to WBG's knowledge, except as set forth on Schedule 13.4 attached hereto, there is no pending…claim, administrative or arbitration proceeding or governmental investigation…which remains outstanding that (i) has an amount in controversy in excess of Fifty Thousand Dollars ($50,000.00), or (ii) could be reasonably be expected to materially impair the operations of the facility."

As the Debtor, and now the Court, is aware the cost associated with correcting these life safety issues, including the return air plenum deficiencies, far exceed Fifty Thousand Dollars and 00/100 ($50,000.00), and certainly will materially impair the operations of the nursing home facility.

13.    WBG agreed to indemnify, defend, and hold WB harmless from claims that could materially impair WB's ability to operate the nursing home in Section 13.5 of the Agreement to wit: "WBG hereby agrees to protect, indemnify, defend (with counsel satisfactory to WB) and hold WB and WB's employees, officers, directors, representatives, invitees, tenants, agents, contractors, servants, attorneys, shareholders, participants, affiliates, partners, members, parents, subsidiaries,

successors and assigns, free and harmless against any claim for liabilities, losses, costs, expenses (including reasonable attorneys fees), damages or injuries araising out of or resulting from the breach of any covenant, representation, or warranty that WBG set forth herein."

14.     Accordingly, the Debtor may legally seek indemnification for all of the HVAC related expenses from WBG. The Debtor may also be indemnified for its attorneys' fees and costs as well. Therefore, it is in the best interest of the estate to allow the Debtor to proceed with this claim and retain special counsel to prosecute it.

15.     In addition to the above - described claim, the Debtor possesses an additional claim against Eli Strohli, WBG's principal. The Debtor contends that, through WBG, Strohli actively committed a fraud against the Debtor in knowing the magnitude of the problem with the HVAC system prior to the Debtor entering into the Agreement, but taking measures to keep the facts from WB and its owner, Timothy Reardon ("Mr. Reardon"). The Debtor has learned that Strohli was involved in the engagement of a contractor for the purpose of analyzing the HVAC system problems before the Debtor become the owner of the nursing home. Upon information and belief, Strohli was aware that corrective measures to fix the HVAC system would be significant, but intentionally kept this information from WB and Mr. Reardon. Accordingly, in addition to WBG, the Debtor has a remedy against Strohli, personally.

16.     Neither WBG nor Strohli were parties to the Settlement Agreement entered into in February 2009 in the first bankruptcy case, and accordingly, there is no question that the Debtor still possesses viable claims against both WBG and Strohli.

17.     The Debtor proposes to engage the legal services of lawyers from ET and De Varona to pursue the claims against WBG and Strohli. The estate benefits from the engagement of Espinosa Trueba because they are intimately familiar with the Agreement at issue, the parties involved, and

**EHRENSTEIN CHARBONNEAU CALDERIN**

**800 Brickell Avenue · Suite 902 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

the claims.  Because they had represented WB prepetition in connection with Institutional's demands regarding the corrective measures, they already know many of the factual details that would take new attorneys many hours to review and analyze.  Mr. Arango brings additional skills to the matter because of his experience with nursing home issues.

18.     WB proposes the following plan and approximate budget related to this litigation (presuming a $375/hour blended rate):

| | | | |
|---|---|---|---|
| Preparation of lawsuit | 8 hours | $375/hour | $3,000 |
| Preparation of written discovery | 8 hours | $375/hour | $3,000 |
| Review of discovery responses | 10 hours | $375/hour | $3,750 |
| Prepare and take depositions of 5-6 witnesses | 80 hours | $375/hour | $30,000 |
| Prepare motion for summary Judgment | 40 hours | $375/hour | $15,000 |
| Prepare and attend hearing on Mot SJ | 8 hours | $375/hour | $3,000 |
| TOTAL | 154 hours | | $57,750 |

19.     The foregoing plan does not take into consideration that the proposed Defendants are likely to object and create discovery obstacles, requiring motions to compel and additional briefing and hearings. The above does not take into account the time that would be needed to prepare and take expert depositions, if an expert should be necessary, on the issue of damages or the extent of the repair work that needs to be done.

20.     Attached to this Application as **Exhibit "B"** is William R. Trueba, Jr.'s Affidavit demonstrating that William Trueba, Jr. Esq. and the law firm of Espinosa & Trueba are disinterested as required by 11 U.S.C. §327(a) and a verified statement as required under FRBP 2014.  Attached hereto as **Exhibit "C"** is the Affidavit of Mario R. Arango, Esq. demonstrating that he is also disinterested as required by 11 U.S.C. §327(a) and a verified statement as required under FRBP 2014.

6

21.     Applicants agree to be compensated in accordance with 11 U.S.C. § 330.

22.     The terms of employment agreed between the Debtor and Applicants, and subject to the approval of the Court, are that services will be billed at the standard hourly rates of the respective attorneys and paralegals of Applicants, which rates are subject to periodic adjustment to reflect economic and other conditions.

**WHEREFORE**, the Debtor respectfully requests an order authorizing retention of William R. Trueba, Jr., Esq. of the law firm of Espinosa Trueba and Mario Arango, Esq. of the law firm De Varona, Arango & Weinsten on a general retainer pursuant to 11 U.S.C. §§ 327 and 330. The Debtor also requests such further relief as the Court deems just and proper.

Respectfully submitted,

> EHRENSTEIN CHARBONNEAU CALDERIN
> Attorneys for the Debtor
> 800 Brickell Avenue, Suite 902
> Miami, Florida 33131
> T 305.722.2002
> F 305.722.2001

By: _____/s/_____

> Robert P. Charbonneau, Esq.
> Florida Bar Number 968234
> rpc@ecclegal.com

7

# Composite

# Exhibit "A"

## OPERATIONS TRANSFER AGREEMENT

**THIS OPERATIONS TRANSFER AGREEMENT** (this "Agreement") is made effective as of June 30, 2008 (the "Effective Date"), by and between **WEST BROWARD GROUP, L.L.C.**, a Florida limited liability company ("WBG"), **W.B. CARE CENTER, LLC**, a Florida limited liability company ("W.B.").

**WHEREAS,** WBG desires to transfer the operations of the Facility to W.B. and W.B. desires to assume the operations of the Facility pursuant to the terms and conditions contained herein; and

**NOW, THEREFORE,** in consideration for the payment of Ten Dollars ($10.00), of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

### ARTICLE I:
### OPERATIONS TRANSFER

1. <u>Transfer of Business Operations</u>. Pursuant to the terms and conditions set forth herein, WBG shall transfer all Facility Operations (as defined herein) to W.B. WBG hereby acknowledges that all "Operational Assets" (as defined below) belong to WBG and WBG agrees that, upon consummation of the transaction contemplated by this Agreement, all such Operational Assets shall be transferred to and owned by W.B. WBG hereby disclaims any interest in the Operational Assets and agrees to, and is hereby authorized and instructed to assist in the transfer of such Operational Assets to W.B. The following items relating to the Facility and the Property shall be "Operational Assets":

    1.1        All tangible personal property located at the Facility, the current list of which is set forth on Schedule 1.1.1 attached hereto, including all computer hardware and all desk-based software located at the Facility which is not proprietary to WBG or any Affiliate of WBG; excluding, however, any desk-based software which is owned and/or legally transferrable by WBG ("Personal Property");

    1.2        All inventories of janitorial, maintenance, shop, office and other supplies, drugs, food and other disposables that are consumed, disposed of, held for sale or inventoried in the ordinary course of business which are existing at the Facility as of the Effective Date in amounts sufficient to comply with requirements of any governmental agency having jurisdiction of the facility ("Purchased Inventory");

    1.3        All licenses and permits related to the Facility, to the extent transferable under applicable law;

    1.4        All third-party warranties or guarantees, if transferable, relating to the Facility.

2.    <u>Transfer of Resident Trust Accounts</u>.  WBG hereby acknowledges that it holds resident trust account funds relating to the Facility.

2.1    On or prior to the expiration of twenty (20) calendar days after the Effective Date, WBG shall deliver to W.B. a true, correct and complete reconciliation of any resident trust accounts for any resident of the Facility (collectively, "<u>Resident Trust Accounts</u>") then held by WBG.

2.2    Within three (3) days of the delivered reconciliation, WBG shall transfer the Resident Trust Accounts into an account established by W.B. to hold the same.

3.    <u>Employees</u>.  Within five (5) Business Days of the Effective Date, WBG shall provide a schedule of all employees working at the Facility ("<u>Employee Schedule</u>") detailing all employees and their positions, rates of pay, original hire dates, accrued sick leave, vacation time and other material facts.

3.1    On or before the Effective Date, W.B. will hire, on a probationary basis, each of WBG's employees who are employed at the Facility as of the Effective Date (including any such employees who are on medical disability or leaves of absence and who worked at the Facility immediately prior to such disability or leave) ("<u>Facility Employees</u>").  Any such offer of employment to a Facility Employee by W.B. shall be to perform comparable services, in such position as is comparable to the position such Facility Employee held with any WBG as of the Effective Date, WBG shall have the right (but not the obligation) to employ or offer to employ any Facility Employee who declines W.B.'s offer of employment.

3.2    W.B. shall hire at the Effective Date, on a probationary basis, each Facility Employee who accepts W.B.'s offer of employment (all of such employees who accept employment with W.B. being herein called "Hired Employees"), and shall indemnify and hold WBG harmless, from and against any losses arising from or relating to any subsequent termination of any such Hired Employee by W.B..

3.3    WBG shall pay to each Facility Employee, on the Effective Date, an amount equal to any and all accrued salary earned by such employee as of the Effective Date.

3.4    Nothing in this Agreement shall create any rights in favor of any person not a party hereto, including the Facility Employees, or constitute an employment agreement or condition of employment for any employee of WBG or any affiliate of WBG.

3.5    It is expressly agreed and understood that:

3.5.1    W.B. shall have no obligation to hire or retain any employees of WBG subsequent to the Effective Date.  Any employee of WBG

2

not hired as a Hired Employee under this Section 3 shall be deemed to have been terminated by WBG as of the Effective Date;

3.5.2    W.B. shall have no obligation to any employee of WBG not otherwise hired hereunder; and

3.5.3    W.B. shall not assume or be bound by any liabilities or obligations incurred on behalf of or owed to any employees or former employees of WBG. W.B. does not agree to pay and/or reimburse WBG for and/or to indemnify WBG from and against any severance, sick leave, personal days, accrued vacation, or other liabilities arising out of WBG's termination of the employment of any of its employees in connection with this transaction (including, without limitation, any liabilities under the so-called WARN Act, health coverage pursuant to the requirements of Section 601, et. seq. of ERISA and Section 498B of the Internal Revenue Code, as amended ("COBRA") or any applicable state laws regarding termination of employees). This Section shall operate exclusively for the benefit of the parties to this Agreement and not for the benefit of any other person or entity.

3.5.4    Notwithstanding anything in this Agreement to the contrary, W.B. shall, as of the Effective Date, assume WBG's obligations of paid time off to all the Facility Employees listed on Schedule 3.5.4. It is expressly agreed and acknowledged that WBG shall remain solely liable and responsible for all paid time off for Facility Employees not listed on Schedule 3.5.4. W.B. shall be entitled to a credit of $150,145.00.

4.    Accounts Receivable.

4.1    WBG shall retain its right, title and interest in and to all unpaid accounts receivable with respect to the Facility that relate to all periods prior to the Effective Date, including, but not limited to, any accounts receivable arising from rate adjustments which relate to periods prior to the Effective Date, even if such adjustments occur after the Effective Date.

4.2    In the event a payment is received by W.B. after the Effective Date which relates solely to the Facility on dates prior to Effective Date from third party payors, W.B. shall promptly pay them to WBG, but in any event, not later than thirty (30) Business Days following the receipt of such payment, and until so deposited, shall be held in trust for the benefit of WBG.

4.3    In the event either WBG or W.B. receives payment which relates to the Facility on dates both prior and subsequent to the Effective Date from

3

proceeding or extension shall be retained until the audit is completed, a final judgment is entered in such proceeding, or the relevant statute of limitations has expired, as the case may be ("Retention Period"). After the expiration of the applicable Retention Period, the party in possession of such records may, in its discretion, upon ninety (90) days prior written notice to the other party ("Destruction Notice"), destroy any of such records in its possession. Within eighty (80) days after its receipt of a Destruction Notice, the party receiving such notice shall have the right, at its own expense, to require the other party to deliver to it any records noticed to be destroyed and the other party shall deliver such records to the requesting party, to the extent not prohibited by applicable law. Each party shall be solely responsible for ensuring the proper destruction of any records in its possession not requested by the other party, and shall be solely responsible for any liability resulting from the improper destruction thereof. The party receiving Facility Records from the other party pursuant to this provision shall be solely responsible for ensuring the proper storage and/or destruction of any records delivered to it, and shall be solely responsible for any liability resulting from: (a) any breach of confidentiality or privilege arising from any disclosure thereof; or (b) any subsequent destruction thereof.

5.5    W.B. agrees to maintain such books, records and other material comprising records of the Facility's operations prior to the Effective Date that have been received by W.B. from WBG or otherwise, including, but not limited to, resident records and records of resident funds, to the extent required by law, but in no event for less than three (3) years, and thereafter shall allow WBG a reasonable opportunity to remove such documents, at WBG's expense, in the event that W.B. shall decide to dispose of such documents.

6.    Assumed Operating Contracts.  On or before ten (10) days prior to the Effective Date of this Agreement, WBG shall deliver or make available to W.B. copies of any and all any vendor, service and other agreements affecting or relating to the operation of the Facility ("Operating Contracts").   As of the Effective Date, W.B. shall in accordance with Schedule 6 annexed hereto, assume from WBG its respective interests in all such Operating Contracts.  It is expressly acknowledged and agreed that W.B. shall not be assuming any liabilities under any assumed contracts prior to the Effective Date which shall remain the sole and exclusive responsibility of WBG unless such liability is specifically listed on Schedule 4.5.2.

7.    Telephone Numbers.  As of the Effective Date, WBG shall waive its right to use the following telephone numbers: (954) 473-8040 and (954) 473-8041 and shall assign to the W.B. any and all rights to the use of said telephone number in connection with the Facility being bought by the W.B.. WBG shall claim no further interest in the telephone number and shall take reasonable steps to assist the W.B. in retaining the use of the telephone number as long as the same is without cost to the WBG. This clause shall cover any other telephone number at the Facility, which are used by the Facility to perform business for the subject assisted living facility.

6

8.     <u>Non-Solicitation Agreement</u>. WBG agrees that it shall not solicit (a) any current employee of the Facility or (b) any current resident of the Facility to leave the Facility in favor of working or living (as the case may be) at another senior housing facility owned or operated by WBG, for a period of two (2) years from the Effective Date.

9.     <u>Software Support Services</u>.  Subject to obtaining any necessary consent or permission from third-party vendors or licensors, for a period not to exceed ninety days following the Effective Date, WBG shall make available to W.B., solely in connection with W.B.'s transition of the operation of the Facility from WBG to W.B., information services and support therefore ("<u>I.S. Support</u>"). The I.S. Support shall include only the proprietary computer software and hardware necessary to allow W.B. to transition from WBG's information services to W.B.'s information services and to operate the Facility during such transition, shall extend only to the level of information services and support which WBG presently provides to the Facility, and shall not include any information services or support which any management company or other Person provides to the Facility.

10.    **Intentionally Deleted**

11.    <u>Litigation Cooperation</u>.  As of the Effective Date, upon prior reasonable written request, each party shall cooperate with the other, at the requesting party's expense, but including only out-of-pocket expenses to third parties and not the costs incurred by any party for the wages or other benefits paid to its officers, directors or employees, in furnishing information, testimony and other assistance in connection with any actions, tax or cost report audits, proceedings, arrangements or disputes involving either of the parties hereto (other than in connection with disputes between the parties hereto) and based upon contracts, arrangements or acts of WBG or any of their respective affiliates which were in effect or occurred on or prior to the Effective Date and which relate to the Facility, including, without limitation, arranging discussions with, and the calling as witnesses of, officers, directors, employees, agents and representatives of W.B.

12.    **Intentionally Deleted**

## ARTICLE II.
## REPRESENTATIONS AND WARRANTIES OF WBG

13.    WBG hereby represents and warrants to W.B. that:

   13.1     <u>Authority</u>.  WBG has the full right and authority to enter into this Agreement and to consummate or cause to be consummated the transaction contemplated by this Agreement.

   13.2     <u>Binding Effect</u>.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of WBG and this Agreement constitutes, and will constitute the legally valid and binding obligation of WBG enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent

conveyance, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally and general principles of equity.

13.3    <u>No Authorization Required</u>.  No consent, approval, waiver, authorization or order of, notice, filing or qualification with, any Self-Regulatory Organization, any court or governmental entity or any other person or entity is required for the execution and delivery of this Agreement or the consummation by WBG of the transactions contemplated by this Agreement.

13.4    <u>Litigation</u>.  To WBG's Knowledge, except as set forth on <u>Schedule 13.4</u> attached hereto, there is no pending or threatened lawsuit, action, claim, administrative or arbitration proceeding or governmental investigation, or any order, injunction, judgments, agreements or decree which remains outstanding that (i) has an amount in controversy in excess of $50,000, or (ii) could reasonably be expected to materially impair the operations of the Facility.  Notwithstanding the foregoing, unless specifically set forth herein, any listed lawsuits or litigation set forth on Schedule 13.5 shall remain the sole and exclusive respo0nsibility of WBG.

14.    <u>Indemnity; Survival of WBG's Representations, Warranties and Covenants</u>.  The representations and warranties of WBG set forth in this Section shall survive for a period of six (6) months following the Effective Date.  WBG hereby agrees to protect, indemnify, defend (with counsel satisfactory to W.B.) and hold W.B. and W.B.'s employees, officers, directors, representatives, invitees, tenants, agents, contractors, servants, attorneys, shareholders, participants, affiliates, partners, members, parents, subsidiaries, successors and assignees, free and harmless from and against any claim for liabilities, losses, costs, expenses (including reasonable attorneys' fees), damages or injuries arising out of, or resulting from the breach of any    covenant,    representation    or    warranty    of    WBG    set    forth    herein.

## ARTICLE III.
## MISCELLANEOUS

15.    <u>Confidentiality</u>.  WBG and W.B. each agree to maintain the confidentiality of the terms and provisions of this Agreement.  W.B. and its representatives shall hold in confidence all data and information obtained from WBG or its agents with respect to WBG or its business (other than data and information which is publicly available), whether obtained before or after the execution and delivery of this Agreement, and shall not disclose the same to others; provided, however, that W.B. may disclose such data and information (a) to the employees, lenders, consultants, accountants, attorneys of W.B. if such persons agree to treat such data and information confidentially, (b) pursuant to a subpoena or order issued by a court, arbitrator or governmental body, agency or official, (c) as necessary to prevent the audit by a governmental entity of the accounts of the W.B., but only to the extent specifically requested by such governmental entity, (d) in order to initiate, defend or otherwise pursue legal proceedings between the parties regarding this Agreement, and (e) as, and solely to the extent, required by

applicable laws or applicable rules and regulations of a stock exchange, provided notice of such disclosure is first given to the other party prior to such disclosure. Further, W.B. may disclose the general terms of the transactions contemplated under this Agreement to its potential investors in the ordinary course of its business if such potential investors are advised to treat such information confidentially. Confidential Information shall not include any information (i) which is or hereafter becomes public, other than by breach of this Agreement, or (ii) which has been or is hereafter obtained by the W.B. independently without violation of any confidentiality obligation or from a third party not bound by any confidentiality obligation with respect to the Confidential Information. If this Agreement is terminated or W.B. fails to perform hereunder, W.B. shall promptly return to WBG any statements, documents, schedules, exhibits or other written information obtained from WBG in connection with this Agreement or the transaction contemplated herein. In the event of a breach or threatened breach by W.B. or its agents or representatives of this Section, WBG shall be entitled to an injunction restraining W.B. or its agents or representatives from disclosing, in whole or in part, such confidential information. Nothing herein shall be construed as prohibiting WBG from pursuing any other available remedy at law or in equity for such breach or threatened breach.

16.   Notices. Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, (b) reputable overnight delivery service with proof of delivery, (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, or (d) legible facsimile transmission with a confirmation sheet, sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith. Any notice so given shall be deemed to have been given upon receipt or refusal to accept delivery, or, in the case of facsimile transmission, as of the date of the facsimile transmission provided that an original of such facsimile is also sent to the intended addressee by means described in clauses (a), (b) or (c) above. Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Agreement shall be as follows:

|  |  |
|---|---|
| If to W.B.: | W.B. Care Center, LLC |
|  | 7751 West Broward Boulevard |
|  | Plantation, Florida 33324 |
|  | Attention: Tim Reardon |
|  | Facsimile No.: (954) 688-4981 |
|  |  |
| If to WBG: | West Broward Group, L.L.C. |
|  | 3600 Collins Avenue, #201 |
|  | Miami Beach, Florida 33140 |
|  | Attention: Eli Strohli |
|  | Facsimile No.: (305) 893-8131 |

17.   Modifications. This Agreement cannot be changed orally, and no executory agreement shall be effective to waive, change, modify or discharge it in whole or in part unless such executory agreement is in writing and is signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

18.    <u>Entire Agreement</u>.   This Agreement, including any exhibits and schedules hereto, contains the entire agreement between the parties hereto pertaining to the subject matter hereof and fully supersedes all prior written or oral agreements and understandings between the parties pertaining to such subject matter.

19.    <u>Counterparts/Facsimile</u>.   This Agreement may be executed in counterparts, all such executed counterparts shall constitute the same agreement, and the signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart. The parties hereto intend to be bound by the signatures on the telecopied or photocopied document, are aware that the other parties will rely on the telecopied or photocopied signatures, and hereby waive any defenses to the enforcement of the terms of this Agreement based on the form of signature.

20.    <u>Severability</u>.   If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect; provided that the invalidity or unenforceability of such provision does not materially adversely affect the benefits accruing to any party hereunder.

21.    <u>Applicable Law/Jurisdiction</u>.   This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without regard to any principle or rule of law that would require the application of the law of any other jurisdiction.   All parties hereto consent to personal jurisdiction by the 11th Judicial Circuit Court of Miami-Dade County who shall have exclusive personal and subject matter jurisdiction over any disagreement over the terms, conditions or enforcement of this Agreement.

22.    <u>No Third-Party Beneficiary</u>.   The provisions of this Agreement and of the documents to be executed and delivered as of the Effective Date are and will be for the benefit of WBG and W.B. only and are not for the benefit of any third party; and, accordingly, no third party shall have the right to enforce the provisions of this Agreement or of the documents to be executed and delivered as of the Effective Date.

23.    <u>Captions</u>.   The section headings appearing in this Agreement are for convenience of reference only and are not intended, to any extent and for any purpose, to limit or define the text of any section or any subsection hereof.

24.    <u>Attorneys' Fees</u>.   Notwithstanding anything to the contrary in this Agreement, in the event either party files a lawsuit or demand for arbitration or other legal action (including in bankruptcy court) in connection with this Agreement, or any provisions contained herein, then the party that prevails in such action shall be entitled to recover, in addition to all other remedies to which it is entitled, reasonable attorneys' fees and costs incurred in such action.  Any court costs and attorneys' fees shall be set by the court or arbitrator and not by jury.

25.    <u>Dates</u>.  All time periods expressed as "days" in this Agreement shall mean calendar days, unless specifically referenced as "Business Days." Notwithstanding the foregoing, if, pursuant to this Agreement, any calendar date indicated herein falls on any non-Business Day, the date so indicated shall mean the next Business Day following such date.  As used herein, the term "Business Day" shall mean each Monday, Tuesday, Wednesday, Thursday and Friday which is

not a day on which national banks in the City of New York, New York are authorized, or obligated, by law or executive order, to close.

26.    <u>Waiver of Jury Trial</u>. WBG and W.B., to the extent they may legally do so, hereby expressly waive any right to trial by jury of any claim, demand, action, cause of action, or proceeding arising under or with respect to this Agreement, or in any way connected with, or related to, or incidental to, the dealings of the parties hereto with respect to this Agreement or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and irrespective of whether sounding in contract, tort, or otherwise.  To the extent they may legally do so, WBG and W.B. hereby agree that any such claim, demand, action, cause of action, or proceeding shall be decided by a court trial without a jury and that any party hereto may file an original counterpart or a copy of this Section with any court as written evidence of the consent of the other party or parties hereto to waiver of its or their right to trial by jury.

27.    <u>No Waiver</u>. Failure of either party at any time to require performance of any provision of this Agreement shall not limit the party's right to enforce the provision.  Waiver of any breach of any provision shall not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

35.    <u>Indemnification</u>.

a.    WBG hereby agrees to indemnify W.B. against and to hold W.B. harmless from all claims, demands, causes of action, losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees and disbursements) asserted against or incurred by W.B. in connection with or arising out of (a) acts or omissions of WBG or WBG's Representatives, or other matters or occurrences that took prior to the Effective Date and relate to the maintenance or operation of the Facility, including, but not limited to, any accounts payable not specifically set forth on Schedule 4.5.2 herein.  WBG's obligations under this Section shall survive for a period of twenty four (24) months from the Effective Date.

b.    W.B. hereby agrees to indemnify WBG against and to hold WBG harmless from all claims, demands, causes of action, losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees and disbursements) asserted against or incurred by W.B. in connection with or arising out of (a) acts or omissions of W.B. or W.B.'s Representatives, or other matters or occurrences that took subsequent to the Effective Date and relate to the maintenance or operation of the Facility.  W.B.'s obligations under this Section shall survive for a period of twenty four (24) months from the Effective Date.


**BALANCE OF PAGE INTENTIONALLY BLANK**

**- SIGNATURE PAGE TO FOLLOW -**


11

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement as of the Effective Date.

WEST BROWARD GROUP, L.L.C., a Florida
limited liability company


By: _____
Name: Eli Strohli
Title: Manager



W.B. CARE CENTER, LLC, a Florida limited
liability company


By: _____
Name: Tim Reardon
Title: Manager

12

## SCHEDULE 3.5.4
## EMPLOYEE PAID TIME OFF

WEST BROWARD CARE CENTER
## PTO VACATION 2008

| Employee | Hire Date | Type | DOLLAR COST |
|---|---|---|---|
| | 5/4/1998 | FT | $ 1,669.98 |
| | 12/26/2007 | FT | $ 907.16 |
| | 10/1/2006 | FT | $ 1,045.83 |
| | 3/14/2008 | FT | $ 99.08 |
| | 4/24/2003 | FT | $ 853.17 |
| | 4/1/2008 | FT | $ 1,411.43 |
| | 1/4/2008 | FT | $ 1,495.79 |
| | 4/2/2007 | FT | $ 1,666.95 |
| | 8/7/2007 | PT | $ 660.73 |
| | 8/20/1996 | FT | $ 706.19 |
| | 3/1/1999 | FT | $ 2,004.80 |
| | 5/14/2007 | FT | $ 1,508.71 |
| | 5/31/2005 | FT | $ 701.41 |
| | 12/4/2002 | PT | $ 1,273.15 |
| | 1/16/1996 | FT | $ 756.80 |
| | 7/18/2000 | FT | $ 2,277.04 |
| | 9/16/2003 | FT | $ 985.81 |
| | 4/5/1993 | FT | $ 1,926.40 |
| | 5/23/2007 | FT | $ 919.01 |
| | 1/2/2008 | FT | $ 792.04 |
| | 4/10/1995 | FT | $ 1,643.20 |
| | 12/5/2007 | FT | $ 318.54 |
| | 11/8/2006 | FT | $ 81.68 |
| | 10/18/2005 | FT | $ 504.09 |
| | 3/10/1997 | PT | $ 2,302.51 |
| | 11/7/2007 | FT | $ 1,086.31 |
| | 5/31/2007 | FT | $ 646.84 |
| | 6/22/2002 | FT | $ 1,635.73 |
| | 6/22/2002 | FT | $ 1,305.02 |
| | 4/11/2005 | FT | $ 1,063.14 |
| | 9/28/2005 | FT | $ 683.30 |
| | 6/21/1993 | FT | $ 1,381.47 |
| | 3/3/2003 | FT | $ 2,351.19 |
| | 6/22/2002 | FT | $ 1,501.13 |
| | 5/31/2007 | PT | $ 437.78 |
| | 3/1/2008 | FT | $ 194.25 |
| | 12/18/2000 | PT | $ 542.50 |
| | 3/21/2005 | PT | $ 524.83 |
| | 10/21/2003 | FT | $ 717.08 |
| | 11/12/2007 | FT | $ 868.85 |
| | 11/21/2007 | FT | $ 517.28 |
| | 7/20/2007 | FT | $ 340.11 |
| | 11/27/2007 | FT | $ 379.82 |
| | 11/12/2007 | FT | $ 453.70 |
| | 11/2/2007 | FT | $ 2,194.28 |
| | 4/26/2005 | FT | $ 1,045.09 |
| | 7/2/2007 | FT | $ 696.16 |

| Date | | Amount |
|---|---|---|
| 4/29/2000 FT | $ | 1,500.58 |
| 5/7/2004 FT | $ | 1,488.06 |
| 1/19/2007 FT | $ | 355.11 |
| 12/29/2007 FT | $ | 413.83 |
| 3/13/2006 FT | $ | 356.59 |
| 11/26/2007 FT | $ | 1,195.86 |
| 11/14/2003 FT | $ | 799.32 |
| 10/30/2006 FT | $ | 364.87 |
| 11/30/1999 FT | $ | 992.61 |
| 6/23/2007 FT | $ | 1,010.70 |
| 5/29/2002 FT | $ | 1,976.57 |
| 2/11/2008 FT | $ | 496.93 |
| 8/23/2007 FT | $ | 657.62 |
| 9/29/1999 FT | $ | 1,238.46 |
| 11/21/2007 FT | $ | 614.78 |
| 7/24/2006 FT | $ | 1,646.68 |
| 5/31/2002 FT | $ | 1,093.45 |
| 1/19/2007 FT | $ | 1,003.42 |
| 7/31/2007 FT | $ | 548.07 |
| 5/19/2000 PT | $ | 993.94 |
| 5/21/2001 FT | $ | 961.38 |
| 11/15/2000 FT | $ | 821.25 |
| 3/16/2006 FT | $ | 1,065.96 |
| 7/26/2007 FT | $ | 831.96 |
| 11/10/2006 FT | $ | 1,741.60 |
| 10/21/2005 FT | $ | 462.48 |
| 3/27/2006 FT | $ | 792.35 |
| 11/7/2007 FT | $ | 425.68 |
| 12/7/2007 FT | $ | 374.63 |
| 8/18/2006 FT | $ | 550.31 |
| 7/1/2001 FT | $ | 1,066.77 |
| 11/12/2007 FT | $ | 758.78 |
| 11/27/2007 FT | $ | 466.45 |
| 6/22/2002 FT | $ | 1,373.51 |
| 5/14/2007 FT | $ | 572.75 |
| 12/31/2007 FT | $ | 859.18 |
| 12/13/2007 FT | $ | 758.16 |
| 5/29/2007 FT | $ | 1,873.71 |
| 12/10/2007 FT | $ | 986.32 |
| 9/13/2007 FT | $ | 408.12 |
| 12/28/2006 FT | $ | 392.49 |
| 3/16/2000 FT | $ | 1,365.67 |
| 6/29/1998 FT | $ | 2,035.23 |
| 8/22/2007 FT | $ | 960.53 |
| 11/12/2007 FT | $ | 429.32 |
| 5/31/2002 FT | $ | 4,816.99 |
| 5/31/2007 FT | $ | 468.67 |
| 9/8/2006 FT | $ | 638.44 |
| 4/27/2000 FT | $ | 1,056.54 |
| 12/11/2007 FT | $ | 697.68 |
| 7/11/2003 FT | $ | 1,580.63 |
| 3/18/2008 FT | $ | 172.11 |

| Date | Type | | Amount |
|---|---|---|---|
| 11/2/2006 | FT | $ | 359.40 |
| 12/11/2007 | FT | $ | 780.19 |
| 7/12/2000 | FT | $ | 2,458.25 |
| 6/9/2006 | FT | $ | 695.76 |
| 12/5/2007 | FT | $ | 349.81 |
| 4/21/2003 | FT | $ | 1,209.79 |
| 8/28/2001 | FT | $ | 931.41 |
| 3/19/2007 | FT | $ | 2,484.80 |
| 2/21/2008 | FT | $ | 243.24 |
| 3/27/2006 | FT | $ | 724.62 |
| 3/30/2006 | FT | $ | 2,629.47 |
| 2/24/2003 | FT | $ | 2,441.51 |
| 3/21/2008 | FT | $ | 213.42 |
| 10/21/2003 | FT | $ | 963.39 |
| 1/20/2007 | FT | $ | 1,777.78 |
| 9/5/2003 | FT | $ | 411.85 |
| 9/17/2007 | FT | $ | 871.40 |
| 11/3/1993 | FT | $ | 1,778.64 |
| 11/27/2007 | FT | $ | 330.32 |
| 2/4/2008 | FT | $ | 221.69 |
| 4/12/2007 | FT | $ | 806.41 |
| 10/17/2001 | FT | $ | 2,530.15 |
| 2/6/2006 | FT | $ | 1,107.26 |
| 6/26/2006 | FT | $ | 2,380.50 |
| 6/22/2002 | FT | $ | 1,493.79 |
| 3/10/2003 | FT | $ | 3,528.08 |
| 1/25/1993 | FT | $ | 1,936.00 |
| 3/25/2002 | FT | $ | 1,383.71 |
| 12/6/1995 | FT | $ | 186.29 |
| 7/11/2007 | PT | $ | 501.62 |
| 8/15/2006 | FT | $ | 1,057.07 |
| 12/11/2006 | FT | $ | 528.75 |
| 11/18/2003 | FT | $ | 503.88 |
| 9/19/2007 | FT | $ | 257.70 |
| 4/10/1995 | FT | $ | 1,559.52 |
| 2/8/2008 | PT | $ | 154.23 |
| 1/4/2008 | FT | $ | 316.52 |
| 6/22/2002 | FT | $ | 1,033.73 |
| 9/11/2006 | FT | $ | 4,978.25 |
| 4/4/2008 | FT | $ | 153.26 |
| 10/23/1986 | FT | $ | 1,474.09 |
| 4/13/2007 | FT | $ | 806.65 |
| | | $ | 150,144.69 |

SCHEDULE 4.5

<u>4.5.1</u>

TRANSFERRED ACCOUNTS RECEIVABLE

West Broward Care Center
Accounts Receivable

| Resident Name | Payor Source | Amount |
|---|---|---|
| | Medicaid | 6,027.03 |
| | Medicaid | 5,578.80 |
| | Medicaid | 5,482.80 |
| | Hospice | 6,736.80 |
| | Medicaid | 407.64 |
| | Medicaid | 10,485.41 |
| | Medicare A | 10,377.60 |
| | Hospice | 6,206.94 |
| | Medicaid | 5,708.80 |
| | Medicaid | 5,578.80 |
| | Medicare A | 9,899.16 |
| | Medicaid | 7,112.10 |
| | Hospice | 5,578.80 |
| | Medicare A | 5,711.31 |
| | Medicaid | 12,334.59 |
| | Medicare A | 9,121.00 |
| | Medicaid | 1,203.71 |
| | Medicare A | 12,565.27 |
| | Medicaid | 5,578.80 |
| | Hospice | 5,578.80 |
| | Medicare A | 6,634.55 |
| | Medicaid | 13,343.00 |
| | Medicaid | 5,232.01 |
| | Medicaid | 5,965.95 |
| | Medicaid | 6,791.17 |
| | Medicare A | 12,054.00 |
| | Medicaid | 5,593.23 |
| | Medicare A | 11,708.71 |
| | Medicaid | 9,483.96 |
| | Medicaid | 6,186.70 |
| | Medicare A | 7,841.24 |
| | Hospice | 6,312.57 |
| | Medicaid | 7,813.40 |
| | Hospice | 7,325.25 |
| | Medicaid | 6,750.80 |
| | Medicaid | 5,824.14 |
| | Hospice | 5,794.16 |
| | Medicaid | 5,017.83 |
| | Medicaid | 5,691.99 |
| | Medicaid | 9,156.80 |
| | Medicaid | 4,310.68 |
| | Medicare A | 10,384.20 |
| | Medicaid | 5,578.80 |
| | Medicaid | 5,578.80 |
| | Medicaid | 5,378.89 |
| | Medicaid | 5,644.37 |

| | |
|---|---|
| Hospice | 557.88 |
| Medicare A | 10,659.86 |
| Medicaid | 5,935.48 |
| Medicaid | 6,933.92 |
| Medicaid | 7,354.45 |
| Medicaid | 8,671.89 |
| Medicare A | 3,117.00 |
| Hospice | 5,598.80 |
| Medicaid | 4,034.16 |
| Medicare A | 16,486.98 |
| Medicaid | 6,386.67 |

| | |
|---|---|
| Total | 400,408.45 |

SCHEDULE 4.5

<u>4.5.2</u>

<u>TRANSFERRED ACCOUNTS PAYABLE</u>

West Broward Care Center
Accounts Payable
To Be Assumed by Post-Chow

| Vendor | Amount |
| --- | --- |
| Accelerated Care Plus | 1,105.62 |
| A-Excellent Service | 1,018.00 |
| Agency for Health Care Administration | 42.25 |
| All Fire Services | 750.00 |
| Allscripts | 503.21 |
| AMC Medical Transportation | 1,095.00 |
| American Plumbing Inc | 225.00 |
| Amerigas | 2,162.65 |
| AMX | 816.77 |
| Bay Court Electric | 1,835.00 |
| Berma Arnold | 3,836.76 |
| Briggs Corp | 134.14 |
| Broward Coalition on Aging | 50.00 |
| Caroline Williamson | 130.00 |
| Casamba, Inc | 280.00 |
| Chef's Delight | 529.65 |
| CIT Technology | 337.41 |
| City of Plantation | 408.75 |
| City of Plantation Utilities Dept | 1,795.02 |
| Commercial Laundry Equipment | 140.00 |
| Creative Medical Services | 770.00 |
| Dade Paper Co. | 1,201.14 |
| Deerfield Ice Cream Factory | 367.68 |
| Dental Horizons | 250.00 |
| Docutek Imaging Solutions | 267.79 |
| Dominos Pizza | 115.18 |
| Earl Haywood | 80.00 |
| Eccolab Group | 849.63 |
| Ecolab | 705.30 |
| Enthalpy LLC | 150.00 |
| Evelyn Menenemencioglu | 361.21 |
| Federal Background Services | 1,170.00 |
| FPL | 8,733.57 |
| Gilda Anderson - PC | 1,839.48 |
| Grainger | 658.59 |
| Hamlin and Burton | 65.35 |
| Hasler Mailing Systems | 124.02 |
| Hathaway Resources | 1,371.53 |
| HD Supply | 890.23 |
| Home Depot Credit Center | 220.25 |
| Iron Mountain | 10.13 |
| IT Management.LLC | 2,000.00 |
| Jerry Head | 75.00 |
| Joaquin Mendez, MD | 2,500.00 |
| Jobing.com | 308.00 |
| KCI | 1,702.80 |
| LRI | 70.00 |
| Lena Dietrich | 204.10 |
| Life Management Specialists. | 3,724.00 |
| McArthur | 962.11 |
| MDI Achieve | 396.09 |
| Medicom LLC | 805.61 |
| Medline Industries, Inc | 30,138.04 |
| Michelet Joseph | 240.00 |
| Muses of Music | 75.00 |
| My RDtoGo Inc | 5,792.50 |
| New PTRS LLC | 2,704.00 |
| Nino Licausi | 75.00 |
| NuVox Communications. | 736.75 |
| Phyllis Demasi | 126.69 |
| Pulmonary Health Network | 450.00 |
| R&C Management | 1,080.25 |
| RLR Supplies | 998.71 |
| Ron Dagan | 125.00 |
| Sammons & Preston | 826.78 |
| Santiano Brothers | 271.00 |
| Sentry Security | 303.14 |
| Stericycle | 375.18 |
| Sunset Foods | 16,212.58 |
| Sysco Food Services | 2,142.46 |
| Telecom South | 125.00 |
| United Parcel Service | 22.38 |
| Velma Carter | 873.31 |
| Wayne Scott | 259.28 |
| Michael Bernstein | 408.33 |
| Medistat | 135,496.60 |
| | |
| Total | 250,000.00 |

# SCHEDULE 6

## ASSUMED OPERATING CONTRACTS

West Broward Care Center-BUSINESS ASSOCIATES LOG
(CONTRACT PROVIDERS/ Vendors)

| Contract Type | Contractor | Address | Contact Person | Execution Date | Expiration Date | BA Agreement and DRA Letter |
|---|---|---|---|---|---|---|
| Enteral Feeding | Centrad Healthcare, Inc. | 184 Shuman Blvd Suite 130 Naperville, IL 60563 1800-478-5070 | Sasha Washington | | | DRA-4/15/08 |
| Dentist | Dental Horizons | 2598 NW 37 Street Boca Raton, FL 33434 561-613-0600 | Dr. Lawrence Landis | | | DRA-4/15/08 |
| Diagnostics | Swallowing Diagnostics (Barium Swallowing) | | | | | DRA-4/15/08 |
| | Allied Mobile X-ray (Ultrasounds) | 8360 W Flagler St Suit 207 Miami FL 33144 305-220-0333 | Elizabeth Tascon | | | DRA-4/15/08 |
| Dietitian | My Rd to Go | 11471 W Sample Rd Suite9 Coral Springs, FL 33065 954-345-1999 954-3458866 fax | Magdaline Segarra | | | DRA-4/15/08 |
| Dialysis Eye Care | Mobile Eye Care | 10191 W. Sample Rd., Suite 100 Coral Springs, Fl 33065 | Dr. Richard Bransgrove | | | DRA 4/15/08 |
| Falls Management | Fall Solutions | 2100 E. Hallandale Bch, Blvd. Suite 301 Hallandale Beach, Fl 33009 | Jereny Waxman | | | DRA-4/15/08 |

Updated 7/21/08

West Broward Care Center-BUSINESS ASSOCIATES LOG
(CONTRACT PROVIDERS/ Vendors)

| Hospice | VITAS | | | | DRA-4/15/08 |
|---|---|---|---|---|---|
| | Catholic Hospice | | | | |
| | Hospice by the Sea | | | | DRA-4/15/08 |
| Laboratory | Eccolab Group | 8370 W.. Flagler St. Suite 216 Miami, Fl 33144 305-220-3805 | Willie Serrano | | DRA-4/15/08 |
| Medical Director | Dr. Joaquin Mendez | 600 N Hiatus Rd. Suite 203 Pembroke Pines, FL 33026 954-392-7157 | | | DRA-4/15/08 |
| Medical Waste | Healthcare Waste Solutions | PO Box 643980 Pittsburgh, PA 15264-3980 305-599-9300 | Fernando Verdes | | DRA-4/15/08 |
| Oxygen | Liquid 02 | 7840 NW 53rd Street Miami, Fl 33166 305-477-1919 | Soly Rodriguez | | DRA-4/15/08 |
| Podiatry | Dr. Miguel Rivera | 3659 South Miami Ave. Suite 3003 Miami, FL 33133 954-888-1444 305-858-8730 | | | |
| Psychological | Dr. Finger | 954-722-6287 | | | DRA-4/15/08 |

Updated 7/21/08

West Broward Care Center-BUSINESS ASSOCIATES LOG
(CONTRACT PROVIDERS/ Vendors)

| Psychiatry | Dr. Greenbaugh | 12734 Kenwood Lane Suite 84 Fort Myers, FL 33009 1866-936-5250 | | | DRA-4/15/08 |
|---|---|---|---|---|---|
| | Dr. James Horst | 12734 Kenwood Lane Suite 84 Fort Myers, FL 33009 1866-936-5250 | | | |
| | Dr. Nathaniel Keller | 12734 Kenwood Lane Suite 84 Fort Myers, FL 33009 1866-936-5250 | | | |
| Radiology-X-ray | Americare Radiographics | 5201 NE 1st Avenue Fort Lauderdale, fl 3334 | Tom | | DRA-4/15/08 |
| Specialty Beds | MedSTAR Medical | 3801 Corporex Park Dr., Suite 175 Tampa, Fl 33619 | | | DRA-4/15/08 |
| Wound Care | Vohra Wound Physicians | 300 71st Street Miami Beach, Fl 33141 305-614-3340 | Dr. Chaskas | | DRA-4/15/08 |
| Copier | Docutek (lease) | 1011 S.W. 30th Avenue Deerfield, Fl 33442 954-671-4700 Fax 954-671-5292 | Gill or Lindsey | 2-26-07 | 2-26-2012 | N |

Updated 7/21/08

## SCHEDULE 13.4
## PENDING/THREATENED LITIGATION

W. B. Care Center
Closing Statement
7/1/2008

| Due to Old Owner | | Due to New Owner | | |
|---|---|---|---|---|
| Accounts Receivable | $ 400,000.00 | Accounts Payable | $ | 250,000.00 |
| Insurance for July and Aug 2008 (Property and GL/PL) | $  13,899.00 | PTO/Vacation | $ | 150,145.00 |
| Security Deposit for Sysco Foods | $   6,250.00 | | | |
| Total | $ 420,149.00 | Total | $ | 400,145.00 |

## OPEN LITIGATION

1. Lorraine Price v. West Broward Group, LLC d/b/a West Broward Care Center, a Florida limited liability company

2. Oracle Diagnostic Laboratories, Inc., a Florida corporation v. 825B West Broward Care Center West

3. Dayna Krahn v. West Broward Group, LLC d/b/a West Broward Care Center, a Florida limited liability company; and Eli Strohli, individually, and Rosemary Marquez, individually

4. Wage Grievance / Arbitration

    a. West Broward/New Hire Wages/ Reduction of Wages
    b. Marie Baptiste v. West Broward Care Center
    c. Josette Sauval v. West Broward Care Center
    d. Marie Joseph v. West Broward Care Center
    e. Selaine Francois v. West Broward Care Center
    f. Lismaine St. Paul v. West Broward Care Center
    g. Billy Mirlandy v. West Broward Care Center

5. Josette Maurice v. West Broward Group, LLC., A Florida corporation

6. Gloria Lewis v. West Broward Care Center

# Ex. "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

*In Re:*                                                    **Chapter 11**

**W.B. CARE CENTER LLC**                        **Case No. 09-12957-JKO**
**d/b/a WEST BROWARD CARE CENTER**

_____Debtor._____ /

## AFFIDAVIT OF DISINTERESTEDNESS AND RULE 2016 DISCLOSURES OF PROPOSED SPECIAL LITIGATION COUNSEL FOR DEBTOR IN POSSESSION

STATE OF FLORIDA              )
                              ) SS:
COUNTY OF MIAMI-DADE          )

    **BEFORE ME**, the undersigned authority, personally appeared WILLIAM R. TRUEBA, JR., in Miami, Florida, who after being duly sworn, deposes and says as follows:

    1.    I am an attorney admitted to practice in the State of Florida and the Southern District of Florida.

    2.    I am a member of the Law Firm of Espinosa | Trueba, PL, with offices located at 3001 SW 3rd Avenue, Miami, Florida 33129-2709. I am familiar with the matters set forth herein and make this Affidavit in support of the Debtor-In-Possession's (the "Debtor") Application For Employment Of William R. Trueba, Jr., Esq. and The Law Firm Of Espinosa | Trueba, PL ("ET") as Special Litigation Counsel.

    3.    Neither ET nor I represent any interest adverse to the Debtor or the Estate, and we are "disinterested persons" as required by 11 U.S.C. § 327(a).

    4.    I and ET have represented the managing member of the Debtor, Mr. Timothy Reardon, and another of his companies, Q.I.S. Management, LLC, in the past, and continue to

represent Mr. Reardon and Q.I.S. Management, LLC, in a lawsuit pending in the Seventeenth Judicial Circuit in and for Broward County Florida, Institutional Leasing 1, LLC v. W.B. Care Center, LLC, QIS Management, LLC, and Timothy Reardon, Case No. 09-41087.  However, I do not believe that this representation of Mr. Reardon and Q.I.S. Management, LLC will be adverse to the Debtor or the Estate in the bankruptcy proceedings.

5.       Neither ET nor I will represent any other entity in connection with this case and neither I nor the firm will accept any fee from any other party or parties in this case, except the Debtor in Possession, unless otherwise authorized by the Court.

6.       Except as explained above in paragraph 5, and except for the continuing representation of the Debtor, neither I nor ET hold any connections with the Debtor, creditors, any other party in interest, their respective attorneys, accountants, the U.S. Debtor, or any person employed by the Office of the U.S. Debtor as required by Fed.R.Bank.P. 2014.

7.       The professional fees and costs incurred by ET in the course of its representation of the Debtor shall be subject in all respects to the application and notice requirements of 11 U.S.C. §§ 330 and 331 and F.R.B.P. 2014 and  2016.

8.       Prior to the Petition Date and within the ordinary course of ET's business relationship with the Debtor, the Debtor paid $37,660.00 on account of pre-petition legal services provided to the Debtor.

9.       The terms of employment agreed between the Debtor and the Attorneys, subject to the approval of the Court, are that services will be billed at the standard hourly rates of the respective attorneys and paralegals of ET, which rates are subject to periodic adjustment to reflect economic and other conditions.

10.      There is no agreement of any nature, other than the shareholder agreement of our firm, as to the sharing of any compensation to be paid to the firm.  No promises have been

2

received by ET, nor any member, or associate thereof, as to the compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

11.   This concludes my declaration.

**FURTHER AFFIANT SAYETH NAUGHT.**

William R. Trueba, Jr., Esq.
Florida Bar No: 117544

**SWORN TO AND SUBSCRIBED** before me this _21st_ day of August 2009.

NOTARY PUBLIC, STATE OF FLORIDA
AT LARGE

NOTARY PUBLIC, STATE OF FLORIDA
Print Name: _Lisel Mansen_
Commission No. _____
My Commission Expires: _____

LISEL MANSEN
MY COMMISSION # DD 784809
EXPIRES: June 14, 2012
Bonded Thru Notary Public Underwriters

3

# Exhibit "C"

**Affidavit of Disinterestedness of Mario R. Arango, Esq. to be filed under separate cover.**