UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                                       Chapter 11

W.B. CARE CENTER LLC                                       Case No. 09-26196-BKC-JKO
d/b/a WEST BROWARD CARE CENTER

     Debtor.
_____/

**DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT BETWEEN DEBTOR, W.B. CARE CENTER, LLC AND
INSTITUTIONAL LEASING 1, LLC PURUSANT TO FED. R. BANKR. P. 9019**

Debtor and debtor-in-possession, W.B. Care Center, LLC ("**Debtor**"), pursuant to Fed. R. Bankr. P. 9019, moves this Court ("**Motion**") for entry of an order approving the terms of the agreement among Debtor and related parties[1] and Institutional Leasing 1, LLC ("**Institutional**") and related parties[2] memorialized in the Settlement Agreement, a copy of which is attached as **Exhibit "A"**, which was reviewed by and preliminarily approved by the Court *ex parte* on November 12, 2009 at 9:30AM, subject to final Court approval by virtue of this Motion. In support of this Motion, Debtor states as follows:

     **I.    JURISDICTION, VENUE, STATUTORY AND PROCEDURAL BASIS**

1.    This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to sections 28 U.S.C §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The procedural predicate for the requested relief is Fed. R. Bankr. P. 9019.

---

[1] The parties related to Debtor are Timothy Reardon ("**Reardon**"), QIS Management, LLC ("**QIS**") and T.R., LLC ("**TR**") (collectively "**Debtor Parties**).
[2] The parties related to Institutional are Millennium Management, LLC ("**Millennium**"), Abraham Shaulson ("**Shaulson**"), West Broward Group, LLC ("**WBG**") and Eli Strohli ("**Strohli**") (collectively "**Institutional Parties**").

## II.  BACKGROUND

1. On July 24, 2009, Institutional filed an eviction action against Debtor seeking, *inter alia,* unpaid rents in state court initiating the case styled *Institutional Leasing 1, LLC v. W.B. Care Center, LLC, et al.* Case No. 09-4108714 ("**Institutional State Court Action**"). In the Institutional State Court Action, Institutional also filed claims against Reardon on a personal guaranty of a promissory note between Debtor and Institutional, and later amended such claims to include claims for defamation.

2. On August 5, 2009 Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**") initiating the bankruptcy case styled *In re W.B. Care Center, LLC*, Case No. 09-26196 ("**WB Case**") in the Bankruptcy Court for the Southern District of Florida, Judge John K. Olson presiding ("**Bankruptcy Court**").

3. On August 5, 2009, Debtor filed an adversary proceeding styled *W.B. Care Center, LLC v. Institutional Leasing 1, LLC, et al.* Adv. Pro. No. 09-01868 ("**Preference Adversary**") asserting preference claims under Bankruptcy Code § 547 against Institutional and Millennium.

4. On August 5, 2009, Debtor filed an adversary proceeding styled *W.B. Care Center, LLC v. Institutional Leasing 1, LLC, et al.* Adv. Pro. No. 09-01865 ("**Fraud Adversary**") asserting, *inter alia*, fraud claims against the Institutional Parties.

5. Because Institutional would not consent to the use of Cash Collateral until the Court appointed an Examiner to oversee the Debtor's financial circumstances, the Court in the WB Case appointed Soneet Kapila as Chapter 11 Examiner ("**Examiner Kapila**") (D.E. 145 and 156). Subsequently, the Court entered an Order directing Examiner Kapila to facilitate a settlement conference between the Debtor Parties and the Institutional Parties (D.E. 164).

6. The Parties mutually desire to resolve the claims asserted or that could be asserted in the Institutional State Court Action, the WB Case, the Preference Adversary, the Fraud Adversary and any other matters of dispute between the Parties ("**Subject Actions**").

### III. MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

7. The Settlement Agreement fully sets forth all of the terms of the agreement among Debtor and Debtor Parties and Institutional and the Institutional Parties. The material provisions of the Settlement Agreement are described as follows:

A. <u>Settlement Payment</u>. Institutional shall place $500,000 in escrow with the Examiner to be paid to Reardon as follows: (i) $350,000 upon an order of the bankruptcy court approving the § 363 sale contemplated herein, which is not subject to appeal or rehearing ("**Final Order**") or, if timely appealed, is not subject to a stay pursuant to Fed. R. Bank. P. 8005, and (ii) $150,000 upon effectuation of the license transfer. Payment to Reardon from escrow shall be expressly contingent upon: (x) Reardon refraining from any interference whatsoever in the operations of Debtor during the period beginning as of the effective date of the settlement contemplated hereunder through the conclusion of the Bankruptcy Code §363 sale and dismissal of the WB Case; and (y) Reardon's compliance with the terms of Paragraphs: 4, 8, 9, 10, 12, 13, 14, 15, 18 hereunder, but in no event shall payment be withheld if Reardon is in compliance with such terms at the conclusion of the Bankruptcy Code § 363 Sale.

B. <u>Reardon Resignation</u>. Reardon and any other person acting in the capacity of nursing home administrator shall resign effective upon preliminary court approval of these terms at the hearing on November 12, 2009 at 9:30 AM and shall not return to the Debtor's facility, other than to recover personal items under the supervision of Examiner Kapila.

C. <u>Licensed Nursing Home Administrator</u>. Zev Shemesh shall be the Licensed Nursing Home Administrator. He/she shall operate and manage the Debtor, have co-signatory authority with Examiner Kapila on Debtor's bank accounts and shall sign on behalf of Debtor in connection with any administrative or regulatory authority.

D. <u>DIP Facility</u>. Institutional shall provide a Debtor in Possession Financing Facility ("**DIP Facility**") in the maximum amount of the $250,000 to insure post petition obligations after November 12, 2009 are paid in a timely fashion. Institutional shall be provided with all of the traditional protections afforded to DIP Lenders. The DIP Facility shall be used to fund (i) professional fees of Debtor reasonably incurred to date, and incurred prospectively in effectuating a Bankruptcy Code § 363 and approved by the

Bankruptcy Court; (ii) United States Trustee Fees; (iii) any operation short falls of the Debtor from November 12, 2009 through and including the dismissal of the WB Case.

E.     11 U.S.C. § 363 Sale. Examiner Kapila is directed to conduct a Bankruptcy Code § 363 sale of Debtor's business no later than sixty (60) days from the date hereof. Institutional shall be permitted but not required to credit bid under Bankruptcy Code § 363 (k) the amount of the DIP facility provided for herein and the $2.5MM secured claim, which the parties stipulate is not subject to dispute as to amount, validity or priority. Examiner Kapila shall have the authority to transfer title to the property and any licenses in connection with the Bankruptcy Code § 363 sale contemplated herein.

F.     Dismissal of the Subject Actions. The Parties shall effectuate dismissals with prejudice of the following actions:

   a. Fraud Adversary;
   b. Preference Adversary; and
   c. Institutional State Court Litigation.

G.     Reardon Retractions. Reardon shall acknowledge that all written submission(s) by Debtor and Reardon to AHCA during or in connection with the change of ownership ("CHOW") application of WB Care Center, LLC, were sent by Debtor or its agents and were not the responsibility of Institutional, Millennium or Shaulson. Reardon shall further specifically acknowledge and agree, in writing, that his statements submitted to AHCA by the letter dated November 9, 2009 as well as any other related submissions purporting to allege fraud, intentional wrongdoing or other acts or omissions on behalf of Institutional Leasing 1, LLC, Millennium Management, LLC, their Members, Managers, employees, agents accountants or attorneys in connection with the CHOW application of Debtor were without basis in fact. Reardon shall expressly retract all such statements made to AHCA regarding any purported nondisclosure by Millennium Management, LLC, its agents, accountants or attorneys in connection with both: (i) the Debtor's CHOW application; and (ii) the $2.5MM obligation of Debtor to Institutional and the accompanying guaranty obligation of Reardon.

H.     Reardon's Rectification of Damages. Notwithstanding the obligations of Reardon set forth in Paragraph 8 related to AHCA, Reardon shall take affirmative steps to rectify any alleged damages to Institutional Parties, perceived or otherwise, caused by service of any papers or letters on any other parties, including, without limitation, bankruptcy related court papers and the Fraud Adversary, through a mechanism that the Parties may negotiate in good faith.

I.     $2,500,000 Note. Debtor and Reardon agree and acknowledge that the $2,500,000 Note, executed and delivered by Debtor having an effective date of June 30, 2008 was supported by adequate and reasonably equivalent value and expressly waive any defenses or claims alleging lack of adequate consideration.

J. <u>Dismissal of WB Case</u>. Upon entry of a Final Order approving the §363 sale contemplated herein to Institutional or the highest bidder, Debtor, with the support of the Examiner shall seek to dismiss the WB Case with prejudice for 180 days.

K. <u>Prohibition Against Adverse Actions</u>. Reardon shall not take part in any legal or equitable action, directly or derivatively, that may adversely affect Institutional, Millennium, Shaulson, Strohli and/or West Broward Group. Notwithstanding the foregoing, if Reardon is named as a defendant in a patient liability claim he may defend as appropriate.

L. <u>Reardon's Turnover of Records</u>. Reardon acknowledges and agrees any information, including without limitation to, records, data and electronic data, in his possession, custody or control or in the possession custody and control of QIS Management, LLC, related to Debtor or its operations and management, shall immediately (but in no event later than forty-eight hours following execution of this Settlement Agreement), be turned over to the Examiner.

K. <u>No Disparagement</u>. Each party agrees to not disparage the other verbally or in writing.

M. <u>Reardon's AHCA Cooperation</u>.  Reardon shall execute all reasonable documents needed to rectify any inquiries related to the written statements submitted to AHCA or disseminated to any third-parties, prior to the conclusion of the §363 sale and dismissal of the Chapter 11 Bankruptcy Proceeding.

N. <u>Debtor Parties' Release</u>. Effective upon entry of a final order of the Bankruptcy Court approving this Agreement and the Institutional Parties complying with terms and conditions of this Agreement, including without limitation, Reardon receiving the payments due in paragraph 3, the Debtor Parties hereby do fully remise, release, acquit, waive, satisfy, hold harmless, and forever discharge the Institutional Parties, and all of their heirs, executors, representatives, successors, assigns, employees, agents, attorneys, officers, directors, shareholders, subsidiaries, parents and affiliates, from any and all damages, judgments, claims, losses, allegations, inducements, representations, concealments, debts, promises, obligations, actions, causes of action, claims, suits, debts, accounts, contracts, controversies, attorneys' fees, costs, expenses, agreements, promises, demands, and proceedings of any type or kind whatsoever, whether in law or in equity, whether known or unknown, whether accrued or unaccrued, liquidated or unliquidated, contingent or matured, that the Debtor Parties ever had, now have, or hereafter can, shall or may have arising out of, or relating to, the Subject Actions or for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world, to the date of Bankruptcy Court  approval of this Agreement.  Without limiting the foregoing in any way or manner, this release shall expressly encompass and forever discharge all claims that were asserted or could have been asserted, whether compulsory or permissive, by any of the Debtor Parties against Institutional Parties, in the Subject Actions or for any

matters the Debtor Parties can, shall or may have against the other related to or arising from the subject matter involved in the Subject Actions.  It being the expressed intention of the Debtor Parties that this release shall be construed as broadly as possible in favor of a release of any and all claims against Institutional Parties, for all matters, causes and things  occurring before the date hereof.

O.      Institutional Parties' Release. Effective upon entry of a final order of the Bankruptcy Court approving this Agreement and the Debtor Parties complying with terms and conditions of this Agreement the Institutional Parties hereby do fully remise, release, acquit, waive, satisfy, hold harmless, and forever discharge Reardon  individually and in his representative capacity with respect to Debtor, and Q.I.S. Management, LLC, T.R., LLC and all of their heirs, executors, representatives, successors, assigns, employees, agents, attorneys, officers, directors, shareholders, subsidiaries, parents, affiliates, members, other that any claims against Debtor, from any and all damages, judgments, claims, losses, allegations, inducements, representations, concealments, debts, promises, obligations, actions, causes of action, claims, suits, debts, accounts, contracts, controversies, attorneys' fees, costs, expenses, agreements, promises, demands, and proceedings of any type or kind whatsoever, whether in law or in equity, whether known or unknown, whether accrued or unaccrued, liquidated or unliquidated, contingent or matured, that the Institutional Parties ever had, now have, or hereafter can, shall or may have arising out of, or relating to, the Subject Actions or for, upon or by reason of  any matter, cause or thing whatsoever from the beginning of the world, to the date of Bankruptcy Court  approval of this Agreement. Without limiting the foregoing in any way or manner, this release shall expressly encompass and forever discharge all claims that were asserted or could have been asserted, whether compulsory or permissive, by any of the Debtor Parties against Institutional Parties in the Subject Actions or for any matters the Debtor Parties can, shall or may have against the other related to or arising from the subject matter involved in the Subject Actions.  It being the expressed intention of the Debtor Parties that this release shall be construed as broadly as possible in favor of a release of any and all claims against Institutional Parties for all matters, causes and things  occurring before the date hereof.

P.      Bankruptcy Court Approval and Effect of Agreement. This Agreement, and the release contained herein, shall not be effective until the Bankruptcy Court approves this Agreement in its entirety.  Upon the Bankruptcy Court final order  of approval, this Agreement, including the releases contained herein pertaining to the Released Claims, is effective and binding on the Parties hereto, Debtor's estate, its creditors, equity security holders, interested parties, parties in interest, noticed parties, meaning any party that has requested and/or received notice in the Lawsuits, estate fiduciaries, including, without limitation, any Chapter 7 and/or 11 trustees, present and former affiliates, parents, subsidiaries, predecessors in interest, successors in interest and all respective officers, directors, managers, members, agents, employees, attorneys, advisors, heirs and

6

assignees. Should the Bankruptcy Court not approve the terms of this Agreement, the Agreement is null and void and shall have no force or effect and shall not be enforceable by or against the Parties hereto and the Parties shall be restored to their prior position without any prejudice.

Q. <u>Bankruptcy Court Retention of Jurisdiction</u>. The Parties shall request that the Bankruptcy Court retain jurisdiction to interpret and enforce all the terms of this Agreement. The Parties shall consent to the jurisdiction of the Bankruptcy Court in any action, including an adversary proceeding or other proceeding, brought to enforce the terms of this Agreement. Such retention of jurisdiction shall be requested to be memorialized in the Order approving this Agreement, any Order confirming a Chapter 11 Plan and any Order dismissing the WB Case.

*See* Settlement Agreement.

## V. REQUESTED RELIEF

8. Debtor requests that this Court enter an Order approving the Settlement Agreement. The Settlement Agreement resolves all issues among the Debtor, Institutional and their respective Related Parties.

## VI. BASIS FOR THE REQUESTED RELIEF

9. "It is generally recognized that the law favors compromise of disputes over litigation for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). Rule 9019(a) grants the bankruptcy court the power to approve settlements. *GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005). Specifically, Rule 9019 states:

> (a) **Compromise.** On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.
>
> Fed. R. Bankr. P. 9019.

Accordingly, it is within the scope of this Court's authority to grant the Motion.

10. When considering settlements for approval, the bankruptcy court is to "determine whether the proposed settlement is fair and equitable." *In re Air Safety Int'l, L.C.*, 336 B.R. at 852. The Eleventh Circuit Court of Appeals has set forth factors to assist bankruptcy courts in determining whether a settlement proposal meets the appropriate standard. *Id.* These factors are as follows: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises ("***Justice Oaks Factors***"). *See Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990). *See also Romagosa v. Thomas (In re Van Diepen, P.A.)*, 236 Fed. Appx. 498, 504 (11th Cir. 2007) (setting forth *Justice Oaks* Factors and affirming bankruptcy court's approval of settlement agreement). Appellate courts review a bankruptcy court's approval of a settlement or comprise to determine whether there is a clear showing that the bankruptcy court abused its discretion. *In re Van Diepen, P.A.*, 236 Fed. Appx. at 504; *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (stating "the Bankruptcy Court has broad discretion to approve a compromise."). Moreover, "[t]he bankruptcy court is not required to rule on the merits, and most look only to the probabilities." *Id.* Settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

11. Here, the *Justice Oaks* Factors weigh in favor of approving the terms of the Settlement Agreement. In negotiating the terms of the Settlement Agreement, Debtor and its counsel carefully evaluated the costs and risks of litigation, the defenses that could be raised the anticipated risks and costs in connection with the collection on any judgments and other factors

in its sound business judgment. As a result, Debtor states that in the exercise of its business judgment, the Settlement is in the best interests of Debtor's bankruptcy estates and its creditors.

12.     Debtor acknowledges there is a possibility that some or all of its claims against the Institutional Parties may have been barred by the release granted in the previous bankruptcy case, which was not deemed invalid in the Court's Settlement Rejection Order. Debtor is unsure as to the collectability of certain of the Institutional Parties.  The claims raised in this case among the Parties to the Settlement Agreement are complex and the Subject Actions would require extensive discovery and motion practice. Time is running out. Debtor has less that four months within which to assume or reject its facility lease with Institutional. If Debtor is forced to reject the lease, its business and nursing home will be lost and creditors will receive little or nothing. In addition, AHCA has indicated that it will relocate the patients if the nursing home is not stabilized and expenses and employees are paid. The current cash flow is insufficient to meet these obligations. The Settlement Agreement will avoid the necessity of further litigation in this contentious matter and avoid the concomitant fees and costs. Finally, the Settlement Agreement provides for a complete resolution of this case beneficial to both Debtor's creditors and its patients.

13.     Debtor recommends approval of the Settlement Agreement because it is fair, reasonable and in the best interest of the estates and their creditors. The Settlement Agreement is a vehicle for the Debtor to exit this proceeding as a viable, going concern.  This is of paramount benefit to all interested parties and creditors as it allows creditors to continue doing business with a solvent and viable entity, and provides for the uninterrupted and high quality care for the Debtor's patients and residents.  The latter is, in the view of the Debtor, justification alone to support approval of the Settlement Agreement.

**WHEREFORE**, Debtor respectfully requests that the Court enter an Order: (i) granting the Motion (ii) approving the Settlement Agreement; (iii) retaining jurisdiction over the terms of the Settlement Agreement and the parties thereto to interpret and enforce the Settlement Agreement; (iv) and for such other relief as the Court deems proper.

Dated: November 13, 2009.

/s/  Robert P. Charbonneau, Esq.
Robert P. Charbonneau, Esq.
Fla. Bar Number No. 96824
rpc@ecccounsel.com
EHRENSTEIN CHARBONNEAU CALDERIN
800 Brickell Avenue, Suite 902
Miami, Florida 33131
T. (305) 722-2002
F. (305) 722-2001

Attorney for the Debtor-in-Possession

**CERTIFICATE OF SERVICE**

I CERTIFY that on November 13, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, and by U.S. Mail to all other parties on the attached Service List.

                By:    /s/ Robert P. Charbonneau, Esq.
                         Robert P. Charbonneau, Esq.

**09-26196-JKO Notice will be electronically mailed to:**

Michael I Bernstein on behalf of Creditor Millennium Management, LLC
michael@miblawoffice.com

Robert P Charbonneau on behalf of Debtor W.B. Care Center, LLC
rpc@ECCcounsel.com,
nsgm0024@aol.com;dgold@ECCcounsel.com;scunningham@ECCcounsel.com;phornia@ecccounsel.com;nsocorro@ecccounsel.com;msardinas@ecccounsel.com

AnneJanet Deases on behalf of Creditor Service Employees International Union, Local 1999
adeases@phillipsrichard.com, mmcdougald@phillipsrichard.com;bnicholson@phillipsrichard.com

Daniel L. Gold on behalf of Debtor W.B. Care Center, LLC
dgold@ecccounsel.com, scunningham@ecclegal.com

Hollie N Hawn on behalf of Creditor Broward County Revenue Collector
hhawn@broward.org

Frank F McGinn on behalf of Creditor Iron Mountain Information Management, Inc.
ffm@bostonbusinesslaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Kristopher E Pearson on behalf of Creditor Institutional Leasing 1, LLC
kpearson@swmwas.com, mmasvidal@swmwas.com;cperez@stearnsweaver.com

Patricia A Redmond on behalf of Creditor Institutional Leasing 1, LLC
predmond@swmwas.com, jmartinez@swmwas.com;rross@swmwas.com

Diane Noller Wells on behalf of Creditor Vista Healthplan, Inc.
dwells@devinegoodman.com, efiling@devinegoodman.com

**09-26196-JKO Notice will not be electronically mailed to:**

|  |  |  |
|---|---|---|
| Cheney Brothers, Inc<br>One Cheney Way<br>Riviera Beach, FL 33404-7000 | Advanced Answers On Demand, Inc.<br>8100 N University Drive<br>Tamarac, FL 33321 | Lynne Granata<br>11121 SW 161 Street<br>Miami, FL 33157 |
| FPL<br>General Mail Facility<br>Miami, FL 33188-0001 | Park Shore Pharmacy<br>9531 B NE 2nd Ave<br>Miami, Fl 33138 | Joaquin Mendez, M.D.<br>600 N Hiatus Rd<br>Suite 203<br>Pembroke Pines, Fl 33026 |

| | | |
|---|---|---|
| Medicom<br>1090 Coney Island Ave<br>Brooklyn, NY 11230 | Medline Industries, Inc.<br>Dept 40221<br>Atlanta, GA 33192-0221 | Omnicare Of South Florida<br>P.O.Box 715268<br>Columbus, OH 43271-5268 |
| AHCA Long Term Care Unit<br>Bldg 3, Ms 33,   2727 Mahan Drive<br>Tallahassee, FL 32308 | Blue Cross Blue Shield Of Florida<br>P.O.Box 2458<br>Jacksonville, FL 32231 | Bud's Carpet & Tile*<br>4980 North State Road 7<br>Tamarac, FL 33319 |
| Arena Operating Co., LTD<br>1 Panther Parkway<br>Fort Lauderdale, Fl 33323 | Medistat Pharmacy Svcs<br>9308 Florida Palm Dr<br>Tampa, FL 33619 | Miami Beach Awning Co<br>3905 N.W. 31st Avenue<br>Miami, FL 33142 |
| Medicaid<br>1400 W. Commercial Blvd, Suite 110<br>Ft. Lauderdale, Florida 33309 | Ti Contractor, Llc<br>111 N.E First Street, 3rd Floor<br>Miami, FL 33132 | Vista Healthplans<br>Po Box 30741<br>Tampa, FL 33630-3741 |
| US Dept of Treasury<br>51 SW First Ave<br>Room 1114<br>Miami, Fl 33130-1623 | Broward County Tax Collector<br>Governmental Center Annex<br>115 S. Andrews Ave<br>Ft. Lauderdale, Fl 33301 | Dept. of Revenue<br>State of Florida<br>PO Box 6668<br>Tallahassee, Fl 32314-6668 |
| IRS Centralized Insolvency Ops<br>PO Box 21126<br>Philadelphia, PA 19114-0326 | IRS Insolvency<br>7850 SW 6 Ct Stop 5730<br>Plantation, Fl 33324 | City of Plantation<br>400 NW 73 Ave<br>Plantation, Fl 33317 |
| AHCA<br>2727 Mahan Dr<br>Tallahassee, FL 32308 | US Dept of Labor Occ Safety & Health Adm<br>OSHA Region 4<br>61 Forsyth St SW<br>Atlanta, GA 30303 | Florida Dept. of Revenue<br>5050 West Tennessee St<br>Tallahassee, FL 32304 |
| Medicare BCC<br>Written Corresp. Dept.<br>PO Box 1270<br>Lawrence, KA 66044 | Amerigas<br>2220 Sw 70th Ave<br>Davie, FL 33317-7108 | AT&T<br>P.O.Box 105503<br>Atlanta, GA 30348-5503 |
| Nuvox<br>2 North Main Street<br>Greenville, SC 29601 | Waste Management<br>2625 W. Grand View Road, Ste 150<br>Phoenix, AZ  85029 | Columbia Casualty Company<br>Commercial Liability<br>Professional Liability333 S Wabash Ave<br>Chicago, IL 60604 |
| Lexington Insurance Company<br>Excess / Umbrella Liability<br>100 Summer St<br>Boston MA 02110 | Lockton Insurance Brokers, LLC<br>Commercial Property<br>725 S. Figueroa St., 35th Floor<br>Los Angeles, CA  90017 | Fidelity Nat'l Insurance Co.<br>Property Insurance<br>Flood Insurance<br>P.O. BOX 33003<br>St. Petersburg, FL 33733-8003 |

American Casualty Company
Comprehensive General Liability
Professional Liability
Workers Compensation
333 Wabash Ave.
Chicago, Il 60604

Summit Holdings
Workers Compensation
P.O. Box 988
Lakeland, Fl 33802

Continental Casuality Co.
CNA Plaza
22 South
Chicago, Il 60685

Espinosa Trueba
c/o William R. Trueba, Jr., Esq.
Special Litigation Counsel
3001 SW 3rd Ave
Miami, Florida 33129-2709