# Exhibit "A"

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is made by and among (1) Debtor and Debtor-in-Possession, W.B. Care Center, LLC. ("**Debtor**"), Timothy Reardon ("**Reardon**") and QIS Management, LLC ("**QIS**"), T.R., LLC ("**TR**") (collectively "**Debtor Parties**") and (2) Institutional Leasing, 1, LLC ("**Institutional**"), Millennium Management, LLC ("**Millennium**"), Abraham Shaulson ("**Shaulson**"), West Broward Group, LLC ("**WBG**") and Eli Strohli ("**Strohli**") (collectively "**Institutional Parties**") and all individually referred to as "**Party**" or collectively referred to as the "**Parties**."

WHEREAS, on July 24, 2009, Institutional filed an eviction action against Debtor seeking, *inter alia,* unpaid rents in state court initiating the case styled *Institutional Leasing 1, LLC v. W.B. Care Center, LLC, et al.* Case No. 09-4108714 ("**Institutional State Court Action**"). In the Institutional State Court Action, Institutional also filed claims against Reardon on a personal guaranty of a promissory note between Debtor and Institutional, and later amended such claims to include claims for defamation.

WHEREAS, on August 5, 2009 Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**") initiating the bankruptcy case styled *In re W.B. Care Center, LLC,* Case No. 09-26196 ("**WB Case**") in the Bankruptcy Court for the Southern District of Florida, Judge John K. Olson presiding ("**Bankruptcy Court**").

WHEREAS, on August 5, 2009, Debtor filed an adversary proceeding styled *W.B. Care Center, LLC v. Institutional Leasing 1, LLC, et al.* Adv. Pro. No. 09-01868 ("**Preference Adversary**") asserting preference claims under Bankruptcy Code § 547 against Institutional and Millennium.

WHEREAS, on August 5, 2009, Debtor filed an adversary proceeding styled *W.B. Care Center, LLC v. Institutional Leasing 1, LLC, et al.* Adv. Pro. No. 09-01865 ("**Fraud Adversary**") asserting, *inter alia*, fraud claims against the Institutional Parties.

WHEREAS, the Court in the WB Case appointed Soneet Kapila as Chapter 11 Examiner ("**Examiner Kapila**") (D.E. 145 and 156). Subsequently, the Court entered an Order directing Examiner Kapila to facilitate a settlement conference between the Debtor Parties and the Institutional Parties (D.E. 164).

WHEREAS, the Parties mutually desire to resolve the claims asserted or that could be asserted in the Institutional State Court Action, the WB Case, the Preference Adversary, the Fraud Adversary and any other matters of dispute between the Parties ("**Subject Actions**").

NOW THEREFORE, in consideration of the foregoing and the mutual promises, undertakings and agreements contained herein, subject to Bankruptcy Court approval, the Parties agree as follows:

1. <u>Incorporation of Recitals</u>. The foregoing recitals are true and correct and incorporated herein by reference.

2. <u>Denial of Liability</u>. The Parties agree that this Agreement is a compromise and settlement of disputed claims, and none of the Parties admit, and each expressly denies, any liability on its part, except as may expressly be set forth herein.

3. <u>Settlement Payment</u>. Institutional shall place $500,000 in escrow with the Examiner to be paid to Reardon as follows: (i) $350,000 upon an order of the bankruptcy court approving the § 363 sale contemplated herein, which is not subject to appeal or rehearing ("**Final Order**") or, if timely appealed, is not subject to a stay pursuant to Fed. R. Bank. P. 8005, and (ii) $150,000 upon effectuation of the license transfer. Payment to Reardon from escrow shall be expressly contingent upon: (x) Reardon refraining from any interference whatsoever in the operations of Debtor during the period beginning as of the effective date of the settlement contemplated hereunder through the conclusion of the Bankruptcy Code §363 sale and dismissal of the WB Case; and (y) Reardon's compliance with the terms of Paragraphs: 4, 8, 9, 10, 12, 13, 14, 15, 18 hereunder, but in no event shall payment be withheld if Reardon is in compliance with such terms at the conclusion of the Bankruptcy Code § 363 Sale.

4. <u>Reardon Resignation</u>. Reardon and any other person acting in the capacity of nursing home administrator shall resign effective upon preliminary court approval of these terms at the hearing on November 12, 2009 at 9:30 AM and shall not return to the Debtor's facility, other than to recover personal items under the supervision of Examiner Kapila.

4.1. <u>Licensed Nursing Home Administrator</u>. _____ shall be the Licensed Nursing Home Administrator. He/she shall operate and manage the Debtor, have co-signatory authority with Examiner Kapila on Debtor's bank accounts and shall sign on behalf of Debtor in connection with any administrative or regulatory authority.

5. <u>DIP Facility</u>. Institutional shall provide a Debtor in Possession Financing Facility ("<u>DIP Facility</u>") in the maximum amount of the $250,000 to insure post petition obligations after November 12, 2009 are paid in a timely fashion. Institutional shall be provided with all of the traditional protections afforded to DIP Lenders. The DIP Facility shall be used to fund (i) professional fees of Debtor reasonably incurred to date, and incurred prospectively in effectuating a Bankruptcy Code § 363 and approved by the Bankruptcy Court; (ii) United States Trustee Fees; (iii) any operation short falls of the Debtor from November 12, 2009 through and including the dismissal of the WB Case.

6. <u>11 U.S.C. § 363 Sale</u>. Examiner Kapila is directed to conduct a Bankruptcy Code § 363 sale of Debtor's business no later than sixty (60) days from the date hereof. Institutional shall be permitted but not required to credit bid under Bankruptcy Code § 363 (k) the amount of the DIP facility provided for herein and the $2.5MM secured claim, which the parties stipulate is not subject to dispute as to amount, validity or priority. Examiner Kapila shall have the authority to transfer title to the property and any licenses in connection with the Bankruptcy Code § 363 sale contemplated herein.

7. <u>Dismissal of the Subject Actions</u>. The Parties shall effectuate dismissals with prejudice of the following actions:

   a. Fraud Adversary;
   b. Preference Adversary; and
   c. Institutional State Court Litigation.

8. <u>Reardon Retractions</u>. Reardon shall acknowledge that all written submission(s) by Debtor and Reardon to AHCA during or in connection with the change of ownership ("CHOW") application of WB Care Center, LLC, were sent by Debtor or its agents and were not the responsibility of Institutional, Millennium or Shaulson. Reardon shall further specifically acknowledge and agree, in writing, that his statements submitted to AHCA by the letter dated November 9, 2009 as well as any other related submissions purporting to allege fraud, intentional wrongdoing or other acts or omissions on behalf of Institutional Leasing 1, LLC, Millennium Management, LLC, their Members, Managers, employees, agents accountants or attorneys in connection with the CHOW application of Debtor were without basis in fact. Reardon shall expressly retract all such statements made to AHCA regarding any purported nondisclosure by Millennium Management, LLC, its agents, accountants or attorneys in connection with both: (i) the Debtor's CHOW application; and (ii) the $2.5MM obligation of Debtor to Institutional and the accompanying guaranty obligation of Reardon.

9. <u>Reardon's Rectification of Damages</u>. Notwithstanding the obligations of Reardon set forth in Paragraph 8 related to AHCA, Reardon shall take affirmative steps to rectify any alleged damages to Institutional Parties, perceived or otherwise, caused by service of any papers or letters on any other parties, including, without limitation, bankruptcy related court papers and the Fraud Adversary, through a mechanism that the Parties may negotiate in good faith.

10. <u>$2,500,000 Note</u>. Debtor and Reardon agree and acknowledge that the $2,500,000 Note, executed and delivered by Debtor having an effective date of June 30, 2008 was supported by adequate and reasonably equivalent value and expressly waive any defenses or claims alleging lack of adequate consideration.

11. <u>Dismissal of WB Case</u>. Upon entry of a Final Order approving the §363 sale contemplated herein to Institutional or the highest bidder, Debtor, with the support of the Examiner shall seek to dismiss the WB Case with prejudice for 180 days.

12. <u>Prohibition Against Adverse Actions</u>. Reardon shall not take part in any legal or equitable action, directly or derivatively, that may adversely affect Institutional, Millennium, Shaulson, Strohli and/or West Broward Group. Notwithstanding the foregoing, if Reardon is named as a defendant in a patient liability claim he may defend as appropriate.

13. <u>Reardon's Turnover of Records</u>. Reardon acknowledges and agrees any information, including without limitation to, records, data and electronic data, in his possession, custody or control or in the possession custody and control of QIS Management, LLC, related to

Debtor or its operations and management, shall immediately (but in no event later than forty-eight hours following execution of this Settlement Agreement), be turned over to the Examiner.

14. <u>No Disparagement</u>. Each party agrees to not disparage the other verbally or in writing.

15. <u>Reardon's AHCA Cooperation</u>. Reardon shall execute all reasonable documents needed to rectify any inquiries related to the written statements submitted to AHCA or disseminated to any third-parties, prior to the conclusion of the §363 sale and dismissal of the Chapter 11 Bankruptcy Proceeding.

16. <u>Debtor Parties' Release</u>. Effective upon entry of a final order of the Bankruptcy Court approving this Agreement and the Institutional Parties complying with terms and conditions of this Agreement, including without limitation, Reardon receiving the payments due in paragraph 3, the Debtor Parties hereby do fully remise, release, acquit, waive, satisfy, hold harmless, and forever discharge the Institutional Parties, and all of their heirs, executors, representatives, successors, assigns, employees, agents, attorneys, officers, directors, shareholders, subsidiaries, parents and affiliates, from any and all damages, judgments, claims, losses, allegations, inducements, representations, concealments, debts, promises, obligations, actions, causes of action, claims, suits, debts, accounts, contracts, controversies, attorneys' fees, costs, expenses, agreements, promises, demands, and proceedings of any type or kind whatsoever, whether in law or in equity, whether known or unknown, whether accrued or unaccrued, liquidated or unliquidated, contingent or matured, that the Debtor Parties ever had, now have, or hereafter can, shall or may have arising out of, or relating to, the Subject Actions or for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world, to the date of Bankruptcy Court approval of this Agreement. Without limiting the foregoing in any way or manner, this release shall expressly encompass and forever discharge all claims that were asserted or could have been asserted, whether compulsory or permissive, by any of the Debtor Parties against Institutional Parties, in the Subject Actions or for any matters the Debtor Parties can, shall or may have against the other related to or arising from the subject matter involved in the Subject Actions. It being the expressed intention of the Debtor Parties that this release shall be construed as broadly as possible in favor of a release of any and all claims against Institutional Parties, for all matters, causes and things occurring before the date hereof.

17. <u>Institutional Parties' Release</u>. Effective upon entry of a final order of the Bankruptcy Court approving this Agreement and the Debtor Parties complying with terms and conditions of this Agreement the Institutional Parties hereby do fully remise, release, acquit, waive, satisfy, hold harmless, and forever discharge Reardon individually and in his representative capacity with respect to Debtor, and Q.I.S. Management, LLC, T.R., LLC and all of their heirs, executors, representatives, successors, assigns, employees, agents, attorneys, officers, directors, shareholders, subsidiaries, parents, affiliates, members, other that any claims against Debtor, from any and all damages, judgments, claims, losses, allegations, inducements,

representations, concealments, debts, promises, obligations, actions, causes of action, claims, suits, debts, accounts, contracts, controversies, attorneys' fees, costs, expenses, agreements, promises, demands, and proceedings of any type or kind whatsoever, whether in law or in equity, whether known or unknown, whether accrued or unaccrued, liquidated or unliquidated, contingent or matured, that the Institutional Parties ever had, now have, or hereafter can, shall or may have arising out of, or relating to, the Subject Actions or for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world, to the date of Bankruptcy Court approval of this Agreement. Without limiting the foregoing in any way or manner, this release shall expressly encompass and forever discharge all claims that were asserted or could have been asserted, whether compulsory or permissive, by any of the Debtor Parties against Institutional Parties in the Subject Actions or for any matters the Debtor Parties can, shall or may have against the other related to or arising from the subject matter involved in the Subject Actions. It being the expressed intention of the Debtor Parties that this release shall be construed as broadly as possible in favor of a release of any and all claims against Institutional Parties for all matters, causes and things occurring before the date hereof.

18.  **Necessary Additional Documents**. The Parties agree to cooperate in executing any additional documents necessary to effectuate the terms of this Agreement, including, without limitation, dismissal of all pending claims between the Parties *with prejudice*, with each party bearing its own attorneys' fees and costs.

19.  **Chapter 11 Plan**. In any Chapter 11 Plan for which Debtor seeks confirmation, Debtor shall incorporate the terms of this Agreement and related documents.

20.  **Bankruptcy Court Approval and Effect of Agreement**. This Agreement, and the release contained herein, shall not be effective until the Bankruptcy Court approves this Agreement in its entirety. Upon the Bankruptcy Court final order of approval, this Agreement, including the releases contained herein pertaining to the Released Claims, is effective and binding on the Parties hereto, Debtor's estate, its creditors, equity security holders, interested parties, parties in interest, noticed parties, meaning any party that has requested and/or received notice in the Lawsuits, estate fiduciaries, including, without limitation, any Chapter 7 and/or 11 trustees, present and former affiliates, parents, subsidiaries, predecessors in interest, successors in interest and all respective officers, directors, managers, members, agents, employees, attorneys, advisors, heirs and assignees. Should the Bankruptcy Court not approve the terms of this Agreement, the Agreement is null and void and shall have no force or effect and shall not be enforceable by or against the Parties hereto and the Parties shall be restored to their prior position without any prejudice.

21.  **Bankruptcy Court Retention of Jurisdiction**. The Parties shall request that the Bankruptcy Court retain jurisdiction to interpret and enforce all the terms of this Agreement. The Parties shall consent to the jurisdiction of the Bankruptcy Court in any action, including an adversary proceeding or other proceeding, brought to enforce the terms of this Agreement. Such

retention of jurisdiction shall be requested to be memorialized in the Order approving this Agreement, any Order confirming a Chapter 11 Plan and any Order dismissing the WB Case.

22. <u>Authority to Enter Into Agreement</u>. The Parties represent that they have the authority to enter into, execute and perform this Agreement and to compromise the claims or potential claims referred to herein.

23. <u>Acknowledgement of Terms</u>. The Parties represent that they have been represented by legal counsel and: (i) they have completely read and fully understand this Agreement and have voluntarily accepted the terms contained herein for the purposes of making a full and final compromise, adjustment and settlement; and (ii) they have determined that this settlement is fair and reasonable under all the circumstances and that this determination is based solely upon their independent judgment after an opportunity to consult with counsel of their choice and, that in making this determination, they have had an adequate opportunity to discuss and assess the merits of all claims or potential claims. This Agreement is a settlement and compromise of disputed claims and defenses and neither Party admits the validity of any such claims or defenses by entering into this Agreement.

24. <u>Savings Clause</u>. To the extent that any provision of this Agreement is deemed by a court of competent jurisdiction to be unenforceable, void or voidable, this Agreement is modified to the minimum extent necessary to exclude or strike herefrom only that discrete portion hereof that is deemed by such court to be unenforceable, void or voidable and the remainder of this Agreement shall continue to remain in full force and effect and be valid and binding on the Parties.

25. <u>Counterparts and Copies</u>. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. A facsimile, .pdf or electronic copy of this Agreement and any signature hereon shall be considered for all purposes as originals and delivery of an executed counterpart.

26. <u>Merger Clause</u>. This Agreement constitutes the entire agreement of the Parties. All prior oral and written agreements for all Parties are only those that are set forth herein and none of the Parties is relying on any promise or representation not set forth in this Agreement. This Agreement can be amended only in writing, signed by all Parties, and none of the terms, conditions or provisions of the Agreement can waived, changed, altered or modified except by an instrument in writing signed by all the Parties against whom enforcement of such change is sought.

27. <u>Attorneys' Fees</u>. In any enforcement action relating to this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party its reasonable costs, reasonable expenses and reasonable attorneys' fees, including pre-suit investigation and execution costs, both at the trial and appellate levels.

28. <u>Choice of Law and Jurisdiction</u>. The Parties agree that the Agreement is governed by Florida law and federal law relating to the Bankruptcy Code and consent to and agree to the Bankruptcy Court for the Southern District of Florida retaining and having exclusive jurisdiction to interpret and enforce the terms of this Agreement and the judgments to be issued or entered hereunder.

29. <u>Opportunity to Review</u>. Each of the Parties acknowledge that he, she or it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of their own choosing, or has voluntarily waived such right and enters into this Agreement voluntarily and without duress.

30. <u>Joint Drafting</u>. This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Agreement, no provisions shall be construed and interpreted for or against any of the Parties because such provisions or any other provision of the Agreement as a whole is purportedly prepared or requested by such Party.

31. <u>Parties Cooperation</u>. The Parties agree to cooperate to effectuate the terms of this Agreement, including Bankruptcy Court Approval, the Bankruptcy Code § 363 sale and dismissal of the WB Case.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

32. <u>Captions</u>. Captions in this agreement are included for identification and shall not be used to interpret the Agreement.

33. <u>Confidentiality</u>. The Parties agree to keep the terms of the Agreement confidential except as required to obtain Bankruptcy Court approval.

| W.B. CARE CENTER, LLC<br><br>By: _____<br><br>Its: _____Manager_____<br><br>Date: ____11/12/09____ | INSTITUTIONAL LEASING 1, LLC<br><br>By: _____<br><br>Its: _____Manager_____<br><br>Date: ____11/12/09____ |
|---|---|
| TIMOTHY REARDON<br><br>_____<br><br>Date: ____11/12/09____ | ABRAHAM SHAULSON<br><br>_____<br><br>Date: ____11/12/09____ |
| QIS MANAGEMENT, LLC<br><br>By: _____<br><br>Its: _____Manager_____<br><br>Date: ____11/12/09____ | MILLENNIUM MANAGEMENT, LLC<br><br>By: _____<br><br>Its: _____Manager_____<br><br>Date: ____11/12/09____ |
| T.R., LLC<br><br>By: _____<br><br>Its: _____Manager_____<br><br>Date: ____11/12/09____ | WEST BROWARD GROUP, LLC<br><br>By: _____<br><br>Its: _____Manager_____<br><br>Date: ____11/12/09____ |
|  | ELI STROHLI<br><br>_____<br><br>Date: ____11/12/09____ |