

**ORDERED in the Southern District of Florida on January 08, 2010.**

*John K. Olson, Judge*
*United States Bankruptcy Court*

___

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In Re: | Chapter 11 |
| W.B. CARE CENTER LLC | Case No.: 09-26196-BKC-JKO |
| d/b/a WEST BROWARD CARE CENTER | |
| **Debtor.**          / | |

**STIPULATION AND INTERIM ORDER (I) AUTHORIZING**
**(A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS**
**PURSUANT TO 11 U.S.C. § 364, AND (B) GRANT OF ADEQUATE PROTECTION**
**PURSUANT TO 11 U.S.C. §§ 363 AND 364 AND (II) SCHEDULING A FINAL**
<u>**HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)**</u>

**THIS MATTER** came before the Court on Monday, January 4, 2010 at 9:30 am (the "<u>Hearing</u>") upon *Debtor's Emergency Motion for Interim and Final Orders Authorizing Debtor to Incur Post Petition Secured Indebtedness and Granting Security Interests and Priority Claims as Adequate Protection* [D.E. # 237] (the "<u>Motion</u>"). Upon the Court's consideration of

the Motion,[1] the evidence proffered and argument presented at the Hearing, finding that the relief sought in the Motion is reasonable and necessary to avoid irreparable harm under the circumstances, and finding good cause therefor, the Court **FINDS** and **ORDERS** as follows:

**FINDINGS OF FACT AND STIPULATIONS OF THE PARTIES:**

A.       On August 5, 2009, the Debtor commenced this case (the "Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").  The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to the authority of sections 1107(a) and 1108 of the Bankruptcy Code.  On October 30, 2009, this Court ordered the appointment of an examiner (the "Examiner Order"). [D.E. # 143].  On November 2, 2009, and pursuant to the Examiner Order, the Office of the United States Trustee appointed Soneet Kapila as Chapter 11 examiner (the "Examiner"). [D.E. # 145].

B.       Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this matter and the parties and property affected hereby under 28 U.S.C. §§ 157(b)(1) and 1334(b).

C.       Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) all creditors on the Debtor's mailing Matrix, (iii) present employees of the Debtor; (iv) past employees of the Debtor as of August 5, 2009; and (iv) known holders of pre-petition liens against the Debtors' assets.  This Preliminary Hearing was held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).  Notice given in the manner described in this paragraph C is adequate in the circumstances for a preliminary hearing pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure.

---

[1] All capitalized terms shall have the meaning set forth in the Motion unless otherwise noted herein.

D.  Except as noted, at the Hearing Debtor proffered evidence with no objection from any party to support the following:

a.  Prior to the commencement of the Case, the Debtor entered into a "Pledge and Security Agreement" (the "Pledge") with Institutional Leasing 1, LLC ("IL1") which included a Security Agreement and a Promissory Note, all dated June 30, 2008 and executed between IL1 and the Debtor. The Promissory Note (the "Note") obligates the Debtor to pay IL1 the principal sum of $2,500,000.00 due on the fifth anniversary of the date of execution, June 30, 2013 (the "Maturity Date"). The Note carries an interest rate that is variable and defined as the Wall Street Journal's "Prime Rate" plus six percent (+6%), but in no event to be less than 10.5% per annum (the "Floor Rate"). The Security Agreement executed between the Debtor and IL1 grants IL1 a "first, prior, and continuing security interest in" all of the Collateral described on "Exhibit A" attached to the Security Agreement (when referred to together with the Note, the "Prepetition Indebtedness"). The Collateral includes all of the Debtor's property and assets "whether now or hereafter existing, tangible and intangible, of every kind and description, now owned or hereafter acquired" including accounts, notes, claims, choses in action, money, contract rights, demands, deposit accounts, goodwill, tax refunds, machinery and equipment, furniture, fixtures, and inventory, all accounts receivable "attributable or derived from the operation of the Facility," all patient records of the Facility, and the proceeds, products and accessions of the foregoing, and all intellectual property whether patents, trademarks, or copyrights (the "Prepetition Collateral"). The Security Agreement shares cross-default provisions with the Note and the Debtor's lease of its real property with IL1. IL1 recorded UCC-1 Financing Statements with the Florida State Business Registry on February 17, 2009 bearing the Instrument Number 20090042964 and March 4, 2009 bearing the Instrument

3

Number 200900119002.  Through a series of interim cash collateral orders [D.E. #s 148, 150 & 157], the Debtor has acknowledged that the cash generated from its operations is the 'Cash Collateral' of IL1, as defined in 11 U.S.C. §363.

      b.     Pursuant to an Order directing the Examiner to facilitate a settlement conference between the Debtor, Timothy Reardon, IL1 and certain other parties related to, or affiliated with IL1 [D.E. # 164], said parties conducted a mediation at the office of the Examiner at 3:00 p.m. Wednesday, November 11, 2009 which resulted in a settlement agreement.  That settlement came before the Court for preliminary approval at 9:30 a.m. on November 12, 2009, and was approved on a preliminary basis by the Court by the entry of the Order Preliminarily Approving Settlement Agreement and Setting Further Hearing. [D.E. # 178].

      c.     The Debtor has filed a motion for approval of an Amended Settlement Agreement between itself and IL1 pursuant to F.R.B.P. 9019 (the "<u>Amended Settlement Agreement</u>"). [D.E. # 170].  One of the key terms of the Amended Settlement Agreement is a proposed revolving line of credit (the "<u>DIP Facility</u>") to be provided by DIP Capital Lending, LLC (the "<u>Lender</u>").

      d.     In order for Debtor to continue to operate its business, care for patients and preserve its goodwill and value, it is necessary for Debtor to obtain postpetition financing to pay normal operating expenses (including, without limitation, wages, salaries, insurance premiums, utilities, rent, and taxes) and to purchase inventory and supplies.

      e.     As a result of its financial condition, Debtor has been unable to obtain alternative sources of cash or credit either in the form of unsecured credit allowable as an administrative expense under Code § 503(b)(1), unsecured credit allowable under Code § 364(a) and (b), or secured credit under Code § 364(c) or (d), in each case on terms and conditions more

favorable to Debtor's estate created by the filing of its Petition ("Estate") than those proposed by Lender under this Order. If Debtor's financing were to be discontinued abruptly, its operations would be severely disrupted, thus placing it patients in grave danger. Additionally, any operational interruption of the Debtor would severely impair the value of its assets to be realized at a sale under 11 U.S.C. § 363. Accordingly, the Debtor and its Estate will suffer immediate and irreparable harm unless Debtor is authorized immediately to obtain credit on the terms and conditions set forth herein.

E.  Based upon the proffers made at the hearing, a review of the record and Debtor and Lender's stipulations, the Court finds: (i) that Lender acted in good faith in connection with the DIP Facility contemplated in the Motion; (ii) the DIP Facility was negotiated in good faith, at arm's length; (iii) the terms of the DIP Facility are reasonable, including but not limited to the collateral and interest rate; (iv) any credit extended and loans made to the Debtor pursuant to this Order and the DIP Loan Document shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e) IL1 consents to the priming lien granting to Lender in connection with the DIP Facility.

F.  Based upon the record and the terms of this Order, including, without limitation, the terms of the Post-Petition Financing, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

G.  Good cause has been shown for the entry of this Order. Among other things, entry of this Order will allow for the possibility of Debtor continuing to generate revenue and will

avoid immediate and irreparable harm to, and is in the best interests of, Debtor, its patients, its creditors, and its Estate.

Based on the proffer of the Debtor made in open Court at the Hearing, the Court so finds the above findings of fact for the purpose of this Order.

**IT IS THEREFORE, ORDERED:**

1. The Motion is granted on an **INTERIM BASIS** under the terms of this Order.

2. Debtor is authorized to and may obtain postpetition financing from Lender, and may give security, under the terms and conditions contained in this Order and the Credit Facility Agreement attached to the Motion as Exhibit "A", which are expressly incorporated by reference herein.

3. The postpetition financing will be governed by the Credit Facility Agreement attached to the Motion as Exhibit "A," and other documents ancillary to the Credit Facility Agreement (which shall include, but shall not be limited to, the following documents: Note, Guaranties, Security Agreements, and Financing Statements, in a form acceptable to Lender).

4. The Debtor may only use funds from the DIP Facility (the "DIP Funds") in accordance with the budget (the "Budget") attached to the Motion as Exhibit "C." The Debtor, however, may request changes to the Budget, which if approved by Lender in writing, shall become the "Budget," once filed with the Court.

5. The Postpetition Indebtedness shall be secured by a security interest in and superpriority lien, which pursuant to § 364(d)(1) of the Bankruptcy Code shall prime any and all other liens, including without limitation IL1's prepetition lien, on any and all current and future assets of the Debtor of any nature or type whatsoever including, without limitation, accounts receivable, inventory, customer lists, intellectual property, minerals, mineral rights, plant and

equipment patents, trade secrets, property and/or leasehold rights, all other tangible and intangible assets, and any causes of action and commercial tort claims under the Bankruptcy Code or applicable non-bankruptcy law, including causes of action and recoveries pursuant to 11 U.S.C. §549 of the Bankruptcy Code. (collectively the "Postpetition Collateral"). Notwithstanding the requirements of non-bankruptcy law, the liens securing the Postpetition Indebtedness are deemed perfected.

6. Additionally, the Postpetition Indebtedness shall have priority under 11 U.S.C. § 364(c)(1) over all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) or 507(b).

7. As adequate protection to Lender, the Debtor shall: (A) fully comply with all Financial Reporting Requirements as required by the Cash Collateral Orders entered in the Bankruptcy Case and provide Lender with such reports; and (B) make monthly payments of interest in accordance with the terms of the Credit Facility Agreement.

8. The security interests and liens granted to Lender under this Order shall be evidenced by the entry of this Order and shall be deemed to be first, valid, and perfected as against all third parties upon entry of this Order, without regard to applicable federal, state, or local filing and recording statutes, as of the Petition Date; provided, however, that Lender may take such steps in its own discretion as necessary to perfect said liens under non-bankruptcy law and Debtor shall comply with reasonable requests to sign such documents and the automatic stay invoked by 11 U.S.C. § 362 shall be modified to the extent necessary to permit Lender to perfect under applicable non-bankruptcy law the granted by this Order or any subsequent order pertaining to the DIP Facility.

9. The provisions of this Order, which shall be immediately effective upon entry, and any actions taken under this Order, shall survive entry of, and shall govern with respect to, any conflict with any order which may be entered subsequently except to the extent such subsequent order clearly and unequivocally modifies the terms of this Order, and the terms and provisions of this Order, as well as the liens and security interests under the Prepetition loan Documents, this Order, and all rights of Lender and obligations of Debtor created or arising under this Order shall continue in this Case or any superseding cases under the Code, and such liens and security interest shall maintain their priority as provided by this Order until satisfied and discharged.

10. Notice of this Order shall be given by the Debtor within **24 hours** from its entry. **The Final Hearing on the Motion shall be held on Wednesday, February 10, 2010 at 10:00 a.m**. Notice of the Final Hearing shall be provided under separate cover by the Court. Objections to this Order must be filed and served upon Debtor's counsel and Lender's counsel within fifteen (15) days of its entry.

####

**Submitted by:**

Robert P. Charbonneau, Esq.
**EHRENSTEIN CHARBONNEAU CALDERIN**
*Attorneys for the Debtor-in-Possession*
501 Brickell Key Drive, Suite 300
Miami, Florida  33131
T. 305.722.2002   F. 305.722.2001

(Attorney Charbonneau is directed to serve a conformed copy of this Order to all creditors, parties in interest, and others entitled to service)