**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:
**W.B. CARE CENTER, LLC, d/b/a**          **Case No.: 09-26196-BKO-JKO**
**WEST BROWARD CARE CENTER and**
**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON**
    Debtor.                                        Chapter 7
_____/

**FORMER OWNER AND DEBTOR-IN-POSSESSION OF W.B.CARE CENTER, LLC,**
**TIMOTHY PATRICK REARDON'S**
**MOTION FOR PERMISSION, UNDER THE "BARTON DOCTRINE" TO ADD**
**FORMER SOLE REPRESENTATIVE OF W.B. CARE CENTER, LLC,**
**MARCUM LLP D/B/A MARCUMRACHLIN, AS A DEFENDANT IN**
**CASE NO: 12-20829-CIV-LENARD**
*TIMOTHY PATRICK REARDON VS. INSTITUTIONAL LEASING 1 LLC.,*
*MILLENNIUM MANAGEMENT LLC AND W.B. CARE CENTER LLC*
**IN THE UNITED STATES DISTRICT COURT – SOUTHERN DISTRICT OF FLORIDA**
**FOR RACKETEERING ACTIVITY UNDER 18 U.S.C. §§ 1961(1)(D):**
**"ANY OFFENSE INVOLVING FRAUD CONNECTED WITH A CASE UNDER TITLE 11"**

Former owner and Debtor-in-Possession of W.B. Care Center, LLC, Timothy Patrick

Reardon's ("Reardon") Motion for Permission, under the "Barton Doctrine" to add former

Sole Representative of W.B. Care Center, LLC, Marcum LLP d/b/a MarcumRachlin

("MarcumRachlin") as a Defendant in Case No. 12-20829-Civ-Lenard, *Timothy Patrick*

*Reardon vs. Institutional Leasing 1, LLC, Millennium Management LLC, and W.B. Care*

*Center LLC.* for Racketeering Activity under 18 U.S.C. §§ 1961(1)(D): "any offense

involving fraud connected with a case under Title 11".

### INTRODUCTION

On December 21, 2009, this Honorable Court entered Order (D.E. 230) which made

John Heller C.P.A., Senior Manager of Advisory Services for MarcumRachlin, the "sole

representative of W.B. Care Center, LLC for purposes of the day-to-day operation of the

facility". ("Heller Order") until a Chapter 7 Trustee was appointed September 16, 2010.

## RACKETEERING ACTIVITY UNDER 18 U.S.C. §§ 1961(1)(D): ANY OFFENSE INVOLVING FRAUD CONNECTED WITH A CASE UNDER TITLE 11

Reardon believes that he will be able to prove to this Honorable Court that

MarcumRachlin is guilty of fraud in the above case. Specifically:

> A false representation of a matter of fact-whether by words or
> by conduct, by false or misleading allegations, or by
> concealment of what should have been disclosed-that deceives
> and is intended to deceive another so that the individual will act
> upon it to her or his legal injury.

## REARDON HAS STANDING TO SUE FOR BANKRUPTCY FRAUD UNDER RICO

Shareholders of a bankrupt corporation may not bring RICO actions

predicated on bankruptcy fraud, since the legal injury brought about by the

bankruptcy fraud is to the bankrupt corporation and any decrease in the value of the

corporation.

An award derived from a RICO action is a corporate asset for which the

bankruptcy trustee can properly file suit to collect.

Shareholders cannot bring suit in their own names "without impairing the

rights of prior claimants.

The Second Circuit has held that a shareholder does not have standing,

even if he is the sole shareholder, unless there is an independent duty owed the

individual that is distinguishable from that owed the corporation. [1]

In Mason v. Stacescu, 11 F.3d 1127 (2d Cir. 1993) the United States Court of
Appeals, Second Circuit, stated shareholders lack standing as RICO Plaintiffs in
Bankruptcy but found that:

"...exception is limited to cases in which the shareholder sustains an injury
that is *separate and distinct from the injury sustained by the corporation.*"

---

[1] RICO: Civil and Criminal, Law and Strategy, by Jed S. Rakoff, Law Journal Press, Jan 1, 1989, page 2-29.

THE AMENDED SETTLEMENT AGREEMENT, SIGNED BY MARCUMRACHLIN, CONTAINS FRAUDULENT STATEMENTS THAT INJURE REARDON

A.   WHEREAS, because of **Reardon's misfeasance and malfeasance in his capacity as nursing home administrator** by, *inter alia*, failing to produce books and records and adequately account for the financial condition of the Debtor, **Institutional conditioned Debtor's continued use of Institutional's Cash Collateral**, as defined by Bankruptcy Code § 363, upon **the appointment of a Chapter 11 Examiner to investigate Debtor's financial condition**

B.   **Based upon Heller's attendance at the settlement** conference that resulted in the First Settlement Agreement, **Heller obtained certain knowledge** concerning Debtor's submissions to AHCA in connection with the change of ownership ("CHOW") application of W.B. Care Center, LLC.

     Based upon that knowledge, **Heller agrees and acknowledges** that, based upon his knowledge, **all written submission(s) by Debtor and/or Reardon** to AHCA during or in connection with the CHOW application of WB Care Center, LLC, **were sent by Debtor or its agents and were not the responsibility of Institutional, Millennium or Shaulson.**

C.   **Reardon's statements submitted to AHCA** by the letter dated November 9, 2009 as well as any other related submissions purporting to allege fraud, intentional wrongdoing or other acts or omissions on behalf of Institutional Leasing 1, LLC, Millennium Management, LLC, their Members, Managers, employees, agents accountants or attorneys in connection with the CHOW application of Debtor **were to the best of his knowledge without basis in fact**

D.   **Debtor agrees and acknowledges that the $2,500,000 Note**, executed and delivered by Debtor having an effective date of June 30, 2008 was **supported by adequate and reasonably equivalent value** and expressly waives any defenses or claims alleging lack of adequate consideration.

     **Debtor further agrees and stipulates** to the extent, validity, priority and amount of Institutional's **secured claim in the amount of $2,500,000**, plus interest, fees, costs, and other expenses, pre- and post-petition.

E.   Further, this release expressly does not release any party **other than the Debtor** including but not limited to the **Reardon Parties or any entity related to Reardon**

PLAINTIFF'S VERIFIED MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
AGAINST DEFENDANTS TIMOTHY REARDON, QIS MANAGEMENT, LLC AND R.R.
LLC VERIFIED COMPLAINT BY JOHN HELLER (OF MARCUM)  INJURES
REARDON.

> "...**Plaintiff also seeks the entry of a permanent injunction against
> Reardon – or any other party or entity through whom Reardon may act**,
> including but not limited to the Defendants, enjoining them from tortiously
> interfering with the administration of the Estate in general, and specifically,
> the sale and closing process pursuant to Bankruptcy Code § 363,
> **from communicating directly with AHCA or Medicare**.....

THIS HONORABLE COURT WAS UNAWARE OF THE FRAUD AT THE TIME OF:

1.    Approving the Amended Settlement Agreement
2.    Granting Plaintiff's Motion of Final Judgment against REARDON

THE RELEASE GIVEN TO MARCUMRACHLIN DOES NOT ABSOLVE THEM FROM
DAMAGES DONE TO REARDON SEPARATE AND DISTINCT FROM THE ESTATE

As this Honorable Court stated in the October 26, 2009 Order Granting in Part and

Denying in Part Debtor's Motion to Reject Order Approving Settlement Agreement as

Executory Contract [DE 51]: [2]

> A release gives rise to an affirmative defense under Fed. R.
> Bankr. P. 7008, applying Fed. R. Civ. P. 8©(1), and that
> defense is generally complete *absent fraud*, failure of
> consideration, and the like. (emphasis added)

## DAMAGES

REARDON was damaged in multiple ways, separate from the Estate, by the actions

of MarcumRachlin, including, but not limited to:

1.            The Amended Settlement Agreement claiming that Reardon was guilty

              of "misfeasance and malfeasance" as a Nursing Home Administrator

              and also of lying in his communication with AHCA (Medicaid) was

---

[2] In Re: W.B. Care Center, LLC d/b/a West Broward Care Center, Case No. 09-26196-BKC-JKO [DE 138]

mailed to CMS (Medicare), AHCA, and also every employee and vendor Reardon had associated with.

2.     The unfunded $2.5 million dollar note that MarcumRachlin claimed was supported by "adequate and reasonable consideration" was included on the 2009 Medicare and Medicaid cost reports, at a time when Reardon was still legally responsible for the Medicare and Medicaid license of W.B. Care Center.

3.     Reardon had planned a Qui Tam Whistleblower lawsuit to report the unfunded $2.5 million dollar fraudulent expense listed on the Medicare and Medicaid Cost Reports and was barred from meeting with a joint task force of the Department of Justice, Health and Human Services and the Internal Revenue Service due to the "Verified" MarcumRachlin Motion.

## CONCLUSION

Plaintiff respectfully requests this Honorable Court to grant Timothy Patrick Reardon ("Reardon), former owner and Debtor-in-Possession of W.B. Care Center, LLC, Motion for Permission, under the "Barton Doctrine" to add Marcum & Kliegman d/b/a MarcumRachlin ("MarcumRachlin"), former Court Authorized Representative of W.B. Care Center, LLC, as a Defendant in Case No. 12-20829-Civ-Lenard, Timothy Patrick Reardon vs. Institutional Leasing 1, LLC, et. al. for Racketeering Activity under 18 U.S.C. §§ 1961(1)(D), "any offense involving fraud connected with a case under Title 11.

Respectfully submitted,

Timothy Patrick Reardon
226 N.E. 1st Ave
Miami, FL 33132
305-302-0601

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on $\frac{8}{}$ / $\frac{8}{}$ , 2013, I filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served this day on all counsel of record or pro se parties identified below, either via transmission of Notices of Electronic Filing generated by CM/ECF and/or United States first class mail, via facsimile or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

Sent via U.S. Mail:

Ehrenstein Charbonneau Calderin
501 Brickell Key Drive
Suite 300
Miami Florida 33131

MarcumRachlin
Attn: John Heller
450 East Las Olas Blvd
9th Floor
Fort Lauderdale, FL 33301

Marcum LLP
Attn: Registered Agent
10 Melville Park Rd
Melville, New York, 11747

# EXHIBIT # 1

## AMENDED SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is made by and among (1) Debtor and Debtor-in-Possession, W.B. Care Center, LLC. ("**Debtor**" or "Debtor in Possession"), and (2) Institutional Leasing, 1, LLC ("**Institutional**"), Millennium Management, LLC ("**Millennium**"), Abraham Shaulson ("**Shaulson**"), West Broward Group, LLC ("**WBG**") and Eli Strohli ("**Strohli**") (collectively "**Institutional Parties**") and all individually referred to as "**Party**" or collectively referred to as the "**Parties**."

WHEREAS, on July 24, 2009, Institutional filed an eviction action against Debtor seeking, *inter alia,* unpaid rents in state court initiating the case styled *Institutional Leasing 1, LLC v. W.B. Care Center, LLC, et al.* Case No. 09-4108714 ("**Institutional State Court Action**"). In the Institutional State Court Action, Institutional also filed claims against Timothy Reardon ("**Reardon**"), Debtor's principal and nursing home administrator, on a personal guaranty of a promissory note between Debtor and Institutional, and later amended such claims to include claims for defamation.

WHEREAS, on August 5, 2009, Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**") initiating the bankruptcy case styled *In re W.B. Care Center, LLC*, Case No. 09-26196 ("**WB Case**") in the Bankruptcy Court for the Southern District of Florida, Judge John K. Olson presiding ("**Bankruptcy Court**").

WHEREAS, on August 5, 2009, Debtor filed an adversary proceeding styled *W.B. Care Center, LLC v. Institutional Leasing 1, LLC, et al.* Adv. Pro. No. 09-01868 ("**Preference Adversary**") asserting preference claims under Bankruptcy Code § 547 against Institutional and Millennium.

WHEREAS, on August 5, 2009, Debtor filed an adversary proceeding styled *W.B. Care Center, LLC v. Institutional Leasing 1, LLC, et al.* Adv. Pro. No. 09-01865 ("**Fraud Adversary**") asserting, *inter alia*, fraud claims against the Institutional Parties.

WHEREAS, because of Reardon's misfeasance and malfeasance in his capacity as nursing home administrator by, *inter alia*, failing to produce books and records and adequately account for the financial condition of the Debtor, Institutional conditioned Debtor's continued use of Institutional's Cash Collateral, as defined by Bankruptcy Code § 363, upon the appointment of a Chapter 11 Examiner to investigate Debtor's financial condition.

WHEREAS, based on the record before it, the Bankruptcy Court in the WB Case appointed Soneet Kapila as Chapter 11 Examiner ("**Examiner Kapila**") (D.E. 145 and 156). Subsequently, the Bankruptcy Court entered an Order directing Examiner Kapila to facilitate a settlement conference between the Debtor Parties and the Institutional Parties (D.E. 164).

WHEREAS, Debtor, the Institutional Parties, Reardon, and their respective counsel conducted a settlement conference at Examiner Kaplia's office on November 11, 2009. Debtor, the Institutional Parties and Reardon and certain Reardon entities QIS Management, LLC ("**QIS**"), T.R., LLC ("**TR**") (collectively with Reardon the "**Reardon Parties**") reached a global settlement of all claims, which was memorialized in a settlement agreement ("**First Settlement Agreement**").

WHEREAS, on November 12, 2009, Debtor, the Institutional Parties and the Reardon Parties presented the First Settlement Agreement to the Bankruptcy Court for preliminary approval at a hearing previously scheduled on other matters in the WB Case. The Bankruptcy Court preliminarily approved the First Settlement at the November 12, 2009 hearing.

WHEREAS, pursuant to the First Settlement Agreement, Reardon and any other person acting in the capacity of nursing home administrator resigned effective upon the Bankruptcy Court's preliminary approval of First Settlement Agreement at the hearing on November 12, 2009 at 9:30 AM and was not return to Debtor's facility, other than to recover personal items under the supervision of Examiner Kapila. Any and all of Reardon's decision making authority and signatory authority with respect to the Debtor-in-Possession bank accounts terminated immediately upon his resignation. Accordingly, effective on November 12, 2009 at 9:30 AM, Reardon no longer possessed any authority to act for or on behalf of Debtor and had no authority to take any actions with respect to the Debtor-in-Possession bank accounts.

WHEREAS, pursuant to the First Settlement Agreement, Zev Shemesh ("**Shemesh**") was appointed as the Licensed Nursing Home Administrator of Debtor's nursing home facility. Shemesh was to operate and manage Debtor, have co-signatory authority with Examiner Kapila, (on an interim basis, pending final approval of this Settlement Agreement by this Court) on the Debtor-in-Possession bank accounts and act and sign on behalf of Debtor in connection with any administrative or regulatory authority.

WHEREAS, on November 13, 2009, the Bankruptcy Court entered an Order Preliminary Approving Settlement Agreement and Setting Further Hearing on November 19, 2009 on the First Settlement Agreement memorializing its ruling made on the record at the November 12, 2009 hearing (D.E 178) ("**Preliminary Approval Order**").

WHEREAS, on November 13, 2009, Debtor filed a motion pursuant to Fed. R. Bankr. P. 9019 seeking approval of the First Settlement Agreement (D.E. 170) and a motion to shorten notice (D.E. 171) ("**First 9019 Motion**"). The First 9019 Motion was set for hearing on November 19, 2009.

WHEREAS, at the November 19, 2009 hearing on the First 9019 Motion, Debtor, the Institutional Parties and the Reardon Parties represented to the Bankruptcy Court that there were

ancillary issues pertaining to the First Settlement Agreement that needed to be resolved prior to final court approval. Also, Debtor submitted to the Bankruptcy Court that it was going to provide notice to additional interested parties of the First 9019 Motion and any additional ancillary terms or documents added to the First Settlement Agreement. Accordingly, the Bankruptcy Court continued the hearing on the First 9019 Motion and First Settlement Agreement to December 14, 2009 (D.E. 187). The hearing on the First 9019 Motion and First Settlement Agreement was continued to December 17, 2009 (D.E. 190).

WHEREAS, on December 4, 2009, Debtor filed a motion to expand the scope of employment of Debtor's accountants Alan R. Barbee, CPA ("**Barbee**") and John L. Heller ("**Heller**") of MarcumRachlin, a Division of Marchum LLP (D.E. 194) ("**Accountant Motion**"). In the Account Motion, Debtor sought, *inter alia*, to remove Examiner Kaplia as signatory on Debtor's financial accounts and place Heller as a co-signatory on Debtor's financial accounts along with Shemesh. The Accountant Motion was set for hearing on December 14, 2009 (D.E. 199).

WHEREAS, on December 4, 2009, Debtor filed a motion to modify the scope of Examiner Kapila's responsibility (D.E. 195) ("**Examiner Motion**"). In the Examiner Motion, Debtor sought to modify the scope of Examiner Kapila's powers to include: (i) supervision over the negotiation of any post-petition credit obtained by Debtor; (ii) supervision and management over all aspects of a sale of Debtor's assets; (iii) oversight and supervision of Heller's and Shemesh's day to day management of Debtor's operations. The Examiner Motion was set for hearing on December 14, 2009 (D.E. 195).

WHEREAS, at the December 14, 2009 Hearing on the Accountant Motion, the Examiner Motion and other matters, it was represented to the Bankruptcy Court that Reardon had attempted to remove approximately $50,000 from one of the Debtor-in-Possession bank accounts on or about December 11, 2009, without authorization and after his resignation, despite the fact any and all authority possessed by Reardon to take actions pertaining to the Debtor-in-Possession Bank Accounts terminated immediately upon his resignation on November 12, 2009 at 9:30 AM. Reardon's actions clearly breached the terms of the First Settlement Agreement, the Preliminary Approval Order, provisions of the Bankruptcy Code and other federal laws.

WHEREAS based on Reardon's breach of the Settlement Agreement the Court *ore tenus* ordered the further modification of the Examiner's and Heller's responsibilities to reflect that: (i) the Examiner be removed as a signatory on the Debtor's financial accounts, and Heller added as the sole signatory for the Debtor regarding any and all of the Debtor's financial accounts, but as co-signatory on the Debtor's accounts along with Mr. Zev Shemesh (the "Administrator"); (ii) Heller act as the sole representative of the Debtor for purposes of the day-to-day operation of the Debtor's facility.

3 of 10

WHEREAS, on December _, 2009, the Bankruptcy Court entered an Order granting the Heller Motion (D.E. _) ("**Heller Order**"). By virtue of the Heller Order, Heller is Debtor's sole representative, and he possesses the authority to execute documents and bind Debtor, including without limitation this Agreement.

WHEREAS, the Institutional Parties and Debtor no longer wish to proceed with approval of the First Settlement Agreement because Reardon removed Debtor's funds without authorization and, thus, breached the First Settlement Agreement and because he is guilty of misfeasance and malfeasance.

WHEREAS, despite Reardon's breach of the First Settlement Agreement and continued malfeasance in his capacity as nursing home administrator, the Parties mutually desire to resolve the claims asserted or that could be asserted against each other in the Institutional State Court Action, the WB Case, the Preference Adversary, the Fraud Adversary and any other matters of dispute between the Parties ("**Subject Actions**").

NOW THEREFORE, in consideration of the foregoing and the mutual promises, undertakings and agreements contained herein, subject to Bankruptcy Court approval, the Parties agree as follows:

1.      Incorporation of Recitals. The foregoing recitals are true and correct and incorporated herein by reference.

2.      Denial of Liability. The Parties agree that this Agreement is a compromise and settlement of disputed claims, and none of the Parties admit, and each expressly denies, any liability on its part, except as may expressly be set forth herein.

3.      Settlement Payment. Institutional shall place $10,000 in escrow with the Examiner to be paid to Debtor as follows: (i) $5,000 upon an order of the bankruptcy court approving the Bankruptcy Code § 363 sale contemplated herein, which is not subject to appeal or rehearing ("**Final Order**") or, if timely appealed, is not subject to a stay pursuant to Fed. R. Bank. P. 8005, and (ii) $5,000 upon effectuation of the Nursing Home License transfer.

4.      DIP Facility. Institutional shall provide, or arrange for the provision of, a Debtor in Possession Financing Facility ("**DIP Facility**") in the maximum amount of $250,000 to insure post-petition obligations after November 12, 2009 are paid in a timely fashion. Institutional, or the Lender funding the DIP Facility, shall be provided with all of the traditional protections afforded to DIP Lenders. The DIP Facility shall be used to fund (i) professional fees of Debtor reasonably incurred to date, and incurred prospectively in effectuating a Bankruptcy Code § 363 sale, and approved by the Bankruptcy Court; (ii) United States Trustee Fees; and (iii) all timely filed, valid and allowable administrative expenses incurred by the Debtor from the Petition Date through and including the dismissal of the WB Case.

4 of 10

5.   11 U.S.C. § 363 Sale. Examiner Kapila is directed to conduct a Bankruptcy Code § 363 sale of Debtor's business no later than forty-five (45) days from the date of the entry of an order approving bid procedures and the sale of the Debtor's business. Institutional shall be permitted, but not required to, credit bid under Bankruptcy Code § 363 (k) the amount of the DIP facility provided for herein and the $2.5MM secured claim, which the Parties stipulate is not subject to dispute as to amount, extent, validity or priority. Examiner Kapila shall have the authority to transfer title to the property and any License(s) in connection with the Bankruptcy Code § 363 sale contemplated herein. Examiner Kapila shall have authority to execute any documents necessary to transfer title to the property and any applicable License(s).

6.   Dismissal of the Subject Actions. The Parties shall effectuate dismissals with prejudice of the claims against each other in the following actions:

       a. Fraud Adversary;

       b. Preference Adversary; and

       c. Institutional State Court Litigation solely against the Debtor.

However, the Parties are not required to dismiss any claims brought against the Reardon Parties or that can be brought against the Reardon Parties, including those specifically pending in the Institutional State Court Action.

8.   Heller Acknowledgment Regarding Reardon Allegations. Based upon Heller's attendance at the settlement conference that resulted in the First Settlement Agreement, Heller obtained certain knowledge concerning Debtor's submissions to AHCA in connection with the change of ownership ("CHOW") application of WB Care Center , LLC. Based upon that knowledge, Heller agrees and acknowledges that, based upon his knowledge, all written submission(s) by Debtor and/or Reardon to AHCA during or in connection with the CHOW application of WB Care Center, LLC, were sent by Debtor or its agents and were not the responsibility of Institutional, Millennium or Shaulson. Heller acknowledges and agrees that Reardon's statements submitted to AHCA by the letter dated November 9, 2009 as well as any other related submissions purporting to allege fraud, intentional wrongdoing or other acts or omissions on behalf of Institutional Leasing 1, LLC, Millennium Management, LLC, their Members, Managers, employees, agents accountants or attorneys in connection with the CHOW application of Debtor were to the best of his knowledge without basis in fact.

9.   $2,500,000 Note and Secured Claim. Debtor agrees and acknowledges that the $2,500,000 Note, executed and delivered by Debtor having an effective date of June 30, 2008 was supported by adequate and reasonably equivalent value and expressly waives any defenses or claims alleging lack of adequate consideration. Debtor further agrees and stipulates to the

extent, validity, priority and amount of Institutional's secured claim in the amount of $2,500,000, plus, interest, fees, costs, and other related expenses, pre- and post-petition.

10. <u>Dismissal or Conversion of WB Case</u>. Upon entry of a Final Order approving the Bankruptcy Code § 363 sale contemplated herein to Institutional or the highest bidder, Debtor, with the support of the Examiner shall seek to convert to a Chapter 7 or dismiss the WB Case with prejudice for 180 days.

11. <u>No Disparagement</u>. Each Party agrees to not disparage the other verbally or in writing.

12. <u>Debtor's Release</u>. Effective upon entry of a final order of the Bankruptcy Court approving this Agreement and the Institutional Parties complying with terms and conditions of this Agreement, including without limitation, Debtor hereby does fully remise, release, acquit, waive, satisfy, hold harmless, and forever discharge the Institutional Parties, and all of their heirs, executors, representatives, successors, assigns, employees, agents, attorneys, officers, directors, shareholders, subsidiaries, parents and affiliates, from any and all damages, judgments, claims, losses, allegations, inducements, representations, concealments, debts, promises, obligations, actions, causes of action, claims, suits, debts, accounts, contracts, controversies, attorneys' fees, costs, expenses, agreements, promises, demands, and proceedings of any type or kind whatsoever, whether in law or in equity, whether known or unknown, whether accrued or unaccrued, liquidated or unliquidated, contingent or matured, that Debtor ever had, now has, or hereafter can, shall or may have, including without limitation, those claims arising out of, or relating to, the Subject Actions, or for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world, to the date of Bankruptcy Court approval of this Agreement. Without limiting the foregoing in any way or manner, this release shall expressly encompass and forever discharge all claims that were asserted or could have been asserted, whether compulsory or permissive, by Debtor against the Institutional Parties in the Subject Actions or for any matters Debtor can, shall or may have against the other related to or arising from the subject matter involved in the Subject Actions. It being the expressed intention of Debtor that this release shall be construed as broadly as possible in favor of a release of any and all claims against Institutional Parties, for all matters, causes and things occurring before the date of Bankruptcy Court approval of this Agreement.

13. <u>Institutional Parties' Release</u>. Effective upon entry of a final order of the Bankruptcy Court approving this Agreement and Debtor complying with terms and conditions of this Agreement the Institutional Parties hereby do fully remise, release, acquit, waive, satisfy, hold harmless, and forever discharge Debtor and all of its heirs, executors, representatives, successors, assigns, employees, agents, attorneys, officers, directors, shareholders, subsidiaries,

6 of 10

parents, affiliates, members, other that any claims against Debtor, from any and all damages, judgments, claims, losses, allegations, inducements, representations, concealments, debts, promises, obligations, actions, causes of action, claims, suits, debts, accounts, contracts, controversies, attorneys' fees, costs, expenses, agreements, promises, demands, and proceedings of any type or kind whatsoever, whether in law or in equity, whether known or unknown, whether accrued or unaccrued, liquidated or unliquidated, contingent or matured, that the Institutional Parties ever had, now have, or hereafter can, shall or may have arising out of, or relating to, the Subject Actions or for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world, to the date of Bankruptcy Court approval of this Agreement. Without limiting the foregoing in any way or manner, this release shall expressly encompass and forever discharge all claims that were asserted or could have been asserted, whether compulsory or permissive, by any of the Institutional Parties against Debtor in the Subject Actions or for any matters the Institutional Parties can, shall or may have against the other related to or arising from the subject matter involved in the Subject Actions. It being the expressed intention of Institutional Parties that this release shall be construed as broadly as possible in favor of a release of any and all claims against Debtor for all matters, causes and things occurring before the date hereof. *However, this release does not release any and all claims the Institutional Parties have or may file in the WB Case, or any and all post-petition claims the Institutional Parties may have in the WB Case, including without limitation, any and all claims arising out of Debtor's use of Cash Collateral, any administrative expense claims, and claims relating to Institutional's funding of the DIP Facility. Further, this release expressly does not release any party other than the Debtor including by not limited to the Reardon Parties, or any entity related to Reardon.*

14. Necessary Additional Documents. The Parties agree to cooperate in executing any additional documents necessary to effectuate the terms of this Agreement, including, without limitation, dismissal of all pending claims *with prejudice*, with each party bearing its own attorneys' fees and costs, expressly excluding any and all claims against the Reardon Parties.

15. Chapter 11 Plan. In any Chapter 11 Plan for which Debtor seeks confirmation, Debtor shall incorporate the terms of this Agreement and related documents.

16. Bankruptcy Court Approval and Effect of Agreement. This Agreement, and the release contained herein, shall not be effective until the Bankruptcy Court approves this Agreement in its entirety. Upon the Bankruptcy Court final order of approval, this Agreement, including the releases contained herein pertaining to the Released Claims, is effective and binding on the Parties hereto, Debtor's estate, its creditors, equity security holders, interested parties, parties in interest, noticed parties, meaning any party that has requested and/or received

notice in the Lawsuits, estate fiduciaries, including, without limitation, any Chapter 7 and/or 11 trustees, present and former affiliates, parents, subsidiaries, predecessors in interest, successors in interest and all respective officers, directors, managers, members, agents, employees, attorneys, advisors, heirs and assignees. Should the Bankruptcy Court not approve the terms of this Agreement, the Agreement is null and void and shall have no force or effect and shall not be enforceable by or against the Parties hereto and the Parties shall be restored to their prior position without any prejudice.

17.     Bankruptcy Court Retention of Jurisdiction. The Parties shall request that the Bankruptcy Court retain jurisdiction to interpret and enforce all the terms of this Agreement. The Parties shall consent to the jurisdiction of the Bankruptcy Court in any action, including an adversary proceeding or other proceeding, brought to enforce the terms of this Agreement. Such retention of jurisdiction shall be requested to be memorialized in the Order approving this Agreement, any Order confirming a Chapter 11 Plan and any Order dismissing the WB Case.

18.     Authority to Enter Into Agreement. The Parties represent that they have the authority to enter into, execute and perform this Agreement and to compromise the claims or potential claims referred to herein. Further, pursuant to the Heller Order, expressly possesses authority to execute this Agreement on behalf of Debtor and bind Debtor to the terms of this Agreement and duties and obligations arising hereunder.

19.     Acknowledgement of Terms. The Parties represent that they have been represented by legal counsel and: (i) they have completely read and fully understand this Agreement and have voluntarily accepted the terms contained herein for the purposes of making a full and final compromise, adjustment and settlement; and (ii) they have determined that this settlement is fair and reasonable under all the circumstances and that this determination is based solely upon their independent judgment after an opportunity to consult with counsel of their choice and, that in making this determination, they have had an adequate opportunity to discuss and assess the merits of all claims or potential claims. This Agreement is a settlement and compromise of disputed claims and defenses and neither Party admits the validity of any such claims or defenses by entering into this Agreement.

20.     Savings Clause. To the extent that any provision of this Agreement is deemed by a court of competent jurisdiction to be unenforceable, void or voidable, this Agreement is modified to the minimum extent necessary to exclude or strike herefrom only that discrete portion hereof that is deemed by such court to be unenforceable, void or voidable and the remainder of this Agreement shall continue to remain in full force and effect and be valid and binding on the Parties.

8 of 10

21. Counterparts and Copies. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. A facsimile, .pdf or electronic copy of this Agreement and any signature hereon shall be considered for all purposes as originals and delivery of an executed counterpart.

22. Merger Clause. This Agreement constitutes the entire agreement of the Parties. All prior oral and written agreements for all Parties are only those that are set forth herein and none of the Parties is relying on any promise or representation not set forth in this Agreement. This Agreement can be amended only in writing, signed by all Parties, and none of the terms, conditions or provisions of the Agreement can waived, changed, altered or modified except by an instrument in writing signed by all the Parties against whom enforcement of such change is sought.

23. Attorneys' Fees. In any enforcement action relating to this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party its reasonable costs, reasonable expenses and reasonable attorneys' fees, including pre-suit investigation and execution costs, both at the trial and appellate levels.

24. Choice of Law and Jurisdiction. The Parties agree that the Agreement is governed by Florida law and federal law relating to the Bankruptcy Code and consent to and agree to the Bankruptcy Court for the Southern District of Florida retaining and having exclusive jurisdiction to interpret and enforce the terms of this Agreement and the judgments to be issued or entered hereunder.

25. Opportunity to Review. Each of the Parties acknowledge that he, she or it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of their own choosing, or has voluntarily waived such right and enters into this Agreement voluntarily and without duress.

26. Joint Drafting. This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Agreement, no provisions shall be construed and interpreted for or against any of the Parties because such provisions or any other provision of the Agreement as a whole is purportedly prepared or requested by such Party.

27. Parties Cooperation. The Parties agree to cooperate to effectuate the terms of this Agreement, including Bankruptcy Court Approval, the Bankruptcy Code § 363 sale and dismissal of the WB Case.

28. Captions. Captions in this agreement are included for identification and shall not be used to interpret the Agreement.

9 of 10

# EXHIBIT # 2

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION
#### www.flsb.uscourts.gov

In Re:                                    **Chapter 11 Proceeding**

**W.B. CARE CENTER, LLC.**                 **Case No. 09-26196-BKC-RBR**

_____Debtor._____/

**W.B. CARE CENTER, LLC, a Florida**
**limited liability company,**
        **Plaintiff,**

vs.                                        **Adv. Pro. No. : 10-2590-JKO-A**

**TIMOTHY      REARDON,      QIS**
**MANAGEMENT, LLC, and T.R., LLC**

_____Defendant._____/

### PLAINTIFF'S VERIFIED MOTION FOR ENTRY
### OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS,
### TIMOTHY REARDON, QIS MANAGEMENT, LLC AND T.R., LLC

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF BROWARD         )

Plaintiff, W.B. Care Center, LLC, d/b/a West Broward Care Center, (the "Debtor"

or "Plaintiff"), by and through its court appointed corporate representative, John Heller, files its ·

*Verified Motion for Entry of Final Default Judgment* ("Motion"), seeking entry of a default final

judgment in favor of Plaintiff and against Defendants, Timothy Reardon, an individual

("Reardon"), QIS Management, LLC, a Florida limited liability company ("QIS"), and T.R.,

LLC ("TR") (each individually "Defendant" or collectively "Defendants"). In support of the

Motion, Plaintiff states as follows:

## JURISDICTION, VENUE AND PARTIES

1.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334. This adversary proceeding relates to the main Bankruptcy Case styled *In re W.B. Care Center, LLC*, Chapter 11 Case No.: 09-26196-BKC-RBR (the "Main Case"). This proceeding is brought pursuant to Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7001, *et seq*.

2.     Venue is proper in Broward County because the damages and the conduct giving rise to this action occurred in Broward County, Florida. Venue is also proper under 28 U.S.C. §§ 1391 and 1409.

3.     This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (E) and (O), and the Court has jurisdiction to enter a final judgment for the relief sought in this adversary proceeding.

4.     Plaintiff is a Florida limited liability company, whose principal place of business is located at 7751 West Broward Boulevard, Plantation, Florida.

5.     Defendant, Reardon, was the former managing member of Plaintiff. Reardon is the managing member of Defendants, QIS and TR.

## BACKGROUND

### A.     Debtor's Bankruptcy Filing and Use of Cash Collateral

6.     On August 5, 2009 ("Petition Date"), Debtor commenced the Main Case by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. ("Bankruptcy Code") [D.E. 1].

7.     Debtor sought and obtained consensual use of Institutional Leasing 1, LLC's ("Institutional") cash collateral until late October 2009. Institutional then conditioned the further

consensual use of its cash collateral upon the Court's appointment of an Examiner to investigate the Debtor's financial affairs.

## B. Appointment of Examiner Kapila and the Settlement Process

8. On October 30, 2009, the Court appointed Soneet Kapila as Chapter 11 Examiner (the "Examiner") [D.E. 145 and 156 in the Main Case]. Subsequently, the Court entered an order directing the Examiner to facilitate a settlement conference between the Debtor, Reardon and, *inter alia*, Institutional [D.E. 164 in the main case].

9. Debtor, the Institutional Parties,[1] Reardon, and their respective counsel conducted a settlement conference at the office of the Examiner on November 11, 2009. Debtor, the Institutional Parties, Reardon and certain Reardon-related entities—including QIS and TR—reached a global settlement of all claims, which was memorialized in a settlement agreement ("First Settlement Agreement"). One of the material terms of the First Settlement Agreement was the immediate resignation of Reardon as Administrator of Debtor, effective as of November 12, 2009.

10. On November 12, 2009, Debtor, the Institutional Parties and Defendants presented the First Settlement Agreement to the Bankruptcy Court for preliminary approval at a hearing previously scheduled on other matters in the Main Case. The Bankruptcy Court preliminarily approved the First Settlement Agreement at the November 12, 2009 hearing, and set the matter for further hearing on November 19, 2009, at which the Court would consider a motion to be filed by Debtor, pursuant to Fed. R. Bankr. 9019, seeking approval of the First Settlement Agreement (the "First 9019 Motion").

---

[1] Defined as Institutional Leasing 1, LLC, Abraham Shaulson, Millennium Management, LLC, and West Broward Group, LLC.

3

**EHRENSTEIN CHARBONNEAU CALDERIN**

501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

11. At the November 19, 2009 hearing on the First 9019 Motion, Debtor, the Institutional Parties and the Defendants herein represented to the Bankruptcy Court that there were ancillary issues pertaining to the First Settlement Agreement that needed to be resolved prior to final court approval. Also, Debtor submitted to the Bankruptcy Court that it was going to provide notice to additional interested parties of the First 9019 Motion and any additional ancillary terms or documents added to the First Settlement Agreement. Accordingly, the Bankruptcy Court continued the hearing on the First 9019 Motion and First Settlement Agreement to December 14, 2009 [D.E. 187].

**C. Reardon's Breaches of the First Settlement Agreement**

12. On or around December 10, 2009, Debtor and Examiner learned that the Defendants had attempted to withdraw $50,000.00 from the Debtor's Debtor-In-Possession operating account at Regions Bank ("Operating Account"). That attempted withdrawal was blocked by the Examiner.

13. Subsequent to December 10, 2009, and after having received the December bank statements on Debtor's Debtor-In-Possession accounts, Debtor learned that Defendants had successfully withdrawn $23,346.90 from Debtor's Debtor-In-Possession payroll account at Regions Bank ("Payroll Account") after the First Settlement Agreement, but before Debtor and Examiner discovered the attempted, and ultimately unsuccessful, withdrawal of $50,000.00.

14. These withdrawals not only violated the terms of the First Settlement Agreement, but the prior agreement by Reardon, Institutional and the Debtor regarding compensation payable to Reardon. This is because in connection with ongoing requests for Debtor's use of Institutional's cash collateral, Defendants agreed that Reardon would only receive a reduced salary and *would not* receive any management fees for his employment as Debtor's

4

**EHRENSTEIN CHARBONNEAU CALDERIN**

administrator. Reardon, however, took postpetition management fees anyway by making the following two (2) payments out of Debtor's Payroll Account to QIS: (i) on October 26, 2009, Reardon wrote a check to QIS from Debtor's Payroll Account in the amount of $19,600.00; (II) on November 12, 2009, Reardon wrote a check to QIS from Debtor's Payroll Account in the amount of $19,600.00 ("QIS Payments").

## D.   Second Settlement Agreement

15.    Due to the discovery of the attempted withdrawal from the Operating Account and the actual withdrawal from the Payroll Account, neither the Debtor nor Institutional was willing to proceed under the terms of the First Settlement Agreement. Accordingly, Debtor and Institutional negotiated another settlement agreement (the "Second Settlement Agreement") without the involvement of the Reardon Parties. The Second Settlement Agreement was approved by the Court [D.E. 256 in the Main Case].

## E.   Adversary Proceeding

16.    On January 29, 2010, Plaintiff filed this adversary proceeding against Defendants to: (i) avoid an unauthorized post-petition transfer pursuant to Bankruptcy Code § 549; (ii) to recover property transferred pursuant to Bankruptcy Code § 550; and (iii) for injunctive relief pursuant to Fed. R. Bankr. P. 7065. [D.E. 1].

17.    The Summons for Defendants was issued on February 1, 2010. [D.E. 2]. Therefore, pursuant to Fed. R. Bankr. P. 7012, a responsive pleading was due from each Defendant by Wednesday, March 3, 2010.

18.    The Complaint, Summons, and the Pretrial Order were mailed to Defendants, Reardon and QIS, via Certified U.S. Mail on Tuesday, February 2, 2010.

19.     Defendant, Reardon received the Complaint, Summons, and Pretrial Order via electronic mail on Monday, February 1, 2010 and via Certified U.S. Mail on Friday, February 26, 2010.

20.     Defendant, QIS received the Complaint, Summons, and Pretrial Order via electronic mail on Monday, February 1, 2010 and via Certified U.S. Mail on Wednesday, February 3, 2010.

21.     Defendant, TR, upon information and belief is an affiliated entity of Reardon. After performing a diligent search of the Florida corporate registry, the Plaintiff, however, was unable to locate a physical address for TR. The Plaintiff, on February 1, 2010, therefore, served the Complaint, Summons, and Pretrial Order on TR by way of electronic mail through Reardon and Mr. Rojas, Esq.[2]

22.     Accordingly, due and proper service has been effectuated on each Defendant.

23.     In the Complaint, Plaintiff seeks entry of a judgment, pursuant to Bankruptcy Code § 549 against Defendants for recovery of liquidated damages in the amount of $62,200, plus costs and post-judgment interest, based upon Reardon's defalcation of such amount from Debtor.

24.     In addition to the damages sought by the Plaintiff against Defendants under Bankruptcy Code § 549, Plaintiff seeks injunctive relief against Reardon, based upon activities that threatened, and continue to threaten and interfere with the closing of a sale of the Debtor's assets under Bankruptcy Code § 363. Debtor seeks a permanent injunction, enjoining Defendants—or any other party or entity through whom the Defendants may act—from

---

[2] Mr. Rojas has confirmed in writing that his appearance in this case was limited for the purposes of objecting to approval of the Second Settlement Agreement, and the appeal related to the order approving that settlement. Notwithstanding, and in an abundance of caution, the Debtor served Mr. Rojas anyway.

6

**EHRENSTEIN CHARBONNEAU CALDERIN**

501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

interfering with the orderly transfer of the Debtor's assets pursuant to Bankruptcy Code § 363, other than bringing the appropriate objections before this Court.

25.     On February 10, 2010 at 09:30 a.m., this Court conducted a hearing (the "Injunction Hearing") on the Debtor's *Emergency Motion by Debtor-in-Possession for Preliminary Injunction* [D.E. 4]. At the Injunction Hearing, the court entered on the record a preliminary injunction against Reardon—or any other party or entity through whom Reardon may act, including but not limited to the Defendants, enjoining them (I) from tortiously interfering with the administration of the Estate in general, and specifically, the sale and closing process pursuant to Bankruptcy Code § 363, (II) from communicating directly with AHCA or Medicare, other than through pleadings filed with the Court, and (III) directing Reardon to shut down and cease all use of the domain abraham.s@millenium-mgt.com.

26.     Additionally, on February 8, 2010, the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida entered an order enjoining on a preliminary basis certain conduct of Reardon and QIS (the "State Court Injunction"). The State Court Injunction is attached hereto as **Exhibit "A"**.

27.     On March 16, 2010, the Court approval Debtor's sale of its assets to Institutional, or its assignee, by virtue of a "credit bid" under Bankruptcy Code § 363(k).  In order to effectuate and close the sale of the Debtor's assets, Debtor must deal with, and obtain the cooperation of various regulatory agencies, including, but not limited to the Agency For Health Care Administration ("AHCA") and Health and Human Services ("HHS").

28.     Upon information and belief, Reardon has been attempting to interfere, perhaps tortiously, with a smooth transfer of Debtor's assets pursuant to Bankruptcy § 363, as detailed in

the Complaint. Debtor is concerned that Reardon not tortiously interfere with the smooth transfer of the Debtor's assets to Institutional.

29.     Defendants, including Reardon, have shown no reluctance in the past to interfere with the operations of Debtor, including but not limited to the unauthorized transfer of property of the estate. Now that the Examiner has secured the Debtor's financial accounts, Debtor is equally concerned with any further action Debtor's assets.

30.     With respect to the conduct of Defendants, Debtor is without an adequate remedy at law. Additionally, Debtor is gravely concerned that if Defendants are not enjoined from further tortuous interference, Debtor, its Estate and creditors thereof will be irreparably harmed.

**F.      Clerk's Defaults Were Entered Against Defendants**

31.     Notwithstanding the proper service of the Summons and the Complaint, as of the filing of this Motion, no responsive pleading has been filed by any Defendant.

32.     A clerk's default was entered on March 23, 2010 for Defendant, Reardon. [D.E. 13].

33.     A clerk's default was entered on March 23, 2010 for Defendant T.R., LLC. [D.E. 14].

34.     A clerk's default was entered on March 23, 2010 for Defendant QIS Management, LLC. [D.E. 15]

## LEGAL ANALYSIS

**A.      Controlling law supports entry of a final default judgment against Defendants.**

35.     Fed. R. Bankr. P. 7055, which incorporates Fed. R. Civ. P. 55, permits bankruptcy courts to enter final judgments after defaults. *See* Fed. R. Bankr. P. 7055.

36.     When a default is entered against a defendant, that defendant admits all well pled allegations of the complaint. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

37.     "As a general rule, the court may enter a default judgment awarding damages without a hearing only if the amount of the damages is a liquidated sum, and an amount capable of mathematical calculations, or an amount demonstrated by detailed affidavits." *Directv, Inc. v. Huynh*, 318 F. Supp. 2d 1122 (M.D. Ala. 2004) (citing *Adolph Coors Co. v. Movement Against Racisim and the Klan*, 777 F.2d 1538 (11th Cir. 1985)). Here, the damages are a liquidated sum.

38.     Permanent injunctive relief can also be entered upon defaults. *See UMG Recordings, Inc. v. Roque*, No. 08-21259-CIV, 2008 WL 2844022, at *2 (S.D. Fla. Jul. 23, 2008); *Loud Records, LLC v. Moultry*, 2:06cv915-ID, 2007 WL 445448, at *4 (M.D. Ala. Feb. 8, 2007); *Virgin Records Am. v. Lacey*, 510 F. Supp. 558, 595 (S.D. Ala. 2007).

39.     Based upon the foregoing authority, Plaintiff is entitled to a default judgment against Defendants granting the relief requested in the Complaint.

## CONCLUSION

40.     Plaintiff initiated this Adversary Proceeding against Defendants to attempt to remedy the harm caused by Defendants to Debtor, its estate and its creditors and to prevent similar and other harms prospectively. Defendants have failed to defend and, consequently, Clerk's defaults were entered against each Defendant. Entry of final default judgment is now proper.

9
**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

**FURTHER AFFIANT SAYETH NAUGHT**

JOHN HELLER, CPA

**SWORN TO AND SUBSCRIBED** before me this 24th day of March 2010.

NOTARY PUBLIC, STATE OF FLORIDA
AT LARGE

NOTARY PUBLIC, STATE OF FLORIDA
Print Name: _____
Commission No. _____
My Commission Expires: _____

EVA WALTON
MY COMMISSION # DD 972193
EXPIRES: March 17, 2014
Bonded Thru Notary Public Underwriters

**WHEREFORE,** the Plaintiff respectfully requests this Court to enter a Final Default Judgment against Defendants, Timothy Reardon, QIS Management, LLC, and T.R LLC, jointly and severally for damages in the amount of than $62,546.90 ($23,346.90 + $19,600.00 + $19,600.00), plus (i) costs, (ii) pre-judgment interest, and (iii) accruing post judgment interest, for which let execution issue forthwith. Additionally, the Plaintiff also seeks the entry of a permanent injunction against Reardon—or any other party or entity through whom Reardon may act, including but not limited to the Defendants, enjoining them from tortiously interfering with the administration of the Estate in general, and specifically, the sale and closing process pursuant to Bankruptcy Code § 363, from communicating directly with AHCA or Medicare, other than through pleadings filed with the Court, and directing shut down and injunction of any further use of the domain abraham.s@millenium-mgt.com.