Tagged for publication



**ORDERED in the Southern District of Florida on August 29, 2013.**

John K. Olson, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division
#### www.flsb.uscourts.gov

**In re**:

                                              Case No.: 09-26196-BKC-JKO

**W.B. Care Center, LLC**

*d/b/a* West Broward Care Center**,**

                                              Chapter 7

        Debtor.

_____/

## ORDER DENYING TIMOTHY REARDON'S MOTION AND AMENDED MOTION [ECF No.'s 736, 744] SEEKING PERMISSION TO SUE MARCUM LLP *ET AL.* IN DISTRICT COURT CASE NO. 12-20829-CIV-LENARD

        This Chapter 7 case came on for hearing on August 21, 2013, on the Motion [ECF 736] and

Amended Motion [ECF 744] filed by Timothy Patrick Reardon ("Reardon") seeking authority to sue

Marcum LLP d/b/a MarcumRachlin ("Marcum") and its partner John L. Heller, CPA ("Heller") in

a civil case pending in the United States District Court for the Southern District of Florida styled

*Reardon v. Lake Worth Enterprises, LLC, et al.,* Case No. 12-20829-cv-Lenard/O'Sullivan (the

"District Court Action"). For the reasons set forth below, the Motion and Amended Motion are denied.

W.B. Care Center, LLC, d/b/a West Broward Care Center (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 5, 2009. Reardon signed the petition as Managing Member of the Debtor. The Debtor operated a nursing home in Broward County, Florida, and Reardon was its duly-licensed administrator.

By Application [ECF 109] filed October 1, 2009, the Debtor sought to retain Alan R. Barbee, Heller and Marcum as accountants. The Application was granted at a hearing held October 6, 2009, and ultimately embodied in an Order [ECF 207]. Issues relating to the Debtor's financial operations were first raised with the Court by the Debtor's secured lender, Institutional Leasing I, LLC ("Institutional"), at a hearing on October 9, 2009, at which Heller testified that Reardon had restricted Heller's access to the Debtor's bank account information, thereby preventing Heller from determining the validity *vel non* of Institutional's concerns that the Debtor, under Reardon's management, was engaged in financial improprieties. The Court conducted a further hearing on those and related issues on October 27, 2009, as a result of which the Court entered an Order [ECF 143] directing the appointment of an Examiner under 11 U.S.C. § 1104 to conduct an investigation into the Debtor's financial management for periods before and after the petition date. The United States Trustee appointed Soneet R. Kapila to serve as Examiner [ECF 145]. That appointment was confirmed by the Court by Order [ECF 156] entered November 6, 2009.

By Order [ECF 164] entered November 10, 2009, the Examiner was granted additional powers in order to facilitate and conduct a settlement conference among the Debtor, Institutional, Reardon, and Heller who was, by then, functioning as the Debtor's Chief Restructuring Officer. That settlement conference, held November 11 - 12, 2009, resulted in a settlement agreement among

-2-

the parties (the "First Settlement Agreement"), the terms of which were announced on the record in open court on November 12, 2009, and which was attached as an exhibit to a motion to compromise [ECF 170] filed November 13, 2009.  The Court entered an Order [ECF 178] preliminarily granting the motion to compromise on November 13, 2009.  A further hearing was scheduled for November 19, 2009, continued by Order [ECF 187] to December 14, 2009, and further continued by Order [ECF 221] to December 30, 2009.

Under the terms of the First Settlement Agreement, Reardon resigned as administrator of the Debtor's nursing home and a temporary nursing home administrator with appropriate license, Zev Shamesh, was substituted as administrator, all effective as of the November 12th hearing.  The Examiner thereafter shared co-signatory authority on the Debtor's bank accounts with Mr. Shamesh. For his part, Reardon was to receive $500,000 in settlement of his interests in the Debtor and on account of claims he held against, *inter alia,* Institutional.

By Applications [ECF 194 and 195], the Debtor sought to modify the duties of Marcum and the Examiner by (among other things) deleting the Examiner from, and by adding Heller to, signatory authority on the Debtor's bank accounts.  These changes were approved by Orders [ECF 230 and ECF 244].

At the hearing conducted December 14, 2009, evidence was presented that Reardon had attempted to remove some $50,000 from the Debtor's bank accounts on or about December 11, 2009 (a full month after his authority to administer the nursing home had been terminated under the First Settlement Agreement), and to cause those funds to be deposited in his own personal bank accounts, clear violations of the First Settlement Agreement, the preliminary approval Order [ECF 178], multiple provisions of the Bankruptcy Code and other federal laws.  As a result of these

developments, the Court entered an Order [ECF 230] designating Heller as the Debtor's sole representative with full authority to act for and to execute documents on behalf of the Debtor. The Debtor thereafter negotiated an amended settlement (the "Second Settlement Agreement") with, *inter alia,* Institutional. The Second Settlement Agreement did not provide for any payment to Reardon, let alone the $500,000 payment to Reardon provided for in the First Settlement Agreement. The Debtor sought approval of the Second Settlement Agreement by motion [ECF 236] which was granted by Order [ECF 256] entered January 7, 2010. That Order found, on the basis of the evidence presented, that Reardon had attempted to embezzle $50,000 from the Debtor's estate, had materially breached the First Settlement Agreement, and was in breach of the implied covenant of good faith and fair dealing implicit in any settlement agreement. *Mount Sinai Medical Center of Greater Miami, Inc. v. Struggles, Inc.,* 329 F.Supp.2d 1309 (S.D. Fla. 2004). Reardon's objections to the Second Settlement Agreement were overruled, the Second Settlement Agreement was approved, and all claims asserted by the Debtor and Institutional against one another in various litigation were ordered to be dismissed with prejudice, other than claims against Reardon and related entities controlled by him.

A notice of appeal [ECF 264] was filed by Reardon on January 20, 2010, addressed to the Order [ECF 256] which approved the Second Settlement Agreement. That appeal, styled *Reardon v. W.B. Care Center, LLC,* Case No. 10-60360-CIV-MOORE/SIMONTON, was dismissed by the District Court by Order [ECF 15] entered by District Judge Moore on May 26, 2010. Prior to the dismissal of that appeal, Reardon[1] had sought by motion [ECF 8] a variety of fantastic relief,

---

[1]Reardon is a graduate of the University of Miami Law School but is not a member of The Florida Bar or any other bar.

-4-

including (1) withdrawal of the reference of the main bankruptcy case from the Bankruptcy Court to the District Court; (2) a declaration that the Debtor is "an enterprise engaging in or affecting interstate commerce under section 1962(c)" of the RICO Act; (3) a jury trial; and (4) a provision indicating that he did not consent to the conduct of a jury trial by the Bankruptcy Court. Judge Moore denied the relief sought by paperless Order [ECF 13] which noted, among other things, that the District Court "only has appellate jurisdiction over this matter and no authority to add original proceedings to this case."

Meanwhile, the Examiner was directed by this Court in an Order [ECF 256] entered in the Debtor's main bankruptcy case to undertake the sale of the Debtor's nursing home. He thereafter moved [ECF 271] to sell the nursing home free and clear of all liens, claims and encumbrances. The Court granted the motion to sell by Order [ECF 258] entered February 17, 2010, which approved certain bid and related procedures, authorized Institutional as secured creditor to make a credit bid pursuant to its rights under 11 U.S.C. § 363(k), directed that competitive bids be made by March 5, 2010, and that an auction sale be conducted on March 10, 2010.

No competing bids were received by the March 5, 2010 deadline [ECF 386], and as a result, Institutional's credit bid was the only bid made for the Debtor's nursing home. The sale to an affiliate of Institutional pursuant to its credit bid was finally approved by Order [ECF 463] entered May 10, 2010. No appeal was taken from that Order and it became final more than three years ago.

During the course of these developments, Reardon sought to recuse this judge by motion [ECF 399], denied by Order [ECF 403], and sought reconsideration of that Order by motion [ECF 417], which was denied by Order [ECF 523].

-5-

In related proceedings, the Debtor (then under Heller's management, subject to review and oversight by the Examiner) filed a separate Adversary Proceeding in this Court, *W.B. Care Center, LLC v. Reardon, et al.,* Case No. 10-2590, against Reardon and companies owned and controlled by him. That complaint sought avoidance and recovery, pursuant to 11 U.S.C. §§ 549 and 550, of unauthorized postpetition transfers aggregating some $62,200 made by the Debtor under Reardon's direction, together with injunctive relief to prevent further interference with the management and operation of the Debtor. These sums were in addition to the $50,000 which Reardon had attempted (but failed) to embezzle. A default final judgment for damages was entered April 1, 2010 [ECF 28]. No appeal from that final judgment was taken.

As a result of Reardon's behavior outside the courtroom, which included threats of physical violence (including against minor children), this Court also granted a permanent injunction [ECF 27] against Reardon in Adversary Proceeding 10-2590. That injunction prohibited contact by Reardon with, *inter alia,* Institutional's principals and members of their families (including minor children), Ms. Redmond and the attorneys and staff of her law firm, Stearns Weaver, all of whom this Court found had been threatened by Reardon with physical violence. By motion [ECF 46] in Adversary Proceeding 10-2590, Institutional asserted that Reardon had violated the terms of that injunction and sought contempt sanctions against him. This Court directed that the U.S. Marshal Service apprehend Reardon by Order [ECF 48] and by separate Order [ECF 50] set a preliminary show cause hearing for April 20, 2010. Following that preliminary hearing on the contempt motion and order to show cause, the Court further directed by Order [ECF 51] a psychological and substance abuse evaluation of Reardon while he was in the Marshal's custody. Following evaluation and further hearings, the Court released Reardon to the custody of his elderly parents [ECF 80] and

-6-

strongly recommended to Reardon by Order [ECF 81] that he enroll in an inpatient substance abuse treatment program.  Adversary Proceeding 10-2590 was eventually dismissed by Order [ECF 115] entered October 19, 2011, and closed on  December 30, 2011 [ECF 118].

Meanwhile, in the main bankruptcy case, Reardon sought sanctions against Institutional's lawyer, Patricia Redmond, by motion [ECF 407], denied by Order [ECF 449]; he separately sought sanctions against Heller by motion [ECF 416], denied by Order [ECF 471].

Notwithstanding the finality of the sale of the Debtor's nursing home pursuant to Order [ECF 463], Reardon sought appointment of a trustee in the case by motion [ECF 512], including the "removal" of the United States Trustee's attorney in the case and his replacement by a "private trustee."[2] He sought emergency reconsideration of the "forfeiture" of the $500,000 – which, but for his embezzlement, would have come to him under the First Settlement Agreement –  by motion [ECF 515] filed July 16, 2010, as amended [ECF 520], filed July 22, 2010.  These were denied after hearing by Orders [ECF 539, 540].  And the docket is replete with abusive discovery sought by Reardon on issues long since ruled on in orders that became final and were not appealed.

Following the sale of the nursing home, the Debtor filed a motion to dismiss the bankruptcy case [ECF 474].  After a hearing held on August 18, 2010, the Court instead converted the Chapter 11 case to a case under Chapter 7 by Order [ECF 565].  The Court did so because it appeared that there were avoidable transfers which could be recovered for the benefit of the estate and its unsecured creditors and which would be lost if the Debtor's case were dismissed.  Kenneth A. Welt was appointed Chapter 7 trustee by the United States Trustee [ECF 566].

---

[2]The United States Trustee is an administrative agency of the Department of Justice.

It was against this remarkable backdrop of fraudulent behavior, threats of physical violence, and abusive litigation filed by Reardon that the Debtor filed a post-conversion motion [ECF 570] seeking entry of an order discharging Marcum and Heller from any further responsibility in the case and granting them broad protection from future litigation which might be asserted against them arising out of this bankruptcy case. This relief was sought with Reardon in mind.

By Order [ECF 592], this Court granted the relief sought and entered a broad release which was intended to be, and is, as complete as possible. The Court did so because Reardon is a vexatious litigant. While it is certainly understandable that he wishes that he had the $500,000 which would have gone to him under the First Settlement Agreement, his fraudulent and felonious behavior in trying to embezzle $50,000 as he was heading out the door foreclosed that possibility.

That Reardon is unable to let go of these matters is evident by his subsequent behavior. On January 28, 2011, he filed a second reconsideration motion [ECF 607] to recuse this judge, stricken by Order [ECF 613]. On November 16, 2012, Reardon sued Chapter 7 Trustee Welt and Marcum in this Court, alleging violations of RICO §§ 1961(1)(D) and 1962(b), in *Reardon v. Welt, as Trustee, and Marcum,* Adversary Proceeding 12-2072. Although this Adversary Proceeding was dismissed by Order [ECF 32], entered January 3, 2013, and closed by the Clerk on January 31, 2013 [ECF 36], it was reopened on Reardon's motion [ECF 37] by Order [ECF 38] entered March 13, 2013.

Trustee Welt sought contempt sanctions against Reardon by motion [ECF 41], filed June 3, 2013, in Adversary Proceeding 12-2072 as a result, *inter alia,* of Reardon's suing him in the United States District Court for the Southern District of Florida in the case styled *Reardon v. Lake Worth Enterprises, LLC, et al.,* District Court Case No. 12–cv-20829-LENARD/O'SULLIVAN. Reardon

was plainly prohibited from suing Trustee Welt without the prior permission of this Court (as the court which appointed Trustee Welt) under the *Barton* Doctrine, *Barton v. Barbour,* 104 U.S. 126 (1881).

In *Barton v. Barbour,* the Supreme Court held that "before suit [can be] brought against a receiver, leave of the court by which he was appointed must be obtained." 104 U.S. at 127. *Barton* involved a state court receiver, but the Doctrine is not limited to cases involving receivers. A trustee is appointed by the court to oversee the debtor's estate, not unlike a receiver. "The trustee in bankruptcy is a statutory successor to the equity receiver, and it ha[s] long been established that a receiver [can] not be sued without leave of the court that appointed him." *Matter of Linton,* 136 F.3d 544, 545 (7th Cir. 1998). The trustee is working for the Bankruptcy Court to administer the property of the estate under the Bankruptcy Code and, if he [or she] is forced to defend against "litigants disappointed by his [or her] actions on the court's behalf, his [or her] work for the court will be impeded." *Id.; see also In re Crown Vantage,* 421 F.3d 963 (9th Cir. 2005). Therefore, the *Barton* Doctrine has been extended to apply to trustees in bankruptcy, *In re VistaCare Group, LLC,* 678 F.3d 218, 224 (3rd Cir. 2012); *Muratore v. Darr,* 375 F.3d 140, 143-44 (1st Cir. 2004), as well as "other persons appointed by the bankruptcy court, like debtors in possession ...." *In re Crown Vantage,* 421 F.3d at 970; *In re Balboa Improvements, Ltd.,* 99 B.R. 966, 970 (B.A.P. 9th Cir. 1989). The Doctrine has for the same reasons been extended to attorneys representing trustees and debtors in possession. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1241 (6th Cir. 1993); *In re Balboa Improvements,* 99 B.R. at 970.

Part of the rationale underlying *Barton* is that, because a judgment against the trustee or debtor in possession may affect the administration of the estate, "[t]he requirement of uniform

application of bankruptcy laws dictates that all legal proceedings that affect the administration of the bankruptcy estate be either brought in the bankruptcy court or with the permission of the bankruptcy court." *In re VistaCare Group,* 678 F.3d at 227-28 (*citing In re Crown Vantage,* 421 F.3d at 971). In the absence of this rule, a party that brings suit could gain an advantage over other claimants in the distribution of the estate's assets. *Id.* at 224.

Therefore, absent the permission of the appointing bankruptcy court, other courts lack subject matter jurisdiction to hear suits filed against the bankruptcy trustee or debtor in possession. *In re VistaCare Group,* 678 F.3d at 225; *In re Crown Vantage,* 421 F.3d at 971.

The scope of the *Barton* Doctrine is extremely broad. The doctrine applies even if a suit seems unrelated to the bankruptcy proceeding because the Bankruptcy Court has jurisdiction to hear "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." *Lawrence v. Goldberg,* 573 F.3d 1265, 1270 (11th Cir. 2009). The suit does not have to be against the debtor or the debtor's property to be related to the bankruptcy. *Id.* If the outcome of the proceeding could conceivably have an effect on the bankruptcy estate, then it is related to the bankruptcy proceeding, and the Bankruptcy Court has jurisdiction over it. *Id.* at 1270-71 ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."). The *Barton* Doctrine applies even after a bankruptcy case is closed and the trustee no longer has possession of the debtor's assets. *In re Crown Vantage,* 421 F.3d at 972.

The application of these principles in the Debtor's case leads to the inescapable conclusion that Trustee Welt cannot be sued in the District Court Action without the prior consent of this Court,

-10-

which has not been and will not be granted. Accordingly, following a hearing held August 21, 2013, this Court granted Trustee Welt's sanctions motion by Order [ECF 53] entered August 26, 2013. That Order directed Reardon to dismiss the District Court Action as to Trustee Welt for violation of the *Barton* Doctrine. He was directed to do so within 10 days of the entry of that Order.

The application of the *Barton* Doctrine leads to the same inescapable conclusion that Marcum and Heller likewise cannot be sued in the District Court Action without the prior consent of this Court. Heller acted as the Debtor's Chief Restructuring Officer and was *de facto* Chief Executive Officer of the Debtor; as such, suit against him and his firm is squarely prohibited by the *Barton* Doctrine. Even in their capacity as the Debtor's accountants, this Court holds that Marcum and Heller, as professionals employed by the Debtor's bankruptcy estate pursuant to court order authorizing their retention, are protected from suit by the logical extension of the *Barton* Doctrine adopted by the Sixth Circuit and by the Ninth Circuit Bankruptcy Appellate Panel. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d at 1241; *In re Balboa Improvements,* 99 B.R. at 970. Marcum and Heller, as the Debtor's accountants and otherwise, cannot be sued without the prior consent of this Court for any actions taken in connection with the administration of the Debtor's estate.

This Court considered Reardon's Motion [ECF 736] and Amended Motion [ECF 744] in the Debtor's main bankruptcy case at the same hearing held on August 21, 2013, at which Reardon was directed to dismiss the District Court Action against Trustee Welt. In his Motions, Reardon seeks authority under the *Barton* Doctrine to sue Marcum and Heller in the District Court Action. The relief sought in the Motion and Amended Motion would have the District Court revisit issues long since determined on the merits in final orders entered in the Debtor's bankruptcy case. The relief

sought is in direct contravention of the broad, sweeping release granted to Marcum and Heller in final orders – relief structured with Reardon's vexatious litigation practices in mind.  Such litigation would be expensive and pointless, and cannot be allowed.  Accordingly, on the basis of the foregoing, it is **ORDERED:**

1.      The Motion [ECF 736] and Amended Motion [ECF 744] are **DENIED.**

2.      Timothy Patrick Reardon is hereby **PROHIBITED** from the filing of further proceedings against Marcum LLP d/b/a MarcumRachlin or against John L. Heller, CPA, in any court or other forum seeking relief of any sort whatsoever arising out of the bankruptcy case of W.B. Care Center, LLC.

###